UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division
www.flsb.uscourts.gov

In re:

                                                    Case No. 23-14169-SMG
Retailing Enterprises, LLC,                         Chapter 11

                    Debtor.
_____/

**FIRST DAY DECLARATION OF MAURICIO KRANTZBERG IN SUPPORT OF
CHAPTER 11 PETITION AND FIRST DAY MOTIONS**

Under 28 U.S.C. § 1746, Mauricio Krantzberg hereby declares as follows under the penalty of perjury:

1.      I am the founder and sole member of Retailing Enterprises, LLC ("Retailing Enterprises" or the "Debtor"). Pursuant to the Debtor's operating agreement and all amendments thereto and as its sole member and manager, I am authorized by the Debtor to submit this declaration (the "First Day Declaration") on behalf of the Debtor.

2.      Since the inception of Retailing Enterprises, I have been familiar with the Debtor's financial affairs, business operations, day-to-day operations, organizational structure, books, and records. Except as otherwise stated in this First Day Declaration, the statements set forth herein are based on (a) my personal knowledge or opinion derived from my experience, (b) information that I have received from the Debtor's advisors or employees or working directly with me or under my supervision, direction, or control, and/or (c) my review of relevant documents. Any references to the Bankruptcy Code (as defined below), the chapter 11 process, and related legal matters herein reflect my understanding of such matters based on the explanations and advice counsel to the Debtor has provided. If called upon, I would testify competently to the facts set forth in this First Day Declaration.

3.      On May 30, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for

relief in the United States Bankruptcy Court for the Southern District of Florida (the "Court"). The Debtor will continue to operate its business as a debtor in possession.

4.    I submit this First Day Declaration on behalf of the Debtor in support of its (a) voluntary petition for relief that was filed under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") and (b) "first-day" motions, which the Debtor is filing concurrently herewith (collectively, the "First Day Motions"). The Debtor seeks the relief set forth in the First Day Motions to minimize the adverse effects of the commencement of this Chapter 11 Case on its business.

5.    I have reviewed the Debtor's petition and the other First Day Motions or have otherwise had their contents explained to me, and it is my belief that the relief sought therein is essential to ensure the uninterrupted operation of the Debtor's business and to successfully maximize the value of the Debtor's estate.

6.    To familiarize the Court with the Debtor, its business, the circumstances leading to the commencement of this Chapter 11 Case, the objective of such case, and the relief the Debtor is seeking in the First Day Motions, this First Day Declaration includes the following information:

- Part I provides an overview of the Debtor's business;

- Part II provides an overview of the circumstances leading to the commencement of this Chapter 11 Case, the objectives of this Chapter 11 Case, and the means for implementing such objectives; and

- Part III introduces the various First Day Motions and sets forth my belief that the relief sought therein is crucial to the Debtor's business.

### I.    THE COMPANY'S BUSINESS

#### A. Business Overview

7.    Established in 2011 and headquartered in Davie, Florida, Retailing Enterprises (d.b.a. Invicta Stores) is an official reseller of the Invicta Watch Company of

America, a fast-growing watch brand considered by collectors and enthusiasts alike to be a market leader in horological innovation and creativity.

8.      The Debtor carries an impressive selection of watches spanning 30 diverse collections and a wide use of exotic materials, such as meteorite, abalone, titanium, and carbon fiber. Furthermore, the Debtor carries Invicta collections from Disney, Marvel, DC Comics, Star Wars, and the NFL.

9.      The Debtor operates an online store, InvictaStores.com, as well as 24 brick and mortar locations, primarily in Florida, but also in Georgia, New York, Texas, New Jersey, Maryland, Delaware, and Nevada.

10.      Collectively, the Debtor has approximately 175 employees.

11.      The Debtor historically has been profitable, with sales totaling $80,267,809.00 in 2021 and $116,578,000 in 2022. As of the Petition Date, the Debtor's sales year to date total approximately $27,881,790.00.

### B. Business Operations

12.      I built the site InvictaStores.com and continue to maintain ownership of the site personally. I lease the site to the Debtor on a month-to-month basis.

13.      In its ordinary course of business, the Debtor purchases inventory from Invicta on 120-150 day terms. No interest is charged for this arrangement. On average, $500,000-$1,200,000 of product is delivered to the Debtor per week, and a similar amount is paid weekly to Invicta.

### C. Marketing Strategy

14.      The Debtor's marketing strategy leans heavily on promoting brand awareness online via social media platforms and search engines. In addition to flash sales and paid advertisements, the Debtor utilizes common e-commerce marketing strategies such as email

marketing, search engine optimization, mobile optimization, optimized product pages and checkout experiences, and re-targeting.

15.    The Debtor highlights collaborations with already popular brands and entities to further improve its brand recognition and influence desirability.

