UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division
www.flsb.uscourts.gov

In re:

                                        Case No.  23-14169-SMG

Retailing Enterprises, LLC,                  Chapter 11

                  Debtor.

_____/

## DEBTOR'S EMERGENCY MOTION TO USE CASH COLLATERAL OF CITY NATIONAL BANK OF FLORIDA

### EMERGENCY HEARING REQUESTED

#### Reason for Exigency

**The Debtor requires the use of cash collateral of lender City National Bank of Florida to continue its business operations. Therefore, the Debtor moves the Court on an emergency basis for interim authority to use cash collateral. Undersigned counsel will attempt to contact counsel for the lender prior to the filing of this Motion. The Debtor respectfully requests a hearing on the next available date which this Court deems appropriate.**

Pursuant to Section 363 of Title 11 of the United States Code (the "Bankruptcy Code"), and Rule 4001 of the Federal Rules of Bankruptcy Procedure, (the "Bankruptcy Rules"), Retailing Enterprises, LLC, the Debtor and Debtor-in-Possession (the "Debtor"), by and through undersigned counsel, moves this Court for entry of an order authorizing its continued use of cash collateral on which the lender City National Bank of Florida (the "Lender"), alleges a first priority lien, and to provide adequate protection to the Lender. In support of its motion, the Debtor states as follows:

1.     This case was commenced by the filing of a voluntary petition under Chapter 11, Subchapter V of the Bankruptcy Code on May 30, 2023 [ECF 1]. The Debtor continues to operate its business as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

2.    The Debtor is an authorized retailer of Invicta watches both in domestic retail locations as well as online, with its business premises located at 405 SW 148 Avenue, Suite 1, Davie, Florida. Debtor is the owner of the accounts, equipment, inventory and intangibles (the "Property") which is the subject of the Lender's UCC Financing Statement described *infra*.

3.    As of the filing date, the Debtor is indebted to the Lender in the total amount of approximately $7,657,243.17[1] (the "Indebtedness").

4.    The Indebtedness is comprised of a line of credit and two (2) term loans which are secured by, *inter alia*, a Promissory Note, Commercial Security Agreement, and Guaranties of Payment and Performance executed by Retailing Enterprises PR, Inc., Newport Venture Limited[2], The Watch Brand Company, LLC, and Mauricio Krantzberg.

5.    Initially, on October 28, 2018, the Debtor and Lender entered into a loan agreement (the "Initial Agreement") in the aggregate amount of $10,000,000 (the "Initial Amount"). The Initial Amount was bifurcated into a revolving loan in the amount of $6,500,000 (the "Initial Revolving Loan") and a term loan in the amount of $3,500,000 (the "Initial Term Loan") (collectively, the "Initial Loans").

6.    The Initial Revolving Loan was to be used by Debtor to finance Debtor's short term financing requirements and letters of credit, and the Initial Term Loan was to be used by Debtor to term out a portion of existing accounts payable owed to Invicta Watch Company of America.

7.    To perfect its security interest, Lender filed a UCC financing statement in the Florida Secured Transaction Registry on November 1, 2018, bearing ID number

---

[1] The Debtor is still examining as to the exact amount owed.
[2] In January 2019, Debtor executed a First Amendment and Ratification of Loan Agreement with Lender in which, as additional security for the Initial Loans, Debtor caused Newport Venture Limited to pledge to Lender a first lien and perfected security interest in and to the Pledged Account which shall at all times be equal to or greater than $4,000,000.

201806923848 (referred to as the "Initial UCC").

8.      On December 29, 2021, Debtor executed an amended Note in connection with the Initial Loans (the "Amended Promissory Notes") at which time the balance of the Initial Revolving Loan was $6,499,065.62 and the balance of the Initial Term Loan was $590,326.78.

9.      Pursuant to the Amended Promissory Notes, the Initial Revolving Loan amount was adjusted to $4,200,000 (the "Amended Revolving Loan"). The payment terms, which commenced on December 29, 2021, required Debtor to make consecutive monthly payments of accrued interest only with such interest accruing on the unpaid principal balance of the Amended Revolving Loan at a rate per annum equal to the Wall Street Journal Prime Rate. A balloon payment will be due from the Debtor upon maturity of the loan which will occur on December 29, 2024.

10.     Pursuant to the Amended Promissory Notes, the Initial Term Loan amount was adjusted to $2,889,392.30 (the "Amended Term Loan"). The Amended Term Loan has a five-year term with a fixed rate per annum equal to 4.25%. Commencing December 29, 2021, the Debtor made accrued interest only payments for six months. Commencing on June 29, 2022, the applicable principal payment amount was set at $12,500.00 for six months, followed by $20,000.00 for 12 months, $47,500.00 for 12 months, $72,500.00 for 12 months, and $97,500.00 for the last 12 months of the 60-month loan term.

11.     On March 29, 2019, the Lender agreed to make a term loan to the Debtor in the original principal amount of $5,000,000 (the "Second Term Loan"). The purpose of the Second Term Loan was to finance the Debtor's expansion of Invicta Stores.

12.     To perfect its security interest, Lender filed a second UCC financing statement in the Florida Secured Transaction Registry on April 2, 2019, bearing ID number 201908272153 (referred to as the "Second UCC").

13.    On February 15, 2023, the Debtor executed an Amended and Restated Promissory Note in connection with the Second Term Loan balance of $833,333.00 (the "Amended Second Term Loan").

14.    Pursuant to the Amended Second Term Loan agreement, the Debtor, commencing on March 15, 2023, and continuing on the 15th of each month thereafter, Debtor is to make equal monthly payments of principal and interest in the amount of $37,398.04 with the entire outstanding principal balance plus all accrued interest to be due and payable on February 15, 2025.

15.    The Debtor is current on its payments to the Lender.

16.    The cash generated by the Debtor may constitute cash collateral within the meaning of § 363(a) of the Bankruptcy Code (the "Cash Collateral"). The Debtor requires the use of the Cash Collateral for the continued operation of its business in the ordinary course, including payment of expenses attendant thereto, and the Debtor is willing to provide the Lender with adequate protection of its secured interest in the Cash Collateral. Without the use of the Cash Collateral, the Debtor will be forced to discontinue its business operations. The loan documents are available from undersigned counsel upon written request.

17.    By the terms of the Note and Security Agreement, the Debtor granted to the Lender a security interest in all Property of the Debtor.

18.    In order to (i) adequately protect the Lender in connection with the Debtor's use of the Cash Collateral, and (ii) provide the Lender with additional adequate protection in respect to any decrease in the value of its interests in the Property and Cash Collateral (collectively, the "Collateral") resulting from the stay imposed under § 362 of the Bankruptcy Code, or the use of the Collateral by the Debtor, the Debtor would offer as adequate protection of the Lender's collective lien, a first priority post-petition lien on all cash generated by the Debtor's sales post-petition.

4

19.     An immediate and critical need exists for the Debtor to be permitted to access Cash Collateral in order to adequately maintain and service the Property. Therefore, the Debtor seeks a preliminary hearing in accordance with Rule 4001(b)(2) of the Bankruptcy Rules. At the preliminary hearing, the Debtor will seek entry of an interim order in order to preserve the value of its assets so as to avoid immediate and irreparable harm to the estate and to afford the Debtor adequate time to negotiate and seek approval for additional cash collateral use, subject to and within the limits imposed by a mutually agreed-upon budget (the "Budget").

20.     Accordingly, it is appropriate for the Court to enter an order authorizing the use of Cash Collateral by the Debtor in accordance with the terms of the Budget, attached hereto as Exhibit "A".

21.     The terms of the proposed use of the Cash Collateral and adequate protection arrangements are fair and reasonable under the circumstances and reflect the Debtor's exercise of prudent business judgment.

22.     The Debtor believes that the relief sought in this Motion is in the best interest of the Debtor, the estate and creditors, and that the entry of an interim order will allow for the continued operation of the Debtor's business for the purposes set forth above.

WHEREFORE, the Debtor respectfully requests an order authorizing the use of the Cash Collateral pursuant to the terms described herein and granting such other relief as this Court deems just and proper.

I HEREBY CERTIFY that a true and correct copy of the foregoing will be furnished to all creditors and interested parties with the Notice of Hearing on this Motion.

Respectfully submitted,

Wernick Law, PLLC
*Counsel for the Debtor*

5

2255 Glades Road, Suite 324A
Boca Raton, Florida 33431
(561) 961-0922

By: */s/Aaron A. Wernick*
Aaron A. Wernick, Esq.
Florida Bar No. 14059
awernick@wernicklaw.com

Exhibit "A"
Proposed Monthly Budget

| Estimated Monthly Budget May 30th - June 30th | |
|---|---:|
| **Gross Income** | **$8,700,000.00** |
| **Expenses:** | |
| Bank / Payment Processor Charges | $198,000.00 |
| New Store Build Outs | $195,000.00 |
| Computer Expense | $20,000.00 |
| Software Subscriptions | $15,000.00 |
| Digital Marketing Expenses | $550,000.00 |
| E-mail marketing and customer fraud protection | $97,000.00 |
| Insurance | $45,500.00 |
| Office & Stores Rent | $179,000.00 |
| License Expenses for Invictastores.com website | $95,500.00 |
| Logistic Expenses | $155,000.00 |
| Payments for new Inventory | $4,310,000.00 |
| Office / Store Supplies | $50,000.00 |
| Outsourcing Services (Customer Service Team, IT, Finance, Marketing, Ecommerce & Server Support) | $433,000.00 |
| Payroll Expense | $1,010,000.00 |
| Payroll Health Insurance | $30,000.00 |
| Postage and Shipping Expense | $326,000.00 |
| Professional Fees | $50,000.00 |
| Property Tax for Stores | $75,000.00 |
| Repair & Maintenance for Stores | $10,000.00 |
| Royalty Expense | $150,000.00 |
| Sales Tax | $478,000.00 |
| Taxes & Licenses | $11,500.00 |
| Travel Expenses | $60,000.00 |
| Telecommunications (Internet, Telephone, ERP license) | $48,000.00 |
| UST Fees | $66,000.00 |
| Utilities | $15,000.00 |
| **Total Expenses** | **$8,672,500.00** |
| **Net Operating Income** | **$27,500.00** |

Exhibit "B"
<u>Proposed Order</u>

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division
www.flsb.uscourts.gov

In re:

Retailing Enterprises, LLC,

                    Debtor.
_____/

Case No.  23-14169-SMG
Chapter 11

**INTERIM ORDER GRANTING DEBTOR'S MOTION TO USE CASH
<u>COLLATERAL OF CITY NATIONAL BANK OF FLORIDA</u>**

**THIS MATTER** came before the Court on _____, 2023 at ____ a.m. in Fort

Lauderdale, Florida upon the Debtor Retailing Enterprises, LLC's (the "Debtor") *Emergency*

*Motion to Use Cash Collateral of City National Bank of Florida* [ECF __] (the "Motion").

Adequate notice of the hearing was given under the circumstances.  The Court, having

reviewed the record and having heard the proffers of counsel, and being otherwise fully

advised in the premises, does hereby

**ORDER and ADJUDGE** as follows:

1.      The Motion is **GRANTED** to the extent set forth herein.

2.      The Debtor is hereby authorized to use the Cash Collateral (as defined in the

Motion) of City National Bank of Florida, (the "Lender") in the manner set forth in the Motion

and provided in this Order, on an interim basis until _____, 2023.

8

3.      The Debtor is hereby permitted to use Cash Collateral, as defined in 11 U.S.C. § 363(a), including the cash or noncash proceeds of assets that were not Cash Collateral on the Petition Date ("Cash Collateral") up to the amounts shown in the Budget attached hereto.

4.      As a condition of permitting the Debtor to use Cash Collateral as provided herein, the Debtor will operate strictly in accordance with the Budget and to spend Cash Collateral, not to exceed ten percent (10%) above the amount shown in the Budget.

5.      As adequate protection for the use of Cash Collateral and for any diminution in value of the Lender's prepetition collateral as described in the loan documents between the Debtor and the Lender (the "Pre-petition Collateral"), the Lender is hereby granted a valid, perfected lien upon, and security interest in, to the extent and in the order of priority of any valid lien pre-petition, all cash generated post-petition by the "Property" (as defined in the Motion)

6.      Unless waived by the Lender in writing, the following constitute events of default (an "Event of Default"):

     a.      If a trustee is appointed in this Chapter 11 Case;
     b.      If the Debtor breaches any term or condition of this Order or any of the Lender's loan documents, other than defaults existing as of the Petition Date;
     c.      If the Case is converted to a case under Chapter 7 of the Bankruptcy Code;
     d.      If the case is dismissed; or
     e.      If any violation or breach of any provision of this Order occurs.

7.      If an Event of Default occurs, the Lender may file with the Court a Notice of Default and seek relief on an expedited basis.

8.      Upon receipt of notice of an Event of Default, the Debtor may file an appropriate expedited motion for authority to use Cash Collateral.

9.      The Debtor may exceed the line item expenses, up to ten percent (10%) of the amount shown in the Budget, with the Lender's written consent. In consenting to a Budget

item in the future or by taking any other actions pursuant to this Order, the Lender shall not have any liability to any third party and shall not be deemed to be in control of the operations of the Debtor or to be acting as a "responsible person" with respect to the operation or management of the Debtor.

10.    The postpetition liens and security interests granted to the Lender, if any, shall be valid and perfected post-petition, to the extent and priority of the prepetition lien(s), without the need for execution or filing of any further documents or instruments otherwise required to be filed or be executed or filed under non-bankruptcy law.

11.    The Debtor shall forthwith serve a copy of this Order and the Motion on all parties and counsel entitled to notice pursuant to Rule 4001(b) of the Bankruptcy Rules.

12.    Nothing herein shall limit or prejudice the Lender from seeking such other or further relief or right available in law, under the Code or otherwise.

13.    The Court shall conduct a final/continued hearing on the use of cash collateral of the Lender on _____, 2023 at _____a.m./p.m. at the US Bankruptcy Court, 299 East Broward Blvd., Courtroom _____, Fort Lauderdale, Florida, 33128.

###

Submitted by:
Aaron A. Wernick, Esq.
Wernick Law, PLLC
*Counsel for the Debtor*
2255 Glades Road, Suite 324A
Boca Raton, FL 33431
(561) 961-0922
awernick@wernicklaw.com

*Attorney Wernick is directed to serve a copy of this order on all parties in interest and file an appropriate certificate of service.*