UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division
www.flsb.uscourts.gov

In re:

Retailing Enterprises, LLC,

Case No. 23-14169-SMG
Chapter 11

          Debtor.
_____/

**DEBTOR'S EMERGENCY MOTION FOR AN ORDER AUTHORIZING PAYMENT OF PREPETITION CLAIMS OF CRITICAL VENDORS**
**(Emergency Hearing Requested)**

**Statement of Exigent Circumstances**

The Debtor respectfully requests the Court to conduct an expedited hearing on this Motion, as it is essential for the Debtor to pay certain vendors for the continued operation of Debtor's business. The vendors that the Debtor seeks to pay through this Motion are critical to the Debtor's daily operations and, thus, critical to the successful reorganization of the Debtor's operations. Without payments to certain vendors the Debtor's business will likely suffer significant, if not irreparable, harm. The Debtor respectfully requests that the Court waive the provisions of Local Rule 9075-1(B), which requires an affirmative statement that a bona fide effort was made to resolve the issues raised in this Motion, as the relief requested herein is urgent in nature and does not lend itself to advance resolution.

Retailing Enterprises, LLC, Debtor and Debtor-in-Possession ("Debtor"), pursuant to 11 U.S.C. § 105(a), Bankruptcy Rule 6003(b) and Local Rule 9013-1(K), files this *Debtor's Emergency Motion for an Order Authorizing Payment of Prepetition Claims of Critical Vendors* (the "Motion") seeking the entry of an Order authorizing the Debtor to pay the prepetition claims of Invicta, its sole supplier of watches, with such authorization critical to the operation of Debtor's business. In support of the Motion, the Debtor respectfully represents as follows:

**Background**

1.      On May 30, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for

relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

2.  The Debtor is operating its business and managing its affairs as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.  The Debtor commenced this Chapter 11 case in order to stabilize its operations and to reorganize its debts.

4.  The Debtor is an authorized retailer of Invicta watches, both in domestic retail locations as well as online, and has approximately 175 employees. The Debtor currently operates 24 brick and mortar locations, primarily in Florida, but also in Georgia, New York, Texas, New Jersey, Maryland, Delaware, and Nevada. The Debtor also sells Invicta watches online, primarily on www.invictastores.com.[1] The Debtor's net sales in 2021 were approximately $80,000,000 and in 2022 were $115,000,000.

5.  The Debtor's retail locations sell only Invicta watches and no other brands. The Debtor's brick and mortar locations display the name "Invicta" prominently on their storefronts, with no other name listed.

6.  The Debtor, as a non-exclusive distributor of Invicta watches, has the authorization to sell product in the United States, including Puerto Rico, with such authorization provided by the manufacturer, Invicta Watch Company of America ("Invicta") through a non-exclusive distributor agreement ("Distribution Agreement").

7.  Pursuant to the Distribution Agreement, the Debtor is unable to procure its inventory from any other seller of Invicta watches; i.e., another reseller.

8.  In its ordinary course of business, the Debtor purchases inventory from Invicta on 120-150 day terms. No interest is charged for this arrangement. On average, $500,000-$1,200,000 of product is delivered to the Debtor per week, and a similar amount is paid

---

[1] This site was built by the Debtor's owner, Mauricio Krantzberg, and he is the past and current owner of the site. Mr. Krantzberg leases the site to the Debtor.

weekly to Invicta. The usual and customary practice of the parties is that the weekly payments are applied to the oldest invoices first ("First in, first out").

9. The Debtor currently owes Invicta approximately $31 million for inventory provided over the past 4-5 months.

10. The entirety of the Debtor's business is selling Invicta watches, which are supplied by the manufacturer, Invicta. Therefore, without an uninterrupted supply of goods from Invicta, the Debtor would not be able to operate.

11. Of particular note, this arrangement with Invicta has proven to be a profitable business strategy for the Debtor, as the Debtor is able to purchase large quantities of goods at discounted wholesale prices. The main causes of the filing of this chapter 11 case were primarily the disputes with various landlords, including but not limited to Vornado Realty Trust and Simon Property Group, and not due to a lack of sales of Invicta watches nor due to the business dealings between the Debtor and Invicta.

12. The relationship between the Debtor and Invicta is one of arms-length. Neither party is an "insider", as defined in the Code, of the other, and ownership and operations are separate.

**Relief Requested and Basis Therefor**

13. By this Motion, the Debtor respectfully requests the entry of an order authorizing the Debtor to pay the prepetition claims of Invicta, totaling $31,000,000 in the aggregate, that are critical to the Debtor's business.

14. The Debtor is not seeking to pay Invicta a lump sum of the amount of arrears; rather, the Debtor is requesting to continue its ordinary and customary relationship with Invicta which has been in place since the Debtor's inception in 2011.

15. More specifically, the Debtor will continue to pay Invicta in the ordinary course as described in ¶ 8 herein.

16. The Debtor believes that without approval to continue this long-standing business arrangement, Invicta will no longer supply inventory to the Debtor, which will put the Debtor out of business and into a forced liquidation, to the detriment of creditors and the Estate.

## MEMORANDUM OF LAW

17. Section 363(b)(1) of the Bankruptcy Code provides, "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." Additionally, Section 105(a) of the Bankruptcy Code grants bankruptcy courts broad authority and discretion to enforce the provisions of the Bankruptcy Code either under specific statutory fiat or under applicable equitable common law principles. Together, Sections 363(b)(1) and 105(a) provide courts with the power to authorize payment of pre-petition amounts for critical vendors. *In re Tropical Sportswear Int'l Corp.*, 320 B.R. 15, 20 (Bankr. M.D. Fl. 2005) ("Bankruptcy courts recognize that section 363 is a source for authority to make critical vendor payments, and section 105 is used to fill in the blanks.").

18. In *Tropical Sportswear*, the court held that a 2-part test was needed to determine whether payments of prepetition amounts would be permitted: "when (1) those critical vendors are indeed critical and have refused to do business with a debtor absent payment; and (2) only if the court finds that the disfavored creditors will be at least as well off as a result of the court's granting critical vendor status to the select vendors." *Id*. at 17.

19. In *In re Kmart Corporation*, the Seventh Circuit considered the basis for critical vendor claims, finding the debtor must prove that (1) but for payment of its pre-petition claim, it will cease dealing with the debtor; and (2) the debtor's business will gain benefit from continued transactions with the critical vendor such that a residual benefit will be conferred upon the remaining creditors, or at least will leave them no worse off. 359 B.R. 866, 868 (7th Cir. 2004). Ultimately, "if paying the critical vendor [] would enable a successful

reorganization and make even the disfavored creditors better off, then all creditors favor payment whether or not they are designated as 'critical.'" *Id*. at 872.

20. Other courts, in considering the impact of *In re Kmart*, have developed a three-prong test to determine critical vendor status: "(1) the vendor must be necessary for the successful reorganization of the debtor; (2) the transaction must be in the sound business judgment of the debtor; and (3) the favorable treatment of the critical vendor must not prejudice other unsecured creditors." *See, e.g.*, *In re Corner Home Care, Inc.*, 438 B.R. 122, 127 (Bankr. W.D. Ky. 2010); *In re United American, Inc*., 327 B.R. 776, 782 (Bankr. E.D. Va. 2005).]

21. Here, Invicta will almost certainly cease to do business with the Debtor if payments do not continue as they have for over a decade. In addition, the "disfavored creditors" will be significantly better off, as the Debtor will be able to continue to operate and therefore fund a plan of reorganization for the benefit of all creditors.

## **CONCLUSION**

22. The continuing payments of Invicta's claims is justified because (a) such payments will advance the Debtor's reorganization efforts by ensuring a continuing and uninterrupted supply of goods for sale, (b) the payment terms proposed by the Debtor represent a prudent exercise of the Debtor's business judgment, as this arrangement has proven to be profitable for the Debtor since its inception, and (c) the disfavored creditors will fare worse if the Motion were denied, as the Debtor will be forced to liquidate, which will only benefit the senior secured lender, City National Bank, and no amounts will be available for general unsecured creditors[2]. If the Motion is denied, the Debtor's business will suffer substantial and immediate harm.

---

[2] City National Bank has secured claims in the approximate amount of $18M, secured by inventory of less than $7M.

WHEREFORE, the Debtor respectfully requests the Court enter an order in the form attached hereto as Exhibit "A"; granting the relief requested in the Motion; authorizing the Debtor to pay Invicta's claims on the terms described herein, and granting such other and further relief as this Court deems just and proper.

Dated: May 30, 2023

                                            Wernick Law, PLLC
*Counsel for the Debtor*
2255 Glades Road, Suite 324A
Boca Raton, Florida 33431
(561) 961-0922

By: */s/Aaron A. Wernick*
Aaron A. Wernick, Esq.
FL Bar No. 14059
awernick@wernicklaw.com

Exhibit "A"
(Proposed Order)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division
www.flsb.uscourts.gov

In re:

Retailing Enterprises, LLC,

Case No. 23-14169-SMG
Chapter 11

       Debtor.
_____/

**ORDER GRANTING DEBTOR'S EMERGENCY MOTION FOR AN ORDER AUTHORIZING PAYMENT OF PREPETITION CLAIMS OF CRITICAL VENDORS**

**THIS MATTER** came before the Court for a hearing on _____, 2023 at ___ a.m./p.m. in Fort Lauderdale, Florida upon the *Debtor's Emergency Motion for an Order Authorizing Payment of Prepetition Claims of Critical Vendors* (the "Motion") [ECF No. ___] filed by the above-captioned debtor and debtor-in-possession (the "Debtor"). The Court finds that (i) it has jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C. §§ 157 and 1334; (ii) the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); (iii) venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; (iv) the relief requested in the Motion is in the best interests of the Debtor, its estate and its creditors; (v) proper and

adequate notice of the Motion and the hearing thereon has been given under the circumstances and no other or further notice is necessary; and (vi) upon the record herein after due deliberation thereon good and sufficient cause exists for the granting of the relief as set forth herein. Accordingly, it is

**ORDERED** as follows:

1. The Motion is **GRANTED**.

2. The Debtor is hereby authorized to pay Invicta's claims on the terms described in the Motion.

# # #

Submitted by:
Aaron A. Wernick, Esq.
*Counsel for the Debtor*
Wernick Law, PLLC
2255 Glades Rd., Ste. 324A
Boca Raton, FL 33431
(561) 961-0922
awernick@wernicklaw.com