16.    The brand name "Invicta" has a significant presence in the horology market which the Debtor uses to its advantage by displaying the name "Invicta" prominently on its brick-and-mortar storefronts.

## II.    KEY EVENTS LEADING TO COMMENCEMENT OF AND THE COMPANY'S OBJECTIVES IN THIS CHAPTER 11 CASE

17.    The main causes of the filing of this chapter 11 case were primarily the disputes with various landlords, including but not limited to Vornado Realty Trust and Simon Property Group.

## III.    FACTS SUPPORTING RELIEF SOUGHT IN FIRST DAY MOTIONS

18.    The Debtor will be seeking approval of its First Day Motions and related orders, and respectfully requests that the Court grant the First Day Motions as they are essential for the continued operation of the business.

> a. *Debtor's Emergency Motion to Use cash Collateral of City National Bank of Florida*

19.    The Debtor seeks authority to use the cash collateral of City National Bank of Florida, on which the bank has a properly perfected lien. Without the immediate access to cash to fund operations, the Debtor will suffer immediate and irreparable harm. Cash is primarily used for payroll, utilities, and inventory purchases.

> b. *Debtor's Emergency Motion for an Order Authorizing Payment of Prepetition Claims of Critical Vendors*

20.    The continuing payments of Invicta's claims is justified because (a) such payments will advance the Debtor's reorganization efforts by ensuring a continuing and

uninterrupted supply of goods for sale, (b) the payment terms proposed by the Debtor represent a prudent exercise of the Debtor's business judgment, as this arrangement has proven to be profitable for the Debtor since its inception, and (c) the disfavored creditors will fare worse if the Motion were denied, as the Debtor will be forced to liquidate, which will only benefit the senior secured lender, City National Bank, and no amounts will be available for general unsecured creditors[1]. If the Motion is denied, the Debtor's business will suffer substantial and immediate harm.

### c. Debtor's Emergency Motion to Maintain Existing Bank Accounts

21.     Prior to the Petition Date, the Debtor used a cash management system in the ordinary course of business (the "Cash Management System") to efficiently collect, transfer, and disburse funds generated by its business operations. The Cash Management System consists of thirty-one (31) bank accounts at Bank of America ("BOA") and one (1) bank account at City National Bank of Florida ("City Bank") Acct #6734 related to the Debtor (collectively, the "Bank Accounts"). BOA and City Bank are both authorized depositories pursuant to the *United States Trustee's Authorized Depository Listing* ("Authorized Depository List") established for the Southern District of Florida.

22.     The Debtor uses its Cash Management System in the ordinary course to transfer and distribute funds and to facilitate cash monitoring, forecasting, and reporting. The Debtor's Cash Management System facilitates the timely and efficient collection, management, and disbursement of funds. Because of the nature of the Debtor's business and the disruption that would result if the Debtor were forced to close its existing Bank Accounts, it is critical that the existing Cash Management System remains in place.

### d. Debtor's Emergency Motion for Order Approving Financing of Inventory Supplied to Debtor Postpetition

---

[1] City National Bank has secured claims in the approximate amount of $18M, secured by inventory of less than $7M.

23.     The Debtor's retail locations sell only Invicta watches and no other brands. As a non-exclusive distributor of Invicta watches, the Debtor has the authorization to sell product in the United States, with such authorization provided by the manufacturer, Invicta Watch Company of America ("Invicta") through a non-exclusive distributor agreement ("Distribution Agreement"). Pursuant to the Distribution Agreement, the Debtor is unable to procure its inventory from any other seller of Invicta watches; i.e., another reseller. The Debtor currently owes Invicta approximately $29,500,000 for inventory provided over the past 4-5 months. In that the entirety of the Debtor's business is selling Invicta watches, which are supplied by the manufacturer, Invicta, it is imperative that the Debtor be able to receive new product. In order to provide adequate protection to Invicta, the Debtor is requesting authorization for Invicta to obtain a purchase money security interest in all postpetition inventory provided.

> e. *Debtor's Emergency Motion for Interim and Final Orders Authorizing Debtor to Honor and/or Pay Pre-Petition Wages and Salaries*

24.     The Debtor depends on its ability to retain its existing skilled and dedicated Employees. Absent the relief requested herein, existing Employees and their families will suffer undue hardship because the funds requested to be paid are needed to enable the Employees and their families to meet their financial obligations. If the requested relief is not granted, many of the Debtor's Employees may seek other employment. Accordingly, it is critical that any hardship and disruption caused by this Chapter 11 case be minimized to preserve morale, maintain the Debtor's workforce, and preserve the Debtor's going concern value.

*I declare under penalty of perjury that the foregoing is true and correct.*

*Executed on May 30, 2023*

DocuSigned by:

*Mauricio Krantzberg*

Mauricio Krantzberg, Manager of Retailing Enterprises, LLC