UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division
www.flsb.uscourts.gov

In re:

Case No.  23-14169-SMG
Chapter 11

Retailing Enterprises, LLC,

Debtor.
_____/

## DEBTOR'S AMENDED DISCLOSURE STATEMENT

Wernick Law, PLLC
*Attorneys for the Debtor*
Aaron A. Wernick, Esq.
2255 Glades Road, Suite 324A
Boca Raton, Florida 33431
(561) 961-0922
awernick@wernicklaw.com

<u>DEBTOR'S AMENDED DISCLOSURE STATEMENT</u>

RETAILING ENTERPRISES, LLC (the "<u>Debtor</u>") provides this Amended Disclosure Statement (the "<u>Disclosure Statement</u>") to all known creditors of Debtor to disclose the information deemed to be material, important, and necessary for a creditor to arrive at a reasonably informed decision in exercising its right to abstain from voting or to vote for acceptance or rejection of Debtor's Plan of Reorganization (the "<u>Plan</u>"). Within the prior eleven (11) year period, Debtor has also been known as "Invicta", "Invicta Stores USA", "Techno Marine Store", and "Invicta Store". A copy of the Plan accompanies this Disclosure Statement.

The United States Bankruptcy Court for the Southern District of Florida, Fort Lauderdale Division (the "<u>Court</u>") has set a hearing on confirmation of the Plan for _____ at _____, at the United States Courthouse, 299 E. Broward Blvd., Courtroom 308, Fort Lauderdale, Florida, 33301. You may vote on the Plan by filling out and mailing the accompanying ballot form to the Court. Your ballot must be filed on or before _____. As a creditor, your vote is important. For the Plan to be deemed accepted, of the ballots cast, creditors that hold as least 2/3 in amount and more than 1/2 in number of the allowed claims of impaired classes must accept the Plan. However, you are advised that Debtor may be afforded the right under Title 11 of the United States Code §§ 101 *et seq.* (the "<u>Bankruptcy Code</u>") to have the Plan confirmed over the objections of dissenting creditors consistent with the limitations set forth in the Bankruptcy Code.

THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT

HAS BEEN SUBMITTED BY DEBTOR UNLESS SPECIFICALLY STATED TO BE FROM OTHER SOURCES. NO REPRESENTATIONS CONCERNING DEBTOR (PARTICULARLY AS TO DEBTOR'S FUTURE BUSINESS OPERATIONS OR THE VALUE OF DEBTOR'S PROPERTY) ARE AUTHORIZED OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT. ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE WHICH ARE OTHER THAN AS CONTAINED IN THIS DISCLOSURE STATEMENT SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION, AND SUCH ADDITIONAL REPRESENTATIONS AND INDUCEMENTS SHOULD BE REPORTED TO COUNSEL FOR DEBTOR, WHO IN TURN SHALL DELIVER SUCH INFORMATION TO THE UNITED STATES TRUSTEE FOR SUCH ACTION AS MAY BE DEEMED APPROPRIATE.

You are urged to carefully read the contents of this Disclosure Statement before making your decision to accept or reject the Plan. Particular attention should be directed to the provisions of the Plan affecting or impairing your rights as they presently exist. The terms used herein have the same meaning as in the Plan unless the context hereof requires otherwise.

Projections of results of future operations are based on Debtor's best estimates in light of current market conditions, past experience, analysis of general economic conditions, and other estimates which will bear on the results.

## ARTICLE I
## DEFINITIONS

The Definitions set forth in Article I of the Plan are incorporated herein.

# ARTICLE II

## PRELIMINARY STATEMENT AND
## HISTORY AND FINANCIAL CONDITION OF DEBTOR

### (A) HISTORY OF DEBTOR AND SUMMARY OF REASONS
### FOR FILING PETITION

Debtor filed a voluntary petition for reorganization (the "Petition") under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Florida (the "Court") on May 30, 2023 (the "Petition Date"). Debtor is an official reseller and distributor of Invicta watches online (at www.invictastores.com and other re-directing links) and in eighteen (18) physical retail locations across the United States with its main business premises located at 405 SW 148th Avenue, Suite 1, Davie, Florida 33325.[1] Debtor's brick-and-mortar locations are primarily in Florida, but also in Georgia, New York, Texas, New Jersey, Maryland, Delaware, and Nevada. Debtor's retail locations sell only Invicta watches from Invicta Watch Company of America ("Invicta") and no other brands. Debtor's brick-and-mortar locations display the name "Invicta" prominently on their storefronts, with no other name listed.

Mauricio Krantzberg is Debtor's sole manager, president, and 100% interest holder of Debtor. *See* ECF 134. Debtor owns 100% of Retailing Enterprises PR, LLC. *See* ECF 136. Retailing Enterprises PR, LLC operates a substantially similar business in its brick-and-mortar locations in Puerto Rico.

---

[1] Details of each leased retail location are attached to *Debtor's Expedited Motion for Extension of Time for Performance of Obligations Arising Under Unexpired Non-Residential Real Property Leases* as Exhibit A. *See* ECF 22.

DocuSign Envelope ID: 22EA3E5E-3DDC-45BE-AE85-866A094875F4

The main causes of the filing of this chapter 11 case were primarily the disputes with various landlords, including but not limited to Vornado Realty Trust ("Vorando") and Simon Property Group ("Simon Properties"), as well as the need to restructure certain of Debtor's long term liabilities, and not due to a lack of sales. Debtor filed this Chapter 11 case to stabilize its operations, reorganize its debts, and attempt to resolve ongoing disputes with several of its landlords.

1.  **Debtor's Income**

Debtor's gross income in 2021 was approximately $80,267,809.00, and was $102,651,935.00 in 2022. From January 1, 2023 through the Petition Date, Debtor's gross income was $34,034,723.08.

2.  **Debtor's Assets**

Debtor estimates the total asset value at $17,744,946.06 as of the Petition Date, consisting of:

a.  Cash and bank accounts: $48,356.63

b.  Deposits and prepayments: $482,574.83

c.  Prepaid Sales Taxes: $56,226.45

d.  Other Prepayments: $18,243.39

e.  Accounts Receivable: $2,095,134.50

f.  Mutual Funds: $35,200.00

g.  Vehicle: $20,154.25

h.  Finished Goods: $14,877,807.26

i.  Office Furniture, Fixtures, and Equipment: $111,248.75

(B) <u>SIGNIFICANT EVENTS DURING THE BANKRUPTCY CASE</u>

**1.** **<u>Retention of Professionals</u>**

**a. *Bankruptcy Counsel***

Debtor, through counsel, filed an application to employ Aaron A. Wernick, Esq. and Wernick Law, PLLC as general bankruptcy counsel on May 30, 2023 [ECF 4]. Said application was approved by Court Order dated June 28, 2023 [ECF 152]. Prepetition, Debtor paid a $100,000.00 initial retainer for the filing of this case. Subsequently, Debtor filed a motion requesting authority for monthly payments of interim fees of Chapter 11 professionals. *See* ECF 11. The Court entered an order granting the motion to establish monthly payment procedures of interim fee applications on June 29, 2023. *See* ECF 156.

**b. *Financial Advisor***

Additionally, Debtor filed an application to employ Katie Goodman of GGG Partners, LLC as Financial Advisor to Debtor. *See* ECF No. 108. Debtor required the immediate appointment of a financial advisor to assist Debtor with completion of Debtor's initial schedules, with UST requirements, and to advise Debtor on financial issues such as efficient allocations of capital to maximize cash flow. The application to employ Katie Goodman of GGG Partners, LLC was approved as modified pursuant to the terms of Court order dated June 29, 2023. *See* ECF 153.

**c. *Accountants***

Debtor filed the application to employ Mary Pulcini, CPA, Mark Nemet, CPA, and Pulcini & Nemet CPA's PA as accountants for the purposes of tax accounting,

DocuSign Envelope ID: 22EA3E5E-3DDC-45BE-AE8F-856A004875F4

preparing, and filing Debtor's 2022 tax return, and reviewing 2022 financial statements. *See* ECF 166. Said employment was approved on August 7, 2023. *See* ECF 203.

### 2. Meeting of Creditors / Committee of Creditors

The 341 Meeting of Creditors was held and concluded on June 29, 2023 [ECF 33]. Pursuant to 11 U.S.C. § 1102(a), the United States Trustee appointed a committee of creditors holding unsecured claims (the "Committee") [ECF 104]. No trustee or examiner has been appointed as of the filing of this Disclosure Statement.

The Committee filed applications: (i) to employ Joshua W. Dobin, Esq. and the law firm of Meland Budwick, P.A. as its attorneys in this case [See ECF 171]; and (ii) to employ Maria M. Yip, CPA, CFE, CIRA, CFF and the firm of Yip Associates as financial advisors to the Committee to assist in investigating the financial affairs of Debtor and other financial matters [ECF 172]. Both applications were approved on August 2, 2023. *See* ECF 198 and 199.

### 3. Claim of CNB and Cash Collateral

#### a. *Claim of CNB*

As of the Petition Date, Debtor was indebted to City National Bank of Florida ("CNB") in the total amount of approximately $7,657,243.17. Said Claim is comprised of a line of credit and two (2) term loans which are secured by, *inter alia*, a Promissory Note, Commercial Security Agreement, and Guaranties of Payment and Performance executed by Retailing Enterprises PR, Inc., Newport Venture Limited, The Watch Brand Company, LLC, and Mauricio Krantzberg.

Initially, on October 28, 2018, Debtor and CNB entered into an initial loan agreement in the aggregate amount of $10,000,000. This initial amount was bifurcated into an initial revolving loan for $6,500,000 and a term loan for $3,500,000. The initial revolving loan was to be used by Debtor to finance Debtor's short-term financing requirements and letters of credit, and the initial term loan was to be used by Debtor to term out a portion of existing accounts payable owed to Invicta.

To perfect its security interest, CNB filed an initial UCC financing statement in the Florida Secured Transaction Registry on November 1, 2018, bearing ID number 201806923848. On December 29, 2021, Debtor executed an amended Note in connection with the initial loans referenced above at which time the balance of the initial revolving loan was $6,499,065.62 and the balance of the initial term loan was $590,326.78.

Pursuant to the amended Promissory Notes, the initial revolving loan amount was adjusted to $4,200,000. The payment terms, which commenced on December 29, 2021, required Debtor to make consecutive monthly payments of accrued interest only with such interest accruing on the unpaid principal balance of the Amended Revolving Loan at a rate per annum equal to the Wall Street Journal Prime Rate. A balloon payment would be due from Debtor upon maturity of the loan which will occur on December 29, 2024.

Pursuant to the amended Promissory Notes, the initial term loan amount was adjusted to $2,889,392.30. The amended term loan has a five-year term with a fixed rate per annum equal to 4.25%. Commencing December 29, 2021, Debtor made

accrued interest-only payments for six months. Commencing on June 29, 2022, the applicable principal payment amount was set at $12,500.00 for six months, followed by $20,000.00 for 12 months, $47,500.00 for 12 months, $72,500.00 for 12 months, and $97,500.00 for the last 12 months of the 60-month loan term.

On March 29, 2019, CNB agreed to make a second-term loan to Debtor in the original principal amount of $5,000,000. The purpose of this second-term loan was to finance Debtor's expansion of its stores. To perfect its security interest, CNB filed a second UCC financing statement in the Florida Secured Transaction Registry on April 2, 2019, bearing ID number 201908272153. On February 15, 2023, Debtor executed an Amended and Restated Promissory Note in connection with the second-term loan balance of $833,333.00. Pursuant to this amended Second Term Loan agreement, Debtor, commencing on March 15, 2023, and continuing on the 15th of each month thereafter, Debtor is to make equal monthly payments of principal and interest of $37,398.04 with the entire outstanding principal balance plus all accrued interest to be due and payable on February 15, 2025.

The Debtor is current on its payments to the Lender. CNB has a security interest in all property of Debtor. Said indebtedness is secured by valid, enforceable, properly perfected, first priority, and unavoidable liens on and security interests on and encumbering substantially all of the tangible and intangible assets of Debtor.

### b. Cash Collateral

The cash generated by Debtor may constitute cash collateral within the meaning of § 363(a) of the Bankruptcy Code. Debtor requires the use of cash collateral

for the continued operation of its business in the ordinary course, including payment of expenses attendant thereto. Without the use of cash collateral, Debtor would be forced to discontinue its business operations. Thus, on May 30, 2023, Debtor filed the *Emergency Motion to Use Cash Collateral of City National Bank of Florida* [ECF 6] to continue its business operations.

Christiana Mall LLC, North Star Mall, LLC, and Perimeter Mall, LLC (collectively, the "Brookfield Landlords") filed a Limited Objection to Debtor's cash collateral motion on June 21, 2023. *See* ECF 128. Queens Center SPE, LLC ("Queens Center") and Simon Properties, Sunrise Mills (MLP) Limited Partnership, JG Elizabeth II, LLC, Las Vegas South Outlets, LLC, Las Vegas North Outlets, LLC, Orlando Vineland PO, LP, Orlando Outlet Owner, LLC, San Marcos Premium Outlets, LP, Florida Mall Associates, Ltd., The Retail Property Trust, and Mall at Miami International, LLC (collectively, the "Simon Landlords") filed a joinder. *See* ECF 130 and 131. Additionally, Horizon Group Properties, Inc. and Brooks Shopping Centers LLC filed a joinder. *See* ECF 132.

This Court entered interim orders granting Debtor's use of cash collateral. See ECF 93, 159 and 200. The Court conducted a further hearing on September 6, 2023, at which time the Debtor and other parties announced to the Court that agreement as to the form of a final cash collateral agreement had been reached, and that the proposed order resolved the aforementioned objections.

4. **Maintenance of Existing Cash Management System**

The Office of the UST, as per its Guidelines, requires a debtor to close all

prepetition bank accounts. As such compliance must be effectuated in short order, on May 30, 2023, Debtor filed the *Expedited Motion for Entry of Interim and Final Orders (i) Authorizing Maintenance of Certain Existing Bank Accounts and Cash Management System, (ii) Authorizing Continued Use of Certain Credit Cards, (iii) Waiving Certain U.S. Trustee Requirements in Connection Therewith, and (iv) Granting Related Relief* ("Cash Management System Motion") [ECF 7] to permit Debtor to maintain its cash management system to avoid disruption to its business and cash flow.

Prior to the Petition Date, Debtor used a cash management system in the ordinary course of business to efficiently collect, transfer, and disburse funds generated by its business operations. This cash management system consists of thirty-one (31) bank accounts at Bank America and one (1) bank account at CNB. Bank of America and CNB are both authorized depositories pursuant to the *United States Trustee's Authorized Depository Listing* established for the Southern District of Florida.

Each of Debtor's twenty-four (24) retail locations, as well as the website sales platforms, maintain a separate Bank of America account for making daily deposits through the various mediums, including ACH, credit card, paper checks, or electronic checks. The balance of each deposit account is swept nightly into its Bank of America account x1872 and the total is transferred to its Bank of America x6734 daily. Some funds are then swept into the CNB operating account for payments of expenses.

Debtor makes disbursements for accounts payable, payroll, and other

employee obligations from Bank of America's x4969 and CNB x6734. Debtor pays such obligations either through wire transfer or ACH from the Disbursement Accounts, or via credit card as discussed below. Each of Debtor's retail locations takes in cash payments each day, and the manager of each store deposits such cash on a daily basis into that store's Bank of America account, with such branch located in the mall where the store is located, or in close proximity. Utilizing bank accounts for separate locations aids Debtor in reconciling sales and expenses. Furthermore, each account is connected to six (6) different payment systems: Visa, American Express, Affirm, Genesis, Progressive, and Synchrony.

Additionally, Debtor utilizes American Express credit cards to pay a small portion of Debtor's trade vendors who only accept credit card payments, or to pay the trade vendors who either only accept American Express credit card payments, or for who service, American Express ensures an uninterrupted payment process. Debtor utilizes three (3) business Bank of America Visa credit card accounts with twenty-five (25) individual cards issued to each store manager, area managers, regional managers, IT department manager, and warehouse manager. The Visa credit cards are used for employee travel expenses and are needed for store repairs and maintenance.

Debtor's credit cards provide Debtor with at least a 30-day float before making payments when the credit card balance is due. The ability to use cash during that time improves Debtor's liquidity for daily operations and cash management by allowing Debtor to smooth out and normalize cash outflows. Additionally, said credit

cards provide the added convenience to the Debtor of paying obligations by credit card rather than by wire or check. The credit cards are an integral part of the Debtor's cash management system and are utilized in the ordinary course of business.

Maintaining Debtor's cash management system is vital to ensuring Debtor's seamless transition into bankruptcy and avoids many of the possible disruptions and distractions that could divert Debtor's attention from more pressing matters during the initial days of the Chapter 11 Case.

On June 13, 2023, this Court entered an Order granting Debtor's Cash Management System Motion and permitting Debtor to continue using its prepetition bank accounts at Bank of America and CNB, and to continue using its existing American Express credit cards x13028 and x31006, and its Bank of America credit cards x2570, x6005, and x7894. *See* ECF 98. Debtor shall sweep all funds from its other accounts into its DIP account at CNB on a daily basis, and shall use the DIP account for all disbursements, including wire and ACH transfers, with the exception of the automatic payments listed in Exhibit "A" to Debtor's motion, which will be disbursed from Bank of America account x4969, and as long as said account's balance does not exceed $250,000.00.

**5. Continued Administration of Insurance Policies**

In the operation of Debtor's business, Debtor maintains many insurance policies since Debtor operates at several locations. Debtor filed a motion for authority to administer these policies and related premium finance and security agreements,

DocuSign Envelope ID: 22EA3E5E-3DDC-45BE-AE55-856A09487554

and to honor certain obligations in respect thereof. *See* ECF 106. Said motion was granted pursuant to Court order dated June 29, 2023. *See* ECF 155.

**6. Prepetition Wage Claims**

As of the Petition Date, Debtor employed approximately one hundred sixty-four (164) employees. Collectively, the employees are paid approximately $278,810.83 per pay period. In addition, tax liabilities are approximately $50,842.42 per pay period. Debtor filed the *Emergency Motion for Interim and Final Orders Authorizing Debtor to Honor and/or Pay Prepetition Wages and Salaries* (the "Wage Motion") [ECF 8] that seeks authority to pay the outstanding amounts owed to the employees, including wages, and all federal and state withholding and payroll-related taxes relating to prepetition periods, such as Social Security and Medicare taxes.

Debtor depends on its ability to retain its existing skilled and dedicated employees for the continued operation of its business. Absent compensating them for their amounts due, existing employees and their families will suffer undue hardship because the funds requested to be paid are needed to enable the employees and their families to meet their financial obligations. If Debtor was unable to pay its employees, many employees may seek other employment. Accordingly, it is critical that any hardship and disruption caused by the Chapter 11 case be minimized to preserve morale, maintain Debtor's workforce, and preserve Debtor's going concern value. Employee's morale directly affects employee effectiveness and productivity, and could undermine Debtor's stability, and undoubtedly have a negative effect on Debtor, its clients, the value of its assets and business, and ability to achieve its objectives in

Chapter 11.

This Court entered a Final Order on June 13, 2023 granting Debtor's Wage Motion. *See* ECF 96. Debtor's request to pay prepetition wages and salaries, plus associated payroll taxes, to all 164 employees, was granted. Additionally, the request to pay the prepetition salary of Mauricio Krantzberg was granted.

### 7. <u>Critical Vendors</u>

On May 30, 2023, Debtor filed the *Emergency Motion for an Order Authorizing Payment of Prepetition Claims of Critical Vendors* (the "<u>Critical Vendor Motion</u>") [ECF 9] to pay the prepetition claims of Invicta in the ordinary course. As mentioned above, Debtor's retail locations sell only Invicta watches and no other brands. Debtor's brick-and-mortar locations display the name "Invicta" prominently on their storefronts, with no other name listed. Debtor, as a non-exclusive distributor of Invicta watches, has the authorization to sell product in the United States, including Puerto Rico, with such authorization provided by the manufacturer, Invicta Watch Company of America ("<u>Invicta</u>") through a non-exclusive distributor agreement. Pursuant to said distribution agreement, Debtor is unable to procure its inventory from any other seller of Invicta watches; i.e., another reseller.

As of the time of the filing of the motion, Debtor owed Invicta approximately $31 million for inventory provided over the previous 4-5 months. The entirety of Debtor's business is selling Invicta watches, which are supplied by the manufacturer, Invicta. Therefore, without an uninterrupted supply of goods from Invicta, Debtor would not be able to operate. Of particular note, this arrangement with Invicta had

proven to be a profitable business strategy for Debtor, as Debtor has been able to purchase large quantities of goods at discounted wholesale prices. The relationship between Debtor and Invicta is one of arms-length. Neither party is an "insider", as defined in the Code, of the other, and ownership and operations are separate.

Debtor requested authority to continue paying Invicta's prepetition claims in the ordinary course since without approval to continue this long-standing business arrangement, Invicta will no longer supply inventory to Debtor, which will put Debtor out of business and into a forced liquidation, to the detriment of credits and the estate.

Simon Properties filed an objection to Debtor's Critical Vendor Motion on June 5, 2023. *See* ECF 47.

On June 20, 2023, Debtor withdrew its Critical Vendor Motion. *See* ECF 125. During the case, and of the filing of this Disclosure Statement, Debtor has continued to purchase inventory from Invicta on a C.O.D. basis.

### 8. <u>Financing of Inventory by Invicta</u>

In Debtor's ordinary course of business, Debtor purchases inventory from Invicta on 120-150-day terms. No interest is charged for this arrangement. On average, $500,000-$1,200,000 of product is delivered to Debtor per week, and a similar amount is paid weekly to Invicta. The usual and customary practice of the parties is that weekly payments are applied to the oldest invoices first. Debtor filed a motion that requests authority to continue its ordinary and customary relationship with Invicta that has been in place since Debtor's inception in 2011 since this relationship has proven to be a profitable business strategy for Debtor. *See* ECF 10.

As a condition of the foregoing arrangement, Invicta would retain a purchase money security interest in all postpetition inventory delivered to Debtor, and shall be authorized to execute and file any and all documents necessary to carry out the provisions of such agreement.

On June 20, 2023, Debtor withdrew its motion for approval of financing of inventory by Invicta. *See* ECF 125. During the case, and of the filing of this Disclosure Statement, Debtor has continued to purchase inventory from Invicta on a C.O.D. basis.

### 9. <u>Continued Business with ZWI</u>

Debtor filed the *Agreed Motion to Approve Postpetition Payments to ZWI Group, LLC and Authorize Continued Course of Business* [ECF 53] to continue its ordinary course of business with ZWI Group, LLC ("<u>ZWI</u>"). ZWI is a distributor of Invicta and holds certain unique sku's on a rotating basis, and Debtor has a continuing need for ordering certain product lines from ZWI. This Court entered an Order on June 13, 2023 [ECF 94] granting the ZWI Motion and authorizing Debtor to pay all postpetition invoices issued to Debtor by ZWI for the sale of goods by ZWI to Debtor postpetition within seven (7) days of issuance, subject in all events to Debtor having the right to use the cash collateral of CNB to do so. ZWI will invoice Debtor not more than twice per month.

### 10. <u>Payment of Leases</u>

On June 1, 2023, Debtor filed the *Expedited Motion for Extension of Time for Performance of Obligations Arising Under Unexpired Non-Residential Real Property*

*Leases* [ECF 22] that requested an extension of time for Debtor to perform under its leases with its various landlords. Simon Properties filed an objection to the aforementioned motion on June 5, 2023. *See* ECF 45. Brookfield Landlords, Horizon Group Properties, Inc. and Brooks Shopping Centers LLC, and Queens Center SPE, LLC also filed objections to same on June 6, 2023. *See* ECF 59, 60, 63, and 69. Said motion was granted in part and denied in part pursuant to Court Order on June 14, 2023. *See* ECF 103. The deadline for Debtor to pay its postpetition rent obligations under its unexpired nonresidential real property leases for the periods May 30-31 and June 2023 was June 16, 2023 which Debtor complied with in full and on time. In addition, Debtor has made all rent payments for all of its operating locations on time and in full during the pendency of this case and as of the filing of this Disclosure Statement.

On June 2, 2023, Simon Properties filed the *Motion to Compel Payment of Administrative Rent or, alternatively, for Relief from the Automatic Stay to Complete Pending State Court Actions* [ECF 34]. This motion to compel was granted in part and denied in part as moot on June 29, 2023. *See* ECF 158. It was denied as moot in light of Debtor's timely payment of post-petition rent to Simon Properties for rent due for May 30-31, 2023 and June 2023, pursuant to the Court's *Order Granting in Part and Denying in Part Debtor's Expedited Motion for Extension of Time for Performance of Obligations Arising Under Nonresidential Real Property Leases [ECF 103].* Simon Properties' request for stay relief was denied. The motion was granted in part in that Debtor must timely perform all the obligations of Debtor under any unexpired lease

of nonresidential real property until such lease is rejected, unless ordered otherwise by the Court, pursuant to 11 U.S.C. § 365(d)(3). As stated above, Debtor has been in full compliance with this requirement during this case.

**11. Rejection of Certain Leases of Simon Properties**

Prior to the Petition Date, Debtor entered into certain leases with Simon Properties. There are six subject leases that are currently unexpired. Debtor, in the sound exercise of its business judgment, determined that certain leases were not necessary for an effective reorganization, and therefore, Debtor filed a motion to reject these leases as of June 30, 2023 so no rent would be paid for July 2023 or any month thereafter as to those particular locations. *See* ECF 80 and 113. Pursuant to Court order, the subject leases were rejected as of June 30, 2023 at midnight. *See* ECF 151.

On June 23, 2023, Simon Landlords filed a notice of withdrawal without prejudice its *Motion to Compel Rejection or Assumption of Simon Properties' Non-Residential Real Estate Leases [ECF 35]. See* ECF 140.

Debtor vacated the premises located at the Town Center Mall in Boca Raton before the Petition Date. Thus, there is no post-petition rent or other administrative rent or other administrative claim owed to Simon Properties for the Town Center Mall location. *See* ECF 150.

The lease for the premises located at Miami International Mall was rejected as of the Petition Date pursuant to Court order dated June 29, 2023 [ECF 150]. Similarly, there is no postpetition rent or other administrative claim owed to Simon

Properties for the Miami International Mall.

**12. <u>Settlement with Arch Insurance</u>**

Prior to the Petition Date, Debtor was a tenant in a lease of a retail store located at Cross County Shopping Center, 8000 Mall Walk, Space #1020, Yonkers, New York. Arch Specialty Insurance Company ("<u>Arch Insurance</u>") had issued a commercial property insurance policy ESP100019003 to Debtor, effective March 1, 2022 to March 1, 2023.

On or about July 8, 2022, a clogged drain line for a rooftop HVAC unit caused water to back up and enter and cause damage to the premises, and Debtor submitted an insurance claim under the aforementioned policy for property damages arising out of the loss. Debtor and Arch Insurance reached an agreement to settlement of any and all claims that may now exist or that may arise in the future between them, which in any manner relate to, or are associated with, the loss and the claim. The terms of said agreement are attached as Exhibit "A" to Debtor's motion to approve same. *See* ECF 167.

In summary, within thirty (30) days from receipt by Arch Insurance of the fully executed Settlement Agreement and a W-9 from Debtor, Arch Insurance made a payment to Debtor in the amount of Three Hundred Twenty-Five Thousand Dollars ($325,000.00), which is a net of a Twenty-Five Thousand Dollar ($25,000.00) deductible. In exchange, Arch Insurance will be released of all claims by Debtor that are related to the loss.

**13. <u>Settlement with City National Bank and MS Facilities, LLC</u>**

The Debtor, its wholly-owned subsidiary Retailing Enterprises of PR, LLC ("RE PR"), its owner Mauricio Krantzberg, its supplier Invicta Watch Company of America, Inc. ("Invicta"), its secured creditor City National Bank of Florida ("CNB"), and its unsecured creditor MS Facilities LLC ("MS"), participated in a judicial settlement conference that concluded in a settlement of claims between them. The essential terms of the settlement are memorialized in a settlement term sheet that was executed on or around November 17, 2023. Those terms are described below.

*CNB Secured Debt*: Newport Venture Limited ("Newport") is a non-debtor that is owned by Mr. Krantzberg's mother. Newport pledged a securities brokerage account as collateral to secure the Debtor's payment obligations on the three pre-petition loans from CNB to the Debtor. Pursuant to the settlement, CNB liquidated Newport's securities account on or around November 10, 2023. The proceeds of that liquidated account amount to $5,901,009.90. Those proceeds will be applied to (i) satisfy up to $200,000.00 in attorneys' fees payable to CNB's counsel, (ii) pay off two of the three secured loans from CNB to the Debtor, and (iii) reduce the balance due on the remaining loan from CNB to the Debtor. The Debtor will satisfy that remaining balance, which is estimated to be approximately $1,708,540.00, over three (3) years. The Subordination of Debt Agreement between CNB, Invicta, and the Debtor, that is dated August 28, 2020, will remain effective pending satisfaction in full of CNB's secured debt.

*Main Street Loan*: The Debtor's unsecured loan from CNB (the "Main Street Loan"), five percent (5%) of which presently is owned by CNB with the remaining

DocuSign Envelope ID: 22EA3E5E-3DDC-45BE-AE5E-856A09487554

ninety-five percent (95%) being owned by MS, will be satisfied in full, and all guaranties related thereto released, through payments from the reorganized Debtor, RE PR, Invicta, and Mr. Krantzberg, as more fully described below. The Debtor's plan classifies the Main Street Loan with the rest of the Debtor's general unsecured creditors. CNB and MS will share *pro rata* in the distribution to general unsecured creditors based on the total amount of the claim for the Main Street Loan, which claim will be allowed in full.

The settlement contemplates a distribution of Eight Hundred Fifteen Thousand Dollars ($815,000.00) from the reorganized Debtor. If the *pro rata* distribution payable on the Main Street Loan amounts to less than Eight Hundred Fifteen Thousand Dollars ($815,000.00), RE PR will pay any deficiency, and Mr. Krantzberg, as additional New Value, personally will guarantee such payments. If the *pro rata* distribution payable on the Main Street Loan amounts to more than Eight Hundred Fifteen Thousand Dollars ($815,000.00), then the balloon payment due from Mr. Krantzberg as New Value, which balloon payment is described below, will be reduced by an amount equal to the difference between the total distribution on the Main Street Loan and Eight Hundred Fifteen Thousand Dollars ($815,000.00). However, if litigation recoveries are the source of funds for a *pro rata* distribution on the Main Street Loan in an amount greater than Eight Hundred Fifteen Thousand Dollars ($815,000.00), then no reduction shall apply, and Mr. Krantzberg, as New Value, must make the full balloon payment in the amount of Three Hundred Thirty-Five Thousand Dollars ($335,000.00), as set forth below.

Mr. Krantzberg as additional New Value will pay approximately Four Hundred Eighty-Five Thousand Dollars ($485,000.00) towards the Main Street Loan. To secure that payment obligation, Mr. Krantzberg, as New Value, will grant CNB a security interest in any and all websites, domain names, and proceeds and fees generated from the websites and domain names, that relate to the Debtor and that are owned by Mr. Krantzberg or any of his affiliates. The collateral pledge is not intended to waive, and shall not be construed as a waiver of, Mr. Krantzberg's administrative claims for licensing and other fees related to websites and domain names.

Mr. Krantzberg's New Value contribution of $485,000.00 on the Main Street Loan shall be made as follows. Seventy-Five Thousand Dollars ($75,000.00) per annum are payable in both 2025 and in 2026, which payments shall be made in equal monthly payments over twenty-four (24) months. A balloon payment of Three Hundred Thirty-Five Thousand Dollars ($335,000.00), which shall also constitute a further New Value contribution, is payable no later than December 31, 2026, which amount is subject to adjustment as set forth above.

Additionally, the Debtor's subsidiary, RE PR, and the Debtor's supplier, Invicta, will make payments on the Main Street Loan. RE PR will pay One Million Five Hundred Thousand Dollars ($1,500,000.00) over three (3) years, and Invicta will pay Two Hundred Fifty Thousand Dollars ($250,000.00) over three (3) years. Mr. Krantzberg, as New Value, personally will guarantee RE PR's $1,500,000.00 payment obligation on the Main Street Loan. Invicta will make monthly payments directly to

CNB in the amount of Six Thousand Nine Hundred Forty-Four Dollars and Forty-Five Cents ($6,944.45) for thirty-six (36) months beginning on the Initial Payment Date and ending no later than December 31, 2026.

*Subordination, Injunction, and Default*: Both the Invicta Subordination Agreement and the Newport Subordination Agreement will remain effective pending satisfaction in full of the Main Street Loan.  To the extent not covered by the subordination agreements, and for the avoidance of doubt, (i) Newport will not receive any payments under the Plan or from any of the parties contributing to payments on the Main Street Loan until the Main Street Loan is paid in full according to the terms set forth above, and (ii) any payments that may be due to Invicta from the Debtor pursuant to the Plan and on account of Invicta's Thirty Million Dollar ($30,000,000.00) claim shall be made directly to CNB on account of the Main Street Loan until the Main Street Loan is paid in full.

So long as the Debtor, Mr. Krantzberg, RE PR, and Invicta are current on their payment obligations on CNB's secured debt and on the Main Street Loan, CNB covenants not to sue or assert any claims, including avoidance claims under Chapter 5 of the Bankruptcy Code, against Mr. Krantzberg, Island Cabo, Newport Venture Limited, 405 Southwest Real Estate Company, LLC, or RE PR.  Upon full performance of the settlement obligations set forth below, CNB shall be deemed to have released Mr. Krantzberg, Island Cabo, Newport Venture Limited, 405 Southwest Real Estate Company, LLC, and RE PR from all claims and obligations relating to CNB's secured loan to the Debtor and relating to the Main Street Loan

DocuSign Envelope ID: 22EA3E5E-3DDC-45BE-AEE5-856A09487554

(the "CNB Release"), except for the mortgage loan described hereafter, which mortgage loan expressly is carved out of the settlement agreement.

CNB and 405 Southwest Real Estate Company, LLC ("405") entered into a loan agreement dated February 13, 2020, in the original principal amount of $5,000,000.00, which loan is secured by a mortgage and by a pledge agreement and guarantees of, among others, Mr. Krantzberg, the Debtor, and RE PR (the "405 Mortgage Loan"). The CNB Release does not apply to the 405 Mortgage Loan.

Additionally, CNB and Invicta will exchange mutual releases as to claims related to the Debtor upon payment in full of CNB's secured loan to the Debtor and the Main Street Loan. For the avoidance of doubt, CNB will not release any claims against Invicta related to any matter unrelated to the Debtor, such as existing loans that CNB has with Invicta.

Finally, any default by the Debtor on its payment obligations for the CNB secured debt or for the Main Street Loan, or any default by RE PR or by Invicta on their respective payment obligations for the Main Street Loan, shall constitute a cross-default of all obligations to CNB and to MS under the Plan for all purposes.

## 14. Settlement with the Committee

On November 29, 2023, the Debtor and the Committee participated in a judicial settlement conference that concluded in a global settlement of claims and objections. ECF 439. In exchange for the Committee withdrawing its objections to confirmation of the Debtor's Plan, actively supporting confirmation of the Debtor's Plan, and releasing prospective avoidance actions under Chapter 5 of the Bankruptcy

Code, the Debtor will incorporate the following terms in its Plan:

(1) The Debtor will pay its general unsecured creditors approximately 11.5% of their allowed claims, in equal quarterly payments over four years. The aggregate amount of payments to general unsecured creditors shall not exceed $3,000,000.00.

(2) After confirmation of the Plan, the Committee will assume control over objections to claims and will split the net benefit of successful claims objections with the Debtor.

The above settlement terms, which are set forth in more detail below and in the Plan, are conditioned on the Court's confirmation of the Plan within ninety days of December 13, 2023, unless otherwise mutually agreed by the Debtor and the Committee. Although the Committee has agreed to support confirmation of the Debtor's Plan and to release avoidance claims under Chapter 5 of the Bankruptcy Code, individual, general unsecured creditors retain their rights to object to confirmation and to pursue avoidance claims.

### (C) SOURCE OF FINANCIAL INFORMATION

The source of financial information for this Disclosure Statement and the accompanying Plan is from Debtor's reports and its management. The financial information has not been audited.

## ARTICLE III
## DEBTOR'S OPERATION AND STRUCTURE

### (A) SYNOPSIS OF OPERATION IN CHAPTER 11

During this case, Debtor has maintained adequate insurance, has filed monthly operating reports, and will continue to file all required monthly operating

reports and pay all U.S. Trustee fees.

### (B) PROJECTED PROFITABILITY AND FEASIBILITY OF PLAN

Debtor believes that there is minimal risk to creditors as to the completion of the Plan. All payments as provided for in the Plan shall be paid by Debtor's Cash on hand, future net revenue from the continued operation of Debtor's business, and Mr. Krantzberg's New Value contributions, unless otherwise stated. See attached **Exhibit "A" Plan Financials Section 12**. Debtor submits that the payment plans proposed in the Plan are feasible.

### (C) EXECUTORY CONTRACTS

Pursuant to Sections 365(a) and 1123(b)(2) of the Code, all executory contracts and unexpired leases that currently exist between Debtor and the other party that are listed below shall be rejected or assumed, as the case may be and as delineated below, as of the Effective Date; provided, however, that Debtor reserves the right, on or prior to the Confirmation Date, to amend the below list to add any executory contract or unexpired lease thereto or to delete any executory contract or unexpired lease therefrom, or change intended treatment from assumption to rejection, or vice versa, in which event such executory contract(s) or unexpired lease(s) shall be deemed to be assumed or rejected, as the case may be. Any and all executory contracts and unexpired leases of Debtor not expressly assumed herein or assumed prior to the Confirmation Date, or are not as of the Confirmation Date the subject of a pending application to assume, shall be deemed to be rejected.

**Leases Rejected Prior to Petition Date. *See* Court Order ECF No. 150**

| Date of Lease | Premises | Landlord/Notice Address |
|---|---|---|
| 11/15/2011 | Town Center Mall in Boca Raton | The Town Center at Boca Raton Trust c/o M.S. Management Associates Inc., 225 West Washington Street, Indianapolis, IN 46204-3438 |

## Leases Rejected as of Petition Date. *See* Court Order ECF No. 150

| Date of Lease | Premises | Landlord/Notice Address |
|---|---|---|
| 11/15/2011 | Miami International Mall | Mall at Miami International, LLC c/o M.S. Management Associates Inc., 225 West Washington Street, Indianapolis, IN 46204-3438 |

## Leases Rejected as of June 30, 2023. *See* Court Order ECF No. 151

| Date of Lease | Premises | Landlord/Notice Address |
|---|---|---|
| 1/8/2020 | Florida Mall, Room 212 Orlando, FL | Simon Property Group, L.P. Florida Mall Associates, Ltd. c/o M.S. Management Associates Inc. 225 West Washington Street, Indianapolis, IN 46204-3438 |
| 10/4/2018 | Las Vegas South Premium Outlets Unit K138, Las Vegas, Nevada | Las Vegas South Outlets, LLC c/o Simon Property Group,L.P.225 West Washington Street, Indianapolis, IN 46204-3438 |
| 6/6/2019 | Las Vegas North Premium Outlets Unit 1504, Las Vegas, NE | Las Vegas North Outlets, LLC c/o Simon Property Group,L.P.225 West Washington Street, Indianapolis, IN 46204-3438Attn:Premium Outlets |
| 5/13/2023 | Lenox Square, Room 2032B, Atlanta, GA | Simon Property Group, L.P. The Retail Property Trust c/o M.S. Management Associates Inc. 225 West Washington Street, Indianapolis, IN 46204-3438 |
| 10/25/2018 | The Mills at Jersey Gardens Kiosk No. K109, Elizabeth, NJ | Simon Property Group, L.P. JG Elizabeth II, LLC c/o M.S. Management Associates, Inc. 225 West Washington Street, Indianapolis, IN 46204-3438 |

| 4/30/2018 | San Marcos Premium Outlets Unit 1180, San Marcos, TX | San Marcos Premium Outlets, L.P. c/o Simon Property Group,L.P.225 West Washington Street, Indianapolis, IN 46204-3438 |

## Leases being Rejected Pursuant to the Plan

| Vacate date | Premises | Landlord/Notice Address |
| --- | --- | --- |
| 8/20/2023 | International Plaza, Tampa, FL | Tampa Westshore Associates L.P., 200 E. Long Lake Road, P.O. Box 200, Bloomfield Hills, MI 48303-0200 |
| Effective Date | Westland Mall – Kiosk | Westland Mall, LLC, 591 West Putnam Ave., Greenwich, CT 06830 |
| 1/5/2024 | Aventura Mall | Aventura Mall Venture, c/o Turnberry Aventura Mall Company, Ltd., 19501 Biscayne Boulevard, Suite 400, Aventura, FL 33180 |
| 1/5/2024 | Times Square | 1535 Broadway LLC, c/o Vornado Office Management LLC, 888 Seventh Ave, New York, NY 10019 |
| 1/5/2024 | Orlando – Vineland Premium Outlets | Orlando Vineland PO, L.P., P.O. Box 827733, Philadelphia, PA 19182-7733 |

## Leases being Assumed Pursuant to the Plan

| Premises | Landlord/Notice Address | Total Occupancy Cost Post-Confirmation |
| --- | --- | --- |
| University Mall - Sarasota | Taubman Benderson UTC LLC, 200 E. Long Lake Road, P.O. Box 200, Bloomfield Hills, MI 48303 | The greater of 10% of Gross Sales per annum or $80,000 per lease year |
| Sawgrass | Sunrise Mills (MLP) Limited Partnership, c/o M.S. Management Associates Inc., 225 W. Washington Street, Indianapolis, IN 46204-3438 | $19,848 per month |
| Orlando – Intl. Prem. Outlets | Orlando Outlet Owner, LLC, PO Box 772811, Chicago, IL 60677-2811 | $24,273 per month |
| Tanger - Daytona | Tanger Daytona, LLC, c/o Tanger Management, LLC, 3200 Northline Avenue, Suite 360, Greensboro, NC 27408 | $4,737 per month |

| Tanger - Glendale | Outlets at Westgate, LLC, c/o Tanger Management, LLC, 3200 Northline Avenue, Suite 360, Greensboro, NC 27408 | $6,219 per month |
|---|---|---|
| Tanger – Palm Beach | Palm Beach Outlets I, LLC, C/o Clarion Partners, 230 Park Avenue, New York, NY 10169, Attn: Sean O'Connor | $7,677 per month |
| El Paso | El Paso Outlet Center CMBS, LLC, c/o Horizon Group Properties Inc., 131 West Seaway Drive, Suite 220, Muskegon, MI 49444 | $5,410 per month |
| Christiana - Brookfield | Christiana Mall LLC, c/o Christiana Mall, 110 N. Wacker Dr., Chicago, IL 60606, Attn: Law/Lease Administration Department | $13,517 per month |
| North Star Mall - Brookfield | North Star Mall, LLC, c/o North Star Mall, 350 N. Orleans St., Suite 300, Chicago, IL 60654-1607, Attn: Law/Lease Administration Department | $13,058 per month |
| Perimeter - Brookfield | Perimeter Mall, LLC, c/o Perimeter Mall, 350 N. Orleans St., Suite 300, Chicago, IL 60654-1607, Attn: Law/Lease Administration Department | $9,977 per month |
| Elmhurst (Queens Center) - Macerich | Queens Center SPE LLC, 90-15 Queens Boulevard, Elmhurst, NY 11373-4900, Attention: Center Manager | $9,681 per month |
| Westfield - Brandon | Brandon (Tampa) LP, c/o CentreCorp Management Services LLLP 459 Brandon Town Center, Dr., Brandon, FL 33511 Attn: Katie Woolridge | $12,110 per month |
| Westland Mall | Westland Mall, LLC, 591 West Putnam Ave, Greenwich, CT 06830 | $14,000 per month |
| Prince George's | PR Prince George's Plaza LLC, c/o PREIT Services, LLC, 200 South Broad Street, The Bellevue, Third Floor, Philadelphia, PA 19102, Attn: Director, Legal | $5,396 per month |
| Cross County (Brooks – Yonkers, NY) | Marx Realty and Improvement Company, Inc., 708 Third Avenue, 15th Floor, New York, NY 10017-4146, Attention: Jag Shah | $13,000 per month |
| 405 Southwest | 405 Southwest Real Estate Company, LLC, 405 SW 148 Ave Suite #1, Davie, FL 33325 | $47,925 per month |

## **Contracts Being Assumed Pursuant to the Plan**

| Counterparty | Type | Original start date and term | Cure treatment |
|---|---|---|---|
| AFCO Credit Corp. | Insurance premium finance agreement | 2/28/23 11 mos. | n/a |
| Affirm, Inc. | Installment and split pay services | 3/22/23 1 yr. | $13,166.67/mo. for 6 mos. commencing 1st of the month following Effective Date |
| Dell Financial Services, L.L.C. | Computer equipment and software | 10/5/22 3 yrs. | n/a |
| Extend, Inc. | Extended warranties | 5/11/22 3 yrs. | $20,000/mo. for 6 mos. commencing 1st of the month following Effective Date |
| Invicta Watch Company of America, Inc. | Royalty agreement | 5/21/21 | n/a |
| Invicta Watch Company of America, Inc. | Distribution agreement | 5/14/19 | n/a |
| Mauricio Krantzberg | Licensing agreement | 11/1/2015 – 12/31/30 | n/a |
| Salesforce, Inc. | Marketing | 7/22/22-11/28/23 | $20,356.40/mo. for 6 mos. commencing 1st of the month following Effective Date |

Unless otherwise ordered by the Bankruptcy Court, any Claims for damages arising by reason of the rejection of any executory contract or unexpired lease must be filed with the Bankruptcy Court on or before the date that is **ten (10) days after the Confirmation Date, unless ordered otherwise by this Court,** or such Claim shall be forever barred and unenforceable against Debtor, Reorganized Debtor, or the assets of any of them. The Plan and any other order of the Bankruptcy Court providing for the rejection of an executory contract or unexpired lease shall constitute adequate and sufficient notice to persons which may assert a Claim for damages from the rejection of an executory contract or unexpired lease of the deadline for filing a Claim for rejection damages in connection therewith.

### (D) OBJECTIONS TO CLAIMS AND PREFERENCE ANALYSIS

Pursuant to the Plan, Debtor may object to any scheduled claim or filed proof of claim. Such an objection shall preclude the consideration of any claims as "Allowed" for the purposes of timely distribution in accordance with the Plan. The deadline to file non-governmental claims was August 8, 2023. The deadline to file governmental claims is November 27, 2023. *See* ECF 33.

Debtor is still analyzing claims to determine whether further objections will be filed. All indebtedness scheduled by Debtor, which was not scheduled as disputed, contingent, or unliquidated, or any indebtedness set forth in a properly executed and filed proof of claim, shall be deemed an allowed claim unless the same is objected to, and the objection thereto is sustained by the Court.

DEBTOR RESERVES ITS RIGHTS, AND THE RIGHTS OF THE COMMITTEE, TO FILE FURTHER OBJECTIONS TO CLAIMS, SCHEDULED AND NON-SCHEDULED, AS WELL AS OBJECTIONS TO ADMINISTRATIVE EXPENSES, AND/OR SEEK RECONSIDERATION OF THE ALLOWANCE OF ANY CLAIM. The deadline to file objections to claims will be established by this Court's order setting a Confirmation Hearing.

Debtor has not yet identified any potential preference or voidable transfer actions. Debtor continues to analyze whether there are any other avoidance actions which Debtor can pursue, but as of the time of this filing, believes that none exist, or that there are no actions that would merit the use of the Estate's resources, due to collectability and/or probability of litigation success. Below is a summary of the

payments paid to creditors in the amount of $7,575.00 or more by Debtor during the ninety (90) day period preceding the Petition Date and a summary of payments paid to insiders within the one (1) year period preceding the Petition Date.

| Recipient's Name[2] | Total Amount Paid during 90 day period preceding Petition Date | Reason for Payment(s) |
|---|---|---|
| Invicta Watch Company of America, Inc. | $7,690,000.00 | Merchandise/Inventory |
| CJ Affiliate | $60,000.00 | Affiliate Marketing Commission |
| Bank of America | $111,150.00 and $69,500.00 | Visa Credit Card Acct. No. 2570 and Acct. No. 6005 |
| ZWI Group, LLC | $300,000.00 | Merchandise/Inventory |
| American Express | $2,526,490.00 | Credit Card Payments |
| McGrill Insurance Services | $24,531.88 | Insurance |
| The Hartford | $22,787.40 | Insurance |
| AFCO Credit Corp. | $44,829.94 | Insurance |
| Corropack 3PL Logistic | $42,212.00 | Vendor |
| Dependable Packaging | $52,500.00 | Vendor / Shipping Supplies |
| FedEx Corporation | $44,242.56 | Shipping Services |
| DHL Express USA, Inc. | $8,610.45 | Shipping Services |
| UPS Supply Chain Solutions | $994,863.33 | Shipping Services |
| Elevate Innovation, Inc. | $140,000.00 | Vendor / Store Fixtures |
| CR Time Company | $7,575.00 | Vendor / Watch batteries and supply |
| Countwise, LLC | $11,825.36 | Vendor / Customer Counter Services |
| Crown TV Store Monitor Management Services | $7,897.03 | Vendor / Services |
| Mac Papers Packaging | $60,000.00 | Vendor / Shipping Supplies |
| Raul Ernesto Rodriguez | $23,750.01 | IT Services |
| City National Bank of Florida | $187,651.60 | Main Street Loan Payments |
| City National Bank of Florida | $201,584.09 | Secured loan payments |
| City National Bank of Florida | $78,895.82 | Line of Credit |
| City National Bank | $15,300.00 | Loan Payment |

---

[2] *See* Debtor's Schedules and Statements of Financial Affairs [ECF 133] for additional detail.

| | | |
|---|---|---|
| Akerman, LLP | $123,007.99 | Legal Services |
| Shutts and Bowen, LP | $41,915.00 | Legal Services |
| AGR Advisors, Inc. | $8,500.00 | Vendor / Personnel Outsourcing Company |
| Stephen S. Bodden PA | $12,077.50 | Legal Services |
| The Social Justice Collective Trust Acct. | $10,000.00 | Settlement Payments |
| Archerpoint, Inc. | $10,000.00 | Vendor / Software Licenses |
| Anderson Kill PC | $14,640.93 | Settlement Payments |
| Pulcini and Associates, PA | $15,580.00 | Accounting Fees |
| Radiant Systems Corporation | $31,500.00 | Vendor / IT Services |
| Criteo Corp. | $102,000.00 | Vendor / Digital Advertising |
| Salesforce.com, Inc. | $79,500.00 | Advertising Services / Email and advertising services |
| RBB Communications LLC | $56,175.000 | Services / Digital ads management |
| Tenging Verslunarlausnir ehf | $47,225.00 | Vendor / IT development services |
| Digital 360 LLC | $43,700.00 | Services / Web development services |
| Adshoppers, Inc. | $35,000.00 | Advertising Services |
| Seko Logistics Global HQ | $15,175.00 | Vendor / Shipping Services |
| Extend Inc. | $10,000.00 | Services / Warranty Services |
| Simon Property Group LP | $82,862.42 | Lease Payments |
| Nationalpak Ltd. | $8,165.00 | Vendor / Packaging and supply |
| PIP Marketing Signs Print | $9,000.00 | Vendor Marketing |
| Storeforce Solutions, Inc. | $11,956.86 | Vendor / Software Services |
| Attentive Mobile Inc. | $15,000.00 | Vendor / Software Services |
| Mattson Construction | $50,029.51 | Construction services |
| Buildit Construction | $164,000.00 | Construction services |
| Hambrecht Oleson Design, Inc. | $18,350.93 | Vendor / Store architect |
| Sanzpont Arquitectura SCP | $10,000.00 | Vendor / Store architect |
| Lowen Watch Group Inc. | $11,500.00 | Vendor / Repair Services |
| Uline | $16,587.21 | Vendor / Supplies |
| Staples Business | $30,037.14 | Vendor / Supplies |
| North Star Mall LLC | $39,708.00 | Lease Payments |
| 1535 Broadway LLC | $49,262.57 | Lease Payments |
| Brandon Shopping Center Partners LTD | $69,736.54 | Lease Payments |

| | | |
|---|---|---|
| Tanger Properties LTD | $49,136.46 | Lease Payments |
| Tampa Westshore Associates Limited Partnership | $31,013.93 | Lease Payment |
| Marx Realty and Improvement Company, Inc. | $20,000.00 | Lease Payment |
| Queens Center SPE LLC | $9,681.20 | Lease Payment |
| Perimeter Mall LLC | $21,369.74 | Lease Payment |
| Christiana Mall LLC | $27,186.23 | Lease Payment |
| Aventura Mall Venture | $12,821.95 | Lease Payment |
| BPR REIT Services LLC | $59,166.66 | Lease Payment |
| PR Prince George's Plaza LLC c/o PREIT Services, LLC | $26,981.92 | Lease Payments |
| Bieri and Ames | $14,360.60 | Real Estate Services |
| El Paso Outlet Center CMBS, LLC | $16,906.96 | Lease Payments |
| Centennial Westland Mall | $7,873.75 | Lease Payment |

Below are gifts given by Debtor within two (2) years prior to the Petition Date with a total value of more than $1,000.00 not already listed above:

| Recipient's Name | Date of Gift(s) | Total Value | Description of Gift(s) |
|---|---|---|---|
| None. | | | |

Below is a list of any transfers of property, other than property transferred in the ordinary course of business, made by Debtor during the two (2) year period prior to the Petition Date:

| Recipient's Name | Date of Gift(s) | Total Value | Description of Gift(s) |
|---|---|---|---|
| None. | | | |

Pursuant to the terms of the settlement agreement between the Debtor and the Committee, the Debtor releases all avoidance claims that might be pursued against general unsecured creditors under Chapter 5 of the Bankruptcy Code, and the Committee will consent to same and will not pursue any avoidance claims under Chapter 5 of the Bankruptcy Code against any party.  Individual, general unsecured

creditors may pursue avoidance claims to the extent permitted under applicable law.

## ARTICLE IV
## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

4.1 <u>General</u>. Unless otherwise specified, all payments under this Plan shall commence on the <u>Initial Payment Date</u>, which will be the first of the month following the <u>Effective Date</u>. The Effective Date will be the fifteenth day after the date on which the Bankruptcy Court enters a Final Order of Confirmation on its docket, and in the event that such date is a Saturday, Sunday or legal holiday, the next day thereafter.

4.2 <u>Administrative Expense Claims</u>. All Allowed Administrative Claims shall be paid (a) in full on the Effective Date or, if such expense is objected to, the date of a final order allowing any such Administrative Claim, whichever is later, or (b) upon such other terms as may be agreed to between Debtor and each such administrative claimant.

An Administrative Claim is "allowed" if, at a minimum, a claimant/creditor requests payment by the Administrative Claims Bar Date (defined below), with the exception of (a) Debtor's counsel and other estate professionals, who shall final a Fee Application by the deadline set by the Court, approximately 21 days before the Plan Confirmation Hearing; (b) the Office of the U.S. Trustee; and (c) the clerk of the Bankruptcy Court. All administrative expenses are subject to Court approval. All administrative expenses will be paid from Debtor's Cash on hand and/or future net revenue from the continued operation of Debtor's business, unless otherwise stated.

**ADMINISTRATIVE CLAIMS BAR DATE**: All requests for payment of Administrative Claims, other than with respect to applications for payment of

professional fees, UST fees, and Court costs, shall be filed with the Court and served upon Debtor at least **three days before the Confirmation Hearing**, or by such earlier deadline as may apply to such Administrative Claim pursuant to an earlier order of the Court. Except as provided herein, any Administrative Claim for which an application or request for payment is not filed within such time period shall be discharged and forever barred.

4.3 All fees due under 11 U.S.C. §1129(a)(12) shall be paid as required by 28 U.S.C. §1930.

4.4 <u>Priority Tax Claims</u>. Priority tax claims are assessed, unsecured income, employment, and other taxes as described by Section 507(a)(8) of the Bankruptcy Code.

| Payee | Approximate Claim Amount |
|-------|--------------------------|
| Arizona DOR | $0.00 |
| City of Hyattsville | $7,306.87 |
| Clark County Nevada Tax Collector | $722.24 |
| Comptroller of Maryland. | $22,646.24 |
| Florida DOR | $321,283.02 |
| Fulton County Tax Collector | $6,575.14 |
| Georgia Department of Revenue | $49,161.81 |
| Miami Dade County Tax Collector | $1,421.10 |
| Miami Dade County Tax Collector | $4,935.00 |
| NYC Department of Finance | $165,328.08 |
| Orange County Tax Collector | $3,962.57 |
| Orange County Tax Collector | $3,987.86 |
| Orange County Tax Collector | $868.19 |
| Sarasota County Tax Collector | $1,056.19 |

Holders of Allowed Priority Tax Claims shall receive deferred payments over a period not to exceed five (5) years from the Petition Date, of a value, as of the Effective

Date of the Plan, equal to the amount of the Allowed Priority Tax Claim, plus statutory interest. Debtor may pay any or all amount of said claim before such date and not incur a prepayment penalty.

    4.5 <u>Classification of Claims</u>.

    Pursuant to Section 1122 of the Bankruptcy Code, set forth below is a designation of the Classes of Claims and Equity Interests in Debtor. A Claim or Equity Interest is placed in a particular Class only to the extent that such Claim or Equity Interest is an Allowed Claim or Equity Interest in that Class and such Claim or Equity Interest has not been paid, released, or otherwise settled or paid prior to the Effective Date. In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims of the kinds specified in Section 507(a)(1) and 507(a)(8) of the Bankruptcy Code have not been classified and are deemed not to be Impaired.

    The treatment of and consideration to be received by holders of Allowed Claims and the treatment of Equity Interests pursuant to this Article III shall be in full satisfaction, settlement, release, and extinguishment of their Allowed Claims against, or Equity Interests in Debtor, and Debtor's Estate, except as otherwise expressly provided for in this Plan or the Confirmation Order.

## Class 1 - Allowed Secured Claim of City National Bank of Florida – Revolving Note

    *Class Description*: Class 1 consists of the Allowed secured claim of City National Bank of Florida ("CNB") against the Debtor based on a revolving promissory note (the "Revolving Note"). The Revolving Note was issued in December 2021 with

a limit of $4,200,000.00. The balance as of the Petition Date is $4,244,547.59, which consists of a principal balance in the amount of $4,200,000.00, interest in the amount of $43,720.72, and late charges in the amount of $826.87. This loan is secured by all assets of the Debtor and is cross collateralized with the 2021 Note and the 2023 Note.

The contractual payment terms were as follows: Commencing December 29, 2021, the Debtor was to make interest-only monthly payments at the Prime rate through the maturity date of December 29, 2024, at which time the $4,200,000.00 full balance would be due. In addition, there was a prepayment penalty of 2% of the amount repaid until December 29, 2023, and then a 1% penalty from December 30, 2023 through the maturity date.

This loan was guaranteed by (a) Retailing Enterprises PR, LLC ("RE PR"), the Debtor's wholly-owned subsidiary in Puerto Rico; (b) Mr. Krantzberg, individually; (c) The Watch Brand Company, LLC ("Watch Brand"), a wholly-owned subsidiary of the Debtor; (d) 205, LLC ("205"), a wholly-owned subsidiary of the Debtor; and (e) Newport Venture Limited ("Newport"), under a Pledged Collateral Agreement. In addition, there exists a subordination of debt and inventory buy back agreement by and between the Debtor, Invicta, and CNB (the "Invicta Subordination Agreement").

*Treatment*: The Debtor will make no further payments on CNB's Revolving Note, which debt has been satisfied in full. In accordance with the settlement terms agreed to by the Debtor and CNB during the parties' post-petition judicial settlement conference (the "CNB JSC"), CNB liquidated Newport's securities brokerage account on or around November 10, 2023 in the amount of $5,901,009.90 (the "Newport

Proceeds"). On or around November 17, 2023, CNB applied a portion of the Newport Proceeds to the Revolving Note, which reduced the outstanding balance payable on the Revolving Note to $0. No prepayment penalty was charged by CNB, notwithstanding CNB's contractual right to a 2% penalty.

*Impairment*: This Class is impaired, and the Class 1 Claimholder is entitled to vote to accept or reject the Plan.

### Class 2 - Allowed Secured Claim of City National Bank of Florida – 2021 Note

*Class Description*: Class 2 consists of the Allowed secured claim of CNB against the Debtor based on a promissory note issued in 2021 (the "2021 Note"). The underlying loan had a balance of $2,734,462.19 as of the Petition Date, consisting of the principal balance of $2,721,892.30, interest of $10,287.42, and late charges of $2,282.47. The loan had a fixed interest rate of 4.25% on a five-year full amortization schedule, maturing on December 29, 2026.

This loan is secured by all assets of the Debtor and is cross collateralized with the Revolving Note and the 2021 Note. This loan is guaranteed by RE PR, Mr. Krantzberg, Watch Brand, 205, and Newport (under a Pledged Collateral Agreement). In addition, there exists the Invicta Subordination Agreement.

There is a prepayment penalty of 4% until December 29, 2023, with the prepayment penalty decreasing by one percentage point each subsequent year through maturity.

As of the date of the filing of this Plan, the monthly payment is $29,892.89. The Debtor is current on this loan.

DocuSign Envelope ID: 22EA3E5E-3DDG-45BE-AE5E-856A09487554

As part of the agreement reached in the CNB JSC, CNB applied the Newport Proceeds to the loans in Classes 1 and 3, which were then paid in full, plus fees for CNB's counsel in the amount of $200,000, leaving a balance for this Class 2 claim in the amount of $1,708,540.00[3] (the "CNB Remaining Balance").

*Treatment:* The remaining terms of CNB's 2021 Note are modified as follows:

The line of credit will be converted to a commercial loan, and the interest rate will be fixed at 4.25%.

Commencing on the Effective Date, the Debtor will make interest-only monthly payments based on the CNB Remaining Balance through and including December 2024. Commencing January 2025, the Debtor will make principal and interest monthly payments as listed in the attached **Exhibit "A" Plan Financials Section 16**, through and including December 2026. On December 31, 2026, any outstanding amounts due and owing under this loan will be paid as a balloon payment.

All prepayment penalty provisions will be eliminated; that is, the Debtor may prepay any amount of this loan without penalty.

Except as modified herein, the remaining terms of the prepetition loan documents will remain unchanged, and the Debtor's obligations under the prepetition loan documents shall continue post-Confirmation.[4]

---

[3] This is the outstanding balance as of November 17, 2023. Additional principal and interest payments will be paid prior to Confirmation. The principal payments will reduce the amount owed at Confirmation.

[4] In addition, Newport shall retain its subrogation rights under section 509(a) of the Code in the amount of the Newport Proceeds ($5,901,009.90) as Newport was liable with the Debtor on this loan, secured and paid said claim, and thus is subrogated to the rights of CNB to the extent of the payment of the Newport Proceeds.

*Impairment*: This Class is impaired, and the holder of the Allowed Claim in this Class is entitled to vote to accept or reject the Plan.

## Class 3 - Allowed Secured Claim of City National Bank of Florida – 2023 Note

*Class Description*: Class 3 consists of the Allowed secured claim of CNB against the Debtor based on a promissory note issued in 2023 (the "2023 Note"). The underlying loan had a balance of $737,694.17 as of the Petition Date, consisting of a principal balance of $735,350.87 plus Allowed interest and fees, minus payments made by the Debtor not yet applied. The loan had a fixed interest rate of 7.15% on a two-year full amortization schedule, maturing on February 28, 2025.

This loan was secured by all assets of the Debtor and cross collateralized with the Revolving Note and the 2021 Note. There is no prepayment penalty. This loan was guaranteed by RE PR, Mr. Krantzberg, Watch Brand, and Newport (under a Pledged Collateral Agreement). In addition, there exists the Invicta Subordination Agreement.

As of November 1, 2023, the monthly payment was $37,398.04. The Debtor is current on this loan.

*Treatment*: The Debtor will make no further payments on CNB's 2023 Note, which debt has been satisfied in full. In accordance with the settlement terms agreed to by the Debtor and CNB during the CNB JSC, CNB liquidated Newport's securities brokerage account on or around November 10, 2023. On or around November 17, 2023, CNB applied the proceeds from that securities account to the 2023 Note, which proceeds satisfied in full the outstanding balance due on the 2023 Note. No

prepayment penalty was charged by CNB, notwithstanding CNB's contractual right to a 2% penalty.

*Impairment*: This Class is impaired and the Class 3 Claimholder is entitled to vote to accept or reject the Plan.

## Class 4 – Allowed Secured Tax Claim of Bexar County Tax Collector

*Class Description*: Class 4 consists of the Allowed Secured Tax Claim of Bexar County Tax Collector (and for those taxing entities for which Bexar County collects ad valorem taxes). Bexar County Tax Collector filed Proof of Claim No. 4 in the amount of $14,817.18 for Ad Valorem Taxes with a 12% annual statutory interest rate. Bexar County Tax Collector estimates the value of the property securing its claim is $257,770.00.

*Treatment*: The Class 4 Claimholder will receive deferred cash payments over a period not to exceed five (5) years from the Petition Date, as follows. The Reorganized Debtor shall pay Bexar County $14,817.18 through equal, consecutive monthly installments, with the first payment being made on the first day of the first full month following the Effective Date, amortized over a period not to exceed five (5) years from the Petition Date. Post-petition interest will accrue at the rate of twelve percent (12%) per annum from the Petition Date until the Effective Date, and thereafter, Plan interest at the rate of twelve percent (12%) per annum shall accrue on the entire balance until the tax debt is paid in full. The appraised value of the property securing the Bexar County claim is $257,770.00.

The Reorganized Debtor may pre-pay the pre-petition tax debt to the taxing authorities at any time. The Bexar County tax claim shall retain its statutory lien securing its pre-petition and any post-petition tax debts until such time as the tax debts are paid in full. The Reorganized Debtor shall pay all post-petition ad valorem tax liabilities (tax year 2024 and subsequent tax years) owing to Bexar County in the ordinary course of business as such tax debt comes due and prior to said ad valorem taxes becoming delinquent without the need of the taxing authorities to file an administrative expense claim and/or request for payment pursuant to 11 U.S.C. § 503(b)(1)(D).

Should the Reorganized Debtor fail to make any payments as required in this Plan, Bexar County shall provide written notice of that default to the Reorganized Debtor and Debtor's attorney advising of that default, and providing the Reorganized Debtor with a period of fifteen (15) days to cure the default. In the event that the default is not cured within fifteen (15) days, Bexar County may, without further order of this Court or notice to the Reorganized Debtor, pursue all of its rights and remedies available to it under the Texas Property Tax Code to collect the full amount of all taxes, penalties and interest owed. Additionally, the failure to timely pay post-petition and/or post-confirmation taxes while the Reorganized Debtor is still paying any pre-petition debt, shall be considered an event of default. Bexar County shall provide Reorganized Debtor and its attorney with written notice of that default and afford a fifteen (15) day opportunity to cure said default. In the event that the Reorganized Debtor fails to timely cure the post-petition and/or post-confirmation

default, Bexar County may, without further order of this court or notice to the Reorganized Debtor, pursue all of its rights and remedies available to it under the Texas Property Tax Code to collect the full amount of all taxes, penalties and interest owed. The Reorganized Debtor shall be entitled to no more than three (3) Notices of Default. In the event of a fourth (4th) default, Bexar County may pursue all rights and remedies available to it under the Texas Property Tax Code in state district court without further order of this court or further notice to the Reorganized Debtor.

*Impairment*: This Class is impaired, and the holder of the Allowed Claim in this Class is entitled to vote to accept or reject the Plan.

## Class 5 – Allowed Secured Tax Claims of Prince George's County, Maryland

*Class Description*: Class 5 consists of the Allowed Secured Tax Claim of Prince George's County, Maryland. Prince George's County, Maryland filed Proof of Claims Nos. 2 and 3 in the amounts of $16,484.18 and $13,745.10, respectively.

*Treatment*: The Allowed Secured Tax Claimholder will receive deferred cash payments over a period not to exceed five (5) years from the Petition Date, of a value, as of the Effective Date of the Plan, equal to the amount of the Allowed Claims, plus statutory interest.

*Impairment*: This Class is impaired, and the holder of the Allowed Claim in this Class is entitled to vote to accept or reject the Plan.

## Class 6 – Allowed Secured Tax Claim of Dekalb County Tax Commissioner

*Class Description*: Class 6 consists of the Allowed Secured Tax Claim of Dekalb County Tax Commissioner. The Dekalb County Tax Commissioner filed Proof of

Claim No. 29 for $10,344.52 with a 0.05% variable annual interest rate. The Dekalb County Tax Commissioner estimated the value of the property securing its claim is $597,033.00.

*Treatment*: The Allowed Secured Tax Claimholder will receive deferred cash payments over a period not to exceed five (5) years from the Petition Date, of a value, as of the Effective Date of the Plan, equal to the amount of the Allowed Claim, plus statutory interest.

*Impairment*: This Class is impaired, and the holder of the Allowed Claim in this Class is entitled to vote to accept or reject the Plan.

## Class 7 – Allowed Secured Tax Claim of County of Hays, Texas

*Class Description*: Class 7 consists of the Allowed Secured Tax Claim of County of Hays, Texas, for its own property taxes and for the taxing entities for which County of Hays, Texas collects ad valorem taxes. The creditor filed Proof of Claim No. 32 for $6,547.75 with a 12% fixed annual interest rate, estimating the value of the property securing its claim at $296,510.00, and listing that the amount necessary to cure any default as of the Petition Date is $3,546.06.

*Treatment*: The Allowed Claimholder will receive deferred cash payments over a period not to exceed five (5) years from the Petition Date, as follows.  The amount of $6,547.75 will be paid in full through equal, consecutive monthly installments, with the first payment being made on the first day of the first full month following the Effective Date amortized over a period not to exceed five (5) years from the Petition Date.  Post-petition interest will accrue at the rate of twelve percent (12%) per annum

from the Petition Date until the Effective Date, and thereafter, Plan interest at the rate of twelve percent (12%) per annum shall accrue on the entire balance until the tax debt is paid in full. The 2023 appraised value of the property securing the Allowed Secured Tax Claim of County of Hays, Texas is $339,010.00.

The Reorganized Debtor may pre-pay the pre-petition tax debt to the taxing authorities at any time. The County of Hays, Texas shall retain its statutory lien securing its pre-petition and any post-petition tax debts until such time as the tax debts are paid in full. The Reorganized Debtor shall pay all post-petition ad valorem tax liabilities (tax year 2024 and subsequent tax years) owing to County of Hays, Texas in the ordinary course of business as such tax debt comes due and prior to said ad valorem taxes becoming delinquent without the need of the taxing authorities to file an administrative expense claim and/or request for payment pursuant to 11 U.S.C. § 503(b)(1)(D).

Should the Reorganized Debtor fail to make any payments as required in this Plan, County of Hays, Texas shall provide written notice of that default to the Reorganized Debtor and Debtor's attorney advising of that default and providing the Reorganized Debtor with a period of fifteen (15) days to cure the default. In the event the default is not cured within fifteen (15) days, County of Hays, Texas may, without further order of this Court or notice to the Reorganized Debtor, pursue all of its rights and remedies available to it under the Texas Property Tax Code to collect the full amount of all taxes, penalties and interest owed. Additionally, the failure to timely pay post-petition and/or post-confirmation taxes while the Reorganized Debtor is still

paying any pre-petition debt, shall be considered an event of default. The County of Hays, Texas shall provide Reorganized Debtor and its attorney with written notice of that default and afford a fifteen (15) day opportunity to cure said default. In the event the Reorganized Debtor fails to timely cure the post-petition and/or post-confirmation default, County of Hays, Texas may, without further order of this court or notice to the Reorganized Debtor, pursue all of its rights and remedies available to it under the Texas Property Tax Code to collect the full amount of all taxes, penalties and interest owed. The Reorganized Debtor shall be entitled to no more than three (3) Notices of Default. In the event of a fourth (4th) default, County of Hays, Texas may pursue all rights and remedies available to it under the Texas Property Tax Code in state district court without further order of this court or further notice to the Reorganized Debtor.

*Impairment*: This Class is impaired, and the holder of the Allowed Claim in this Class is entitled to vote to accept or reject the Plan.

## Class 8 – Allowed Secured Tax Claims of Hillsborough County Tax Collector

*Class Description*: Class 8 consists of the Allowed Secured Tax Claims of the Hillsborough County Tax Collector. The Tax Collector filed the following Proofs of Claim:

- Proof of Claim No. 36 for $1,477.33 with an 18% fixed annual interest rate for estimated 2023 tangible property taxes;

- Proof of Claim No. 37 for $1,849.78 with an 18% fixed annual interest rate for 2022 tangible property taxes;

- Proof of Claim No. 38 for $3,420.06 with an 18% fixed annual interest rate for 2022 tangible property taxes; and

- Proof of Claim No. 39 for $2,738.60 with an 18% fixed annual interest rate for estimated 2023 tangible property taxes.

On Proofs of Claims Nos. 36 and 37, the Tax Collector estimated the value of the property securing its claims at $109,390.00, and on Proof of Claim Nos. 38 and 39, estimated the value of the property securing its claims at $166,800.00.

*Treatment*: The Allowed Claimholder will receive deferred cash payments over a period not to exceed five (5) years from the Petition Date, of a value, as of the Effective Date of the Plan, equal to the amount of the Allowed Claims, plus statutory interest.

*Impairment*: This Class is impaired, and the holder of the Allowed Claim in this Class is entitled to vote to accept or reject the Plan.

**Class 9 – Allowed Secured Tax Claim of San Marcos CISD**

*Class Description*: Class 9 consists of the Allowed Secured Tax Claim of San Marcos CISD based on ad valorem taxes. San Marcos CISD filed Proof of Claim No. 42 for $7,160.60 with a 12% fixed annual interest rate.

*Treatment*: The Allowed Claimholder will receive deferred cash payments over a period not to exceed five (5) years from the Petition Date, of a value, as of the Effective Date of the Plan, equal to the amount of the Allowed Claim, plus statutory interest.

*Impairment*: This Class is impaired, and the holder of the Allowed Claim in this Class is entitled to vote to accept or reject the Plan.

## Class 10 – Allowed Secured Tax Claims of Broward County Tax Collector

*Class Description*: Class 10 consists of the Allowed Secured Tax Claims of the Broward County Tax Collector. The Tax Collector filed the following Proofs of Claim:

- Proof of Claim No. 51-1 for $8,389.92 with an 18% fixed annual interest rate for 2022 tangible property taxes; and

- Proof of Claim No. 52-2 for $9,653.97 with an 18% fixed annual interest rate, beginning April 1, 2024, for 2023 tangible property taxes;

On Proof of Claims No. 51, the Tax Collector estimated the value of the property securing its claim at $443,014.00, and on Proof of Claim No. 52, the Tax Collector estimated the value of the property securing its claim at $525,171.00.

*Treatment*: The Allowed Claimholder will receive deferred cash payments over a period not to exceed five (5) years from the Petition Date, of a value, as of the Effective Date of the Plan, equal to the amount of the Allowed Claims, plus statutory interest.

*Impairment*: This Class is impaired, and the holder of the Allowed Claims in this Class is entitled to vote to accept or reject the Plan.

## Class 11 - Allowed Secured Claim of Ally Bank

*Class Description*: Class 11 consists of the Allowed Secured Claim of Ally Bank as to a vehicle (truck) loan. As of the Petition Date, Ally Bank's claim was $23,531.55. Ally Bank, as indicated on Proof of Claim No. 35, estimates the value of the property

securing its claim totals $20,154.25, and the fixed annual interest rate in the prepetition contract was 6.990%.

*Treatment*: Ally Bank has elected to have its claim treated under 1111(b). Therefore, the Debtor will pay to Ally the amount of its secured claim ($23,531.55) over a period of 10 years, with the remaining balance of its claim to be paid as a balloon payment at such time. The collateral vehicle is worth $20,154.25. Pursuant to 1111(b), Ally is entitled to the nominal amount of its claim without interest. Consequently, the Debtor will pay Ally $117.40 per month for 10 years, with a balloon payment at the end of the 10-year period of the outstanding amount owed.

The Debtor may prepay any or all of the amounts owed to Ally without incurring any prepayment penalties.

*Impairment*: This Class is impaired, and the holder of Allowed Claim in this Class is entitled to vote to accept or reject the Plan.

### Class 12- Allowed Secured Claim of Dell Financial Services

*Class Description*: Class 12 consists of the Allowed Secured Claim of Dell Financial Services ("Dell") against the Debtor. As of the Petition Date, Dell held a claim for $24,515.38 based on purchase money security interests secured by the Debtor's computers.

*Treatment*: Except to the extent that the Claimholder has been paid before the Effective Date or agrees to a different treatment, the Claimholder will be paid the secured amount of its claim over 5 years, fully amortized, at an annual interest rate of 5%, for a monthly payment of $462.64, commencing on the first of the month

DocuSign Envelope ID: 22EA3E5E-3DDC-45BE-A5E5-856A09487554

following the Effective Date. The new 5-year amortization period will begin on the Effective Date.

There will be no prepayment penalty in the event Debtor pays all or a portion of the unpaid principal balance before the maturity date. Except as modified herein, the remaining terms of the prepetition loan documents will remain unchanged.

*Impairment*: This Class is impaired, and the holder of Allowed Claim in this Class is entitled to vote to accept or reject the Plan.

## Class 13 – Allowed Claim of Invicta

*Class Description*: Class 13 consists of the Allowed Claim of Invicta based on the Debtor's assumption of the Distribution Agreement dated May 14, 2019 and the unpaid balance owed to Invicta as of the Petition Date. As reflected in Debtor's Schedules, Debtor estimates Invicta's Allowed Claim totals $31,132,626.33 (the "Invicta Claim"). Pursuant to the Distribution Agreement, Invicta is the manufacturer, and the Debtor is the distributor of Invicta-brand products.

In the Debtor's ordinary course of business, the Debtor purchases inventory from Invicta on 120–150-day terms. No interest is charged for this arrangement. On average, $500,000-$1,200,000 of product is delivered to Debtor per week, and a similar amount is paid weekly to Invicta. The usual and customary practice of the parties is that weekly payments are applied to the oldest invoices first.

*Treatment*: The Debtor shall assume the Distribution Agreement with Invicta as modified herein, which modifications and assumption are subject to confirmation of this Plan. The Reorganized Debtor will pay Invicta $30,000,000.00 over ten (10)

years, which amount is payable in yearly installments of $3,000,000.00 (the "Annual Payment") and accrues interest at 6.5% per annum. The Annual Payment is due on the 31st of December, beginning December 31, 2024, and ending December 31, 2034. A balloon payment for the accrued interest is due December 31, 2034. However, if the Reorganized Debtor does not default on any of the Annual Payments, Invicta will waive the accrued interest.

If the Reorganized Debtor purchases a minimum of $40,000,000.00 in finished inventory from Invicta per year (pre-paid/C.O.D.), Invicta will give the Reorganized Debtor an annual $3,000,000.00 rebate, which rebate the Debtor may apply to reduce the Invicta Claim by $3,000,000.00 each year (i.e. the Reorganized Debtor will not make its Annual Payment). Therefore, as long as the Reorganized Debtor continues to purchase said minimum amount for 10 years[5], the Invicta Claim will be reduced to zero and Invicta will receive no distribution under the Plan. The Reorganized Debtor may not satisfy the minimum purchase amount of $40,000,000.00 in any given year by carrying over payments above $40,000,000.00 from a prior year. Moreover, the Debtor must make its purchases of Invicta product by prepayment or by cash on delivery.

If the Reorganized Debtor does not purchase a minimum of $40,000,000.00 in finished inventory from Invicta in any single calendar year, then the following rebate structure shall apply:

---

[5] Any remaining amount over $30,000,000.00, estimated to be $831,801.33, will be deducted the following year as long as the Debtor purchases its annual minimum.

(i)      For $35,000,000.00 to $39,999,999.00 in purchases in a given year, Invicta will give the Reorganized Debtor with a $2,500,000.00 rebate;

(ii)     For $30,000,000.00 to $34,999,999.00 in purchases in a given year, Invicta will give the Reorganized Debtor with a $2,000,000.00 rebate; and

(iii)     For purchases less than $30,000,000.00 in a given year, Invicta will not give the Reorganized Debtor any rebate.

If the Reorganized Debtor defaults on its payment obligations to Invicta, under the terms of this Plan or the assumed Distribution Agreement, the entire remaining balance of the Invicta Claim will become due and payable.

*Impairment*: This Class is impaired, and the holder of the Allowed Claim in this Class is entitled to vote to accept or reject the Plan.

**Class 14A – Allowed Claim of University Town Center for Assumed Lease**:

*Class Description*: Class 14A consists of the Allowed Claim of TB Mall at UTC, LLC ("TB") for the University Town Center - Sarasota lease, which is being assumed by the Debtor, as modified herein, and for which arrearage cure payments are being made (the "Assumed Lease Claim").

*Treatment*: The Assumed Lease Claim in the amount of $14,923.85 shall be paid in 2 monthly installments of $7,461.93, commencing on the Initial Payment Date[6]. The total monthly occupancy costs shall be reduced to $7,711.00 [$6,666.67 rent + $1,044.00 other charges] and the lease term shall be extended by 5 years, to

---

[6] Contrary to the assertion in POC 46-1, there are no post-petition amounts owed to this landlord as the Debtor is current on its rent payments.

October 31, 2029. Additionally, Retailing Enterprises PR LLC will replace Island Cabo SA as guarantor of the Lease.

*Impairment*: This Class is impaired, and the holder of the Allowed Claim in this Class is entitled to vote to accept or reject the Plan.

## Class 14B – Allowed Claim of Simon Property Group Inc. for Assumed Leases:

*Class Description*: Class 14B consists of the Allowed Claim of Simon Property Group Inc. ("Simon") for the Sawgrass and Orlando Outlets leases which are being assumed by the Debtor and for which arrearage cure payments are being made in the total allowed amount of $1,301,466.66: $599,365.67 and $702,100.99 respectively (the "Assumed Leases Claim").

*Treatment*: The Assumed Leases Claim in the amount of $1,301,466.66 shall be paid in twelve (12) equal monthly installments of $108,455.56 commencing on the Initial Payment Date.

*Impairment*: This Class is impaired, and the holders of the Allowed Claim in this Class are entitled to vote to accept or reject the Plan.

## Class 14C – Allowed Claim of Palm Beach Outlets I, LLC for Assumed Lease:

*Class Description*: Class 14C consists of the Allowed Claim of Palm Beach Outlets I, LLC for the Tanger Outlets – Palm Beach lease which is being assumed by the Debtor and for which arrearage cure payments are being made (the "Assumed Lease Claim").

*Treatment*: The Assumed Lease Claim in the amount of $8,874.00 shall be paid in 2 monthly installments of $4,437.00, commencing on the Initial Payment Date.

*Impairment*: This Class is impaired, and the holder of the Allowed Claim in this Class is entitled to vote to accept or reject the Plan.

**Class 14D – Allowed Claim of El Paso Outlet Center CMBS, LLC for Assumed Lease**:

*Class Description*: Class 14D consists of the Allowed Claim of El Paso Outlet Center CMBS, LLC for the El Paso Outlet lease which is being assumed by the Debtor and for which arrearage cure payments are being made (the "Assumed Lease Claim").

*Treatment*: The Assumed Lease Claim of $10,969.96 shall be paid in 2 equal installments of $5,484.98, commencing on the Initial Payment Date, with the second payment due on the first day of the following month.  The Reorganized Debtor shall also pay $9,000.00 for fees and charges.

*Impairment*: This Class is impaired, and the holder of the Allowed Claim in this Class is entitled to vote to accept or reject the Plan.

**Class 14E – Allowed Claims of Brookfield Properties Retail Inc. for Assumed Leases**:

*Class Description*: Class 14E consists of the Allowed Claims of Brookfield Properties Retail Inc. ("Brookfield") in connection with the Christiana Mall, Perimeter Mall, and North Star Mall leases (the "Leases") which are being assumed by the Debtor, as modified herein.  Brookfield's total claims against the Debtor, for all locations, equal $3,096,076.82 (collectively, the "Brookfield Claim").

*Treatment*: Brookfield shall be paid $200,000.00 on the Initial Payment Date in full satisfaction of the Brookfield Claim. Brookfield also will be paid a $120,000.00 cash security deposit (the "Security Deposit"). The Security Deposit will be applied to all three Leases in amounts to be determined by Brookfield and incorporated in lease amendment agreements.

Rent for the Christiana Mall location shall remain unchanged, and the lease shall be extended by 3 years, to March 31, 2027, with a 4% annual increase in rent during the extended term. Rent for the North Star location shall remain unchanged, and the lease shall be extended by 5 years, to September 30, 2028, with a 4% annual increase in rent during the extended term. The expiration date for the lease for Perimeter Mall will remain unchanged; i.e., April 30, 2030.

As an additional New Value contribution, Mr. Krantzberg shall replace Island Cabo SA as guarantor of all leases with Brookfield. More specifically, Mr. Krantzberg, as additional New Value, will personally guarantee the Reorganized Debtor's payment obligations under all three leases, with such guarantee for each lease being limited in amount to one year's rent and charges (i.e. gross rental obligations) for the subject lease plus, if applicable, all attorney's fees and costs incurred to collect default rent obligations.

The parties shall incorporate mutual releases in lease amendment agreements, which releases will include, at minimum, a release of Mr. Krantzberg and affiliates of the Debtor from alter ego, fraudulent transfer, and other clawback liabilities, and

will exclude customary lease-related charges, such as accrued but unbilled and unasserted liabilities.

*Impairment*: This Class is impaired, and the holders of the Allowed Claim in this Class are entitled to vote to accept or reject the Plan.

**Class 14F – Allowed Claim of Queens Center SPE LLC Landlord for Assumed Lease**:

*Class Description*: Class 14F consists of the Allowed Claim of Queens Center SPE LLC for the Queens Center – Elmhurst lease which is being assumed by the Debtor and for which arrearage cure payments are being made (the "Assumed Lease Claim").

*Treatment*: The Assumed Lease Claim in the amount of $25,621.81 shall be paid in 2 equal payments of $12,810.91, commencing 30 days after the Effective Date.

*Impairment*: This Class is impaired, and the holder of the Allowed Claim in this Class is entitled to vote to accept or reject the Plan.

**Class 14G – Allowed Claim of PR Prince George's Plaza LLC for Assumed Lease**:

*Class Description*: Class 14G consists of the Allowed Claim of PR Prince George's Plaza LLC for the Prince George's lease which is being assumed by the Debtor and for which arrearage cure payments are being made (the "Assumed Lease Claim").

*Treatment*: The Assumed Lease Claim in the amount of $11,916.00 shall be paid in 2 monthly installments of $5,958.00, commencing 30 days after the Effective Date.  The lease term shall be extended for three (3) years, with a 3% increase in

annual rent per annum. The annual, all-in rent charge for the lease is the greater of $73,500 or 12% in variable rent.

*Impairment*: This Class is impaired, and the holder of the Allowed Claim in this Class is entitled to vote to accept or reject the Plan.

## Class 14H – Allowed Claim of Brooks Shopping Centers LLC for Assumed Lease:

*Class Description*: Class 14H consists of the Allowed Claim of Brooks Shopping Centers LLC for the Cross County lease which is being assumed by the Debtor, as modified herein, and for which arrearage cure payments are being made (the "Assumed Lease Claim").

*Treatment*: The Assumed Lease Claim in the total amount of $275,000.00 shall be paid in equal monthly installments of $22,916.67 over 12 months commencing on the Initial Payment Date. The total occupancy costs shall be $13,000.00 per month for the duration of the lease. Additionally, Retailing Enterprises PR LLC will replace Island Cabo SA as guarantor of the lease.

*Impairment*: This Class is impaired, and the holder of the Allowed Claim in this Class is entitled to vote to accept or reject the Plan.

## Class 14I – Allowed Claim of Extend, Inc. for Assumed Contract:

*Class Description*: Class 14I consists of the Allowed Claim of Extend, Inc. for the extended warranties contract which is being assumed by the Debtor and for which arrearage cure payments are being made (the "Assumed Contract Claim").

*Treatment*: The Assumed Contract Claim of $120,000.00 shall be paid in six (6) equal monthly installments of $20,000.00 commencing on the Initial Payment Date.

*Impairment*: This Class is impaired, and the holder of the Allowed Claim in this Class is entitled to vote to accept or reject the Plan.

**Class 14J – Allowed Claim of Affirm Inc. for Assumed Contract:**

*Class Description:* Class 14J consists of the Allowed Claim of Affirm Inc. for the virtual card and platform services contract which is being assumed by the Debtor and for which arrearage cure payments are being made (the "Assumed Contract Claim").

*Treatment:* The Assumed Contract Claim of $79,000.00 shall be paid in six (6) equal monthly installments of $13,166.67 commencing on the Initial Payment Date.

*Impairment:* This Class is impaired, and the holder of the Allowed Claim in this Class is entitled to vote to accept or reject the Plan.

**Class 14K – Allowed Claim of SalesForce for Assumed Contract:**

*Class Description:* Class 14K consists of the Allowed Claim of SalesForce, Inc. for the marketing and email services contract which is being assumed by the Debtor and for which arrearage cure payments are being made (the "Assumed Contract Claim").

*Treatment:* The Assumed Contract Claim of $122,138.38 shall be paid in six (6) equal monthly installments of $20,356.40 commencing on the Initial Payment Date.

*Impairment:* This Class is impaired, and the holder of the Allowed Claim in this Class is entitled to vote to accept or reject the Plan.

**Class 15 – Allowed General Unsecured Claims:**

*Class Description*: Class 15 consists of the Allowed Claims of the general

unsecured creditors. As reflected in the list of general unsecured creditors attached as **Exhibit "A" Plan Financials Section 20**, Debtor estimates the aggregate amount of Class 15 General Unsecured Claims (which does not include the Class 13 claim of Invicta nor the claim of Mr. Krantzberg, as addressed in Class 16) totals approximately $24,560,000.

*Treatment*: As provided in additional detail in the Liquidation Analysis, attached as **Exhibit "B"**, the Debtor estimates that if this case was converted to a Chapter 7 case, the holders of Allowed General Unsecured Claims would be paid 0% of their claims. Invicta's Allowed Claim will be paid zero and, as part of his New Value contribution, Mr. Krantzberg will waive his general unsecured claim against the Estate, which will maximize the distribution to all remaining holders of Allowed General Unsecured Claims. The Debtor estimates the elimination of Invicta's Allowed Claim in this Class substantially increases the distributions to be paid to the remaining holders of Allowed General Unsecured Claims.

Except to the extent that the holder of an Allowed General Unsecured Claim has been paid before the Effective Date, or agrees to a different treatment, each holder of an Allowed General Unsecured Claim against the Debtor shall be paid up to 11.5% of the allowed amount of their respective general unsecured claim. Beginning on the Initial Payment Date, the Debtor will make equal quarterly payments to the holders of Allowed General Unsecured Claims, and those holders will share *pro rata* in each quarterly distribution.  The maximum amount that the Debtor will pay in the aggregate to the holders of Allowed General Unsecured Claims

DocuSign Envelope ID: 22EA3E5E-3DDC-45BE-AE5E-856A09487554

is $3,000,000.00, and the maximum length of time during which such payments shall be made is four years.

The distribution schedule will be as follows:[7] Commencing on the first of the month following the Effective Date, $187,500.00 per quarter for 16 quarters, or such lesser amount of time as is required to pay 11.5% of the total Allowed General Unsecured Claims. Any shortfall or overage shall be applied to the final payment. Debtor may prepay any or all of the distributions described herein with no prepayment penalty, and to the extent that $5,000.00 or less remains payable to any individual creditor to satisfy 11.5% of the Allowed amount of such creditor's claim, the Debtor may satisfy that creditor's claim in full at any time as illustrated below. The *pro rata* distribution to the holders of Allowed General Unsecured Claims shall be in full satisfaction, settlement, release, and discharge of their respective Allowed General Unsecured Claims, except for the Main Street Loan claim, which claim will be satisfied only upon payment in full from the reorganized Debtor, Mr. Krantzberg, Invicta, and RE PR, as more fully set forth above.

In addition to the distributions described above of up to 11.5% of Allowed General Unsecured Claims, or a *pro rata* share of up to $3,000,000.00, the holders of Allowed General Unsecured Claims will receive fifty percent of the net benefit resulting from post-confirmation claims' objections, as follows:  The Debtor retains all

---

[7] The list of unsecured creditors in the attached **Exhibit "A" Plan Financials Section 20** assumes that any pending objections to claims filed by Debtor will be sustained and makes other assumptions regarding the potential resolution of other claims. The final claims numbers may be higher or lower to the extent additional claims objections are sustained or additional claims are added. Nonetheless, the total amount distributed to general unsecured creditors will be 11.5% with a cap of $3,000,000.

DocuSign Envelope ID: 22EA3E5E-3DDC-45BE-AE55-856A09487554

rights and interests in the Claims objection process up until confirmation of the Plan. After confirmation of the Plan, the Committee will become the "Claims Administrator" and will assume control over objections to Claims, and the Debtor will be relieved of all liability for the post-confirmation objections-to-Claims process. If the Committee reduces the Allowed amount of Claims post-confirmation, the net benefit resulting from such reduction equally will be split between the Debtor and the Committee. The net benefit means the total amount that the Debtor would be obligated to pay on account of a Claim were its Allowed amount not reduced by objection of the Committee less the costs and expenses incurred by the Committee in objection to such Claim.

To the extent that the Allowed amount of a claim is disputed, the Debtor will escrow such creditor's *pro rata* share of plan distributions pending final resolution of a claim objection.

To illustrate, assume the entire General Unsecured Claims pool is comprised of four creditors, and the aggregate amount of the claims of those creditors is $26,086,956.50. Eleven and a half percent of $26,086,956.50 is $3,000,000.00; therefore, if there are no objections to claims, then the Debtor will pay $187,500.00 per quarter for a total of 16 quarters.[8]

Assume one of the three general unsecured creditors ("Creditor Z") filed a claim in the amount of $13,043,478.25 (i.e. 50% of the General Unsecured Claims pool).

---

[8] If the aggregate Allowed amount of General Unsecured Claims exceeds $26,086,956.50, then the Debtor will pay $187,500.00 per quarter for a total of 16 quarters, and the general unsecured creditors will receive less than 11.5% of the Allowed amount of their respective claims in full and final satisfaction of their claims against the Debtor.

Assume further that the Committee objects to that claim, and in the sixth quarter, the claim objection is sustained and the allowed amount of the claim becomes $10,000,000.00. This reduces the aggregate amount of the general unsecured claims to $23,043,478.25.

Eleven and a half percent of $23,043,478.25 is $2,650,000.00. The Debtor will have paid $2,650,000.00 by quarter 15. Distributions would occur as follows:

Q1: $187,500.00 paid by the Debtor and distributed as follows: $93,750.00 escrowed for Creditor Z, and $93,750.00 distributed to the remaining three creditors *pro rata*.

Identical distributions would be made for the next five quarters.

Q7: $187,500.00 paid by the Debtor, with distributions occurring as follows: $656,250.00 distributed to Creditor Z ($562,500.00 released from escrow plus *pro rata* share of Q7 distribution), and $93,750 .00 distributed to remaining three creditors *pro rata*.

Q8: $187,500.00, distributed *pro rata* to all four creditors.

Identical distributions would be made for the next six quarters. Once the Q14 distribution in the aggregate amount of $187,500.00 is made, the total payments made by the Debtor would amount to $2,625,000.00.

Q15: $25,000.00, distributed *pro rata* to all four creditors.

Final distributions would occur in Q15, with no distribution occurring in Q16.

The Debtor and the Committee would split the $50,000.00 reduction in the Allowed amount of general unsecured claims, and each party's share would be in an

amount equal to $25,000.00 less fifty percent of the costs and expenses incurred by the Committee in prosecuting its objection to the claim of Creditor Z.

With regards to claims in low dollar amounts, the following illustration applies. If, of the four hypothetical creditors, the Allowed amount of the general unsecured claim of "Creditor Y" amounts to $16,000.00, then the total distribution payable to Creditor Y would be in the amount of $1,840.00 (i.e. 11.5% of $16,000.00). The Debtor may pay Creditor Y $1,840.00 in Q1 in full and final satisfaction of Creditor Y's claim rather than paying Creditor Y $115.00 per quarter. The hypothetical distribution schedule would be as follows:

Q1: $187,500.00 paid by the Debtor and distributed as follows: $1,840.00 distributed to Creditor Y, $92,830.00 escrowed for Creditor Z, and $92,830.00 distributed to the remaining two creditors *pro rata*.

No further distributions would be made to Creditor Y, whose claim against the Debtor has been satisfied in full through the Q1 distribution.

Q2: $187,500.00 paid by the Debtor and distributed as follows: $93,750.00 escrowed for Creditor Z, and $93,750.00 distributed to the remaining two creditors *pro rata*.

Identical distributions would be made for the next four quarters.

Q7: $187,500.00 paid by the Debtor, with distributions occurring as follows: $655,330.00 distributed to Creditor Z ($561,580.00 released from escrow plus *pro rata* share of Q7 distribution), and $93,750.00 distributed to remaining two creditors *pro rata*.

DocuSign Envelope ID: 22EA3E5E-3DDC-45BE-AE5E-856A09487554

Q8: $187,500.00, distributed *pro rata* to all three remaining creditors.

Identical distributions would be made for the next six quarters.  Once the Q14 distribution in the aggregate amount of $187,500.00 is made, the total payments made by the Debtor would amount to $2,625,000.00.

Q15: $25,000.00, distributed *pro rata* to all three remaining creditors.

Final distributions would occur in Q15, with no distribution occurring in Q16.

Furthermore, and by agreement of the Committee and the Debtor, the Committee will not assert any chapter 5 claims against any party, and consents to the Debtor releasing all such claims. The Debtor also releases all chapter 5 claims as to any party.

The Committee will not object to this Plan and will support its confirmation.

*Impairment*: This Class is impaired, and holders of Allowed Claims in this Class are entitled to vote to accept or reject the Plan.

**Class 16 – Allowed Equity Interests**:

(a)    Description: Class 16 consists of the Allowed Equity Interests in the Debtor. Mr. Krantzberg is the Debtor's manager, president, and 100% interest holder.

(b)    Treatment: Mr. Krantzberg will retain his 100% equity interest in the Debtor/Reorganized Debtor by contributing "New Value" in the approximate amount of $5,055,161.67, in the form of (a) a waiver of Mr. Krantzberg's general unsecured claim of $786,661.67 against the estate; (b) a waiver of Mr. Krantzberg's

administrative claim in the approximate amount of $714,000.00[9] against the estate; (c) a waiver of $239,500.00 which is owed by the Debtor to Mr. Krantzberg's wholly-owned company, 405 Southwest Real Estate Company, LLC[10]; (d) $2,500,000.00 as a capital infusion made by Mr. Krantzberg to the Reorganized Debtor, payable in 16 quarterly payments commencing on the Initial Payment Date and according to the schedule in the attached **Exhibit "A" Plan Financials Section 12**, and (e) Mr. Krantzberg's contributions to the Main Street Loan in the amount of $485,000 plus a backstop to Main Street's general unsecured distribution in the amount of $815,000. Further, Mr. Krantzberg is providing new personal guarantees covering over $4,500,000 in commercial lease and Main Street loan commitments.[11]

(c)      Impairment: Class 16 is impaired, and the holder of the Allowed Equity Interest is entitled to vote to accept or reject the Plan.

## ARTICLE V
## CLAIMANTS AND IMPAIRED INTEREST HOLDERS

Claimants and Equity Interest holders entitled to vote under the Plan must affirmatively act in order for the Plan to be confirmed by the Court. According to the Plan, all 15 Classes are "Impaired" classes within the meaning of Section 1124 of the Bankruptcy Code. These classes, accordingly, must vote to accept the Plan in order

---

[9] Mr. Krantzberg is entitled to a monthly $95,500 licensing fee for the use of his website by the Debtor, pursuant to the RE Licensing Agreement as described herein. Such amount has not been paid during the pendency of this case, and is accruing monthly.

[10] This amount would otherwise need to be paid in full as the Debtor is assuming this lease.

[11] The value of these personal guarantees is critical to the consummation of this plan and a successful reorganization of this Debtor. The numerical value of these guarantees has not been included in the New Value calculation above; notwithstanding, such commitments are vital to the reorganization process.

DocuSign Envelope ID: 22EA3E5E-3DDC-45BE-AE55-356A09487554

for the Plan to be confirmed without a "cram down". A claimant who fails to vote to either accept or reject the Plan will not be included in the calculation regarding acceptance or rejection of the Plan.

A ballot to be completed by the holders of claims and/or interests is included herewith. Instructions for completing and returning the ballots are set forth thereon and should be reviewed at length. The Plan will be confirmed by the Court and made binding upon all claimants and interest holders if (a) with respect to impaired classes of claimants, the Plan is accepted by holders of at least two-thirds in amount and more than one-half in number of claims in each such class voting upon the Plan and (b) with respect to classes of interest holders, if the Plan is accepted by the holders of at least two-thirds in amount of the allowed interests of such class held by holders of such interests. In the event the requisite acceptances are not obtained, the Court may, nevertheless, confirm the Plan if it finds pursuant to Section 1129 of the Bankruptcy Code that the Plan does not discriminate unfairly and accords fair and equitable treatment to any impaired class that does not accept the Plan.

## ARTICLE VI
## ANALYSIS OF THE PLAN VS. LIQUIDATION ANALYSIS

Debtor believes that this Plan is in the best interest of creditors. As with any Plan, an alternative would be a conversion of the Chapter 11 case to a Chapter 7 case and subsequent liquidation of the assets of Debtor by a duly appointed or elected trustee. In the event of liquidation under Chapter 7, the following is likely to occur:

    a)  Unsecured creditors would not receive any distributions;

b)  An additional tier of administrative expenses under Section 507(a)(1) of the Bankruptcy Code would be incurred. Such administrative expenses would include trustee's commissions and fees to the trustee's attorneys, accountants, and other professionals likely to be retained by him or her for the purposes of liquidating the assets of Debtor; and

c)  Further claims could be asserted against Debtor with respect to such matters as taxes associated with the sale of Debtor's assets and the inability of Debtor to fulfill outstanding, contractual commitments and other related claims.

A liquidation analysis which demonstrates the financial consequences of a conversion is attached as **Exhibit "B".**

## ARTICLE VII
## RISK ANALYSIS

Debtor believes there is minimal risk to the creditors if the Plan is confirmed, as the proceeds from Debtor's Cash on hand and/or future net revenue from the continued operation of Debtor's business are sufficient to service the restructured debt. For a detailed projections of the Debtor's cash flow post-confirmation, see attached **Exhibit "A"** (Summary is Plan Financials Section 1).

## ARTICLE VIII
## CONFIRMATION BY "CRAM DOWN"

If all of the applicable provisions of 11 U.S.C. §1129(a) other than paragraph (8) are found to have been met with respect to the Plan, the Debtor may seek

confirmation pursuant to 11 U.S.C. §1129(b). For the purposes of seeking confirmation under the "cram down" provisions of the Bankruptcy Code, should that alternative means of confirmation prove to be necessary, the Debtor reserves the right to modify or vary the treatment of the claims of the rejecting Classes so as to comply with Section 1129(b) of the Bankruptcy Code.

The Plan may be confirmed by "cram down" if the Court finds that the Plan does not discriminate unfairly and is fair and equitable with respect to each dissenting class.

The Plan is deemed "fair and equitable" if it provides (i) that each holder of a secured claim retains its lien and receives deferred Cash payments totaling at least the Allowed amount of its Claim, of a value, as of the effective date of the Plan, of at least the value of its secured interest in the property subject to the lien, and (ii) that each holder of an unsecured Claim receives property of a value equal to the Allowed amount of its Claim, or no holder of a junior Claim receives or retains any property on account of such Claim.

## ARTICLE IX
## POST-CONFIRMATION REORGANIZED DEBTOR'S STRUCTURE

<u>Equity Structure</u>. Upon and after the Effective Date, the Reorganized Debtor shall continue to exist, with all assets re-vesting in the Reorganized Debtor and with all powers of limited liability companies under the laws of the State of Florida and without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) under Florida law. Following the Effective Date, the Reorganized Debtor shall be free to operate and perform any and all acts authorized

by its Operating Agreement without further order from the Court, subject only to the terms of the Plan and Confirmation Order. Upon the Effective Date, Debtors' management shall remain unchanged, in that Mauricio Krantzberg shall remain the sole manager and 100% interest holder of Debtor and shall continue to act as president of the Debtor/Reorganized Debtor. In addition, Mauricio Krantzberg is named as the disbursing agent responsible for making the payments under the Plan.

Post-Confirmation Structure: Upon the entry of the Confirmation Order, subject to the occurrence of the Effective Date, the property of the Debtor shall be free and clear of all claims and interests of creditors, except as otherwise provided for herein, and the Reorganized Debtor will be vested with all of its property free and clear of all claims and interests of creditors, except as otherwise provided for herein. On or as of the Effective Date, the Plan shall be implemented and the Debtor shall carry out all the obligations and responsibilities required under the Plan, including the execution and delivery of all documentation contemplated by the Plan. The Debtor shall continue to exist after the Effective Date as a separate entity with all assets re-vesting in the Debtor and with all powers of corporations under the laws of the State of Florida and without prejudice to any right to alter or terminate such existence (whether by merger, dissolution, or otherwise) under Florida law.

All matters provided for under the Plan involving the corporate structure of the Debtor, Reorganized Debtor, or any corporate action to be taken by or required of the Debtor or Reorganized Debtor, shall, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized and approved

DocuSign Envelope ID: 22EA3E5E-3DDG-45BE-AE5E-856A09487554

in all respects without any requirement for further action by the Debtor or Reorganized Debtor.

Subject to any requirement of Bankruptcy Court approval pursuant to Section 1129(a)(5) of the Bankruptcy Code, as of the Effective Date, the officers, partners, directors, members and managers, as the case may be, of the Debtor immediately prior to the Effective Date shall be deemed to be the officers, partners, directors, members, and managers of the Reorganized Debtor without any further action by any party.

As of the Effective Date, the Debtor may use, acquire, and dispose of its assets, free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and Confirmation Order. All privileges with respect to the assets of the Debtor's estate, including the attorney/client privilege, to which the Debtor is entitled shall automatically vest in, and may be asserted by or waived on behalf of, the Debtor or the Reorganized Debtor, as the case may be.

## ARTICLE X
## <u>MISCELLANEOUS PROVISIONS</u>

<u>Allowed and Disallowed Claims.</u> Notwithstanding any other provisions of the Plan, any Claim which is scheduled as disputed, contingent, or unliquidated or which is objected to in whole or in part on or before the date for distribution, shall not be paid in accordance with the provisions of the Plan until such Claim has become an Allowed Claim by a Final Order. If allowed, the Claim shall be paid on the same terms as if there had been no dispute.

Unclaimed Funds. If the holder of an Allowed Claim ("Holder") fails to negotiate a check for a Distribution issued to such Holder within 60 days of the date such check was issued, then the Reorganized Debtor will provide written notice to such Holder stating that, unless such Holder negotiates such check within 90 days of the date of such notice, the amount of Cash attributable to such check will be deemed to be unclaimed, such Holder will be deemed to have no further Claim in respect of such check, such Holder's Allowed Claim will no longer be deemed to be Allowed, and such Holder will not be entitled to participate in any further Distributions under the Plan in respect of such Claim.

If a check for a Distribution made pursuant to the Plan to any Holder of an Allowed Claim is returned to the Reorganized Debtor due to an incorrect or incomplete address for the Holder of such Allowed Claim, and no claim is made in writing to the Reorganized Debtor as to such check within 90 days of the date such Distribution was made, then the amount of Cash attributable to such check will be deemed to be unclaimed, such Holder will be deemed to have no further Claim with respect to such check, such Holder's Allowed Claim will no longer be deemed to be Allowed, and such Holder will not be entitled to participate in any further Distributions under the Plan in respect of such Claim. Any unclaimed Distribution as described above will constitute "Unclaimed Funds" and will first be distributed *pro rata* to the holders of Allowed Administrative Claims. To the extent the holders of Allowed Administrative Claims have been paid in full, any remaining Unclaimed Funds will be distributed *pro rata* to holders of Allowed General Unsecured Claims

under Class 14.

Modification of Plan. At any time before the Confirmation Date, Debtor may modify the Plan, but may not modify the Plan so that the Plan, as modified, fails to meet the requirements of Sections 1122 and 1123 of the Bankruptcy Code. After Debtor files a modification with the Court, the Plan, as modified, shall become an amended Plan.

At any time after the Confirmation Date, and before substantial consummation of the Plan, Debtor may modify the Plan with permission of the Court so that the Plan, as modified, meets the requirements of Sections 1122 and 1123 of the Bankruptcy Code. The Plan, as modified under this paragraph, shall become an amended Plan.

After the Confirmation Date, Debtor may, with approval of the Court, and so long as it does not materially and adversely affect the interest of creditors, remedy any defect or omission, or reconcile any inconsistencies in the Plan or in the Order of Confirmation, in such manner as may be necessary to carry out the purposes and effect of the Plan.

Retention of Jurisdiction. From and after the Confirmation Date, the Bankruptcy Court shall retain such jurisdiction as is legally permissible over the reorganization case for the following purposes:

(a) to hear and determine any and all objections to the allowance of any Claim or any controversy as to the classification of Claims;

(b) to hear and determine any and all applications for compensation and reimbursement of expenses to professionals as well as to hear and determine claims entitled to priority under Section 507(a)(1) of the Bankruptcy Code;

(c) to enable Debtor to prosecute any and all proceedings which may be brought to set aside liens or encumbrances and to recover any transfers, assets, properties, or damages to which Debtor may be entitled under applicable provisions of the Bankruptcy Code or any other Federal, State or local laws; including causes of action, controversies, disputes, and conflicts between Debtor and any other party, including but not limited to any causes of action for objections to claims, preferences or fraudulent transfers and obligations or equitable subordination; and to enter any order assuring that good, sufficient and marketable legal title is conveyed to the purchaser of Debtor's property;

(d) to consider any necessary valuation issues under Section 506 of the Bankruptcy Code, and any proceeding to determine the amount, validity and priority of liens, in connection with Debtor's property;

(e) to determine the rights of any party in respect of the assumption or rejection of any executory contracts or unexpired leases;

(f) to correct any defect, cure any omission, or reconcile any inconsistency in the Plan or in the Confirmation Order, as may be necessary to carry out the purposes and intent of this Plan;

(g) to modify this Plan after the Confirmation Date, pursuant to the Bankruptcy Code;

(h) to enforce and interpret the terms and conditions of this Plan;

(i) to enter orders to enforce the title, rights, and power of the Estate as the Court may deem necessary; and

(j) to enter orders concluding and closing this case.

## ARTICLE XI
## DUTIES AND FEES OWED TO THE OFFICE OF THE U.S. TRUSTEE

With respect to pre-confirmation periods, Debtor is required to pay the appropriate sums required pursuant to Section 1930(a)(6) on the Effective Date. Debtor must also file all monthly operating reports for the relevant periods indicating the Cash disbursements for the relevant period.

With respect to post-confirmation periods, Reorganized Debtor will pay the United States Trustee fees for post-confirmation periods based upon all post-Confirmation disbursements made by Reorganized Debtor, and will also file all post-confirmation quarterly operating reports with the Court, until the earlier of the closing of the case or upon dismissal or conversion of the case.

## ARTICLE XII
## EFFECT OF CONFIRMATION OF PLAN

Binding Effect. The Plan shall be binding upon and inure to the benefit of the Debtor, all present and former holders of Claims and Equity Interests, and their respective successors and assigns.

Injunction. All entities who have held, hold, or may hold Claims against or Equity Interests in the Debtor are, with respect to any such Claims or Equity Interests, and after the Confirmation Date, permanently enjoined from taking any of

the following actions (other than actions to enforce any rights or obligations under the Plan): (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative or other forum) against or affecting Debtor/Reorganized Debtor or any of its property; (ii) enforcing, levying, attaching (including any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any encumbrance of any kind against Debtor/Reorganized Debtor; (iii) asserting any right of setoff, directly or indirectly, against any obligation due Debtor/Reorganized Debtor, or any of their property, except as contemplated or allowed by the Plan; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; and (v) prosecuting or otherwise asserting any right, claim or cause of action against Debtor/Reorganized Debtor, that has been exculpated pursuant to the Plan; provided, however, that the injunction provided herein above shall neither bar any entity from asserting any defense in an action commenced by or on behalf of any of Debtor/Reorganized Debtor, nor prohibit any entity from asserting any right expressly preserved or contemplated by the Plan.

By accepting Distributions pursuant to the Plan, each holder of an Allowed Claim or Equity Interest shall be deemed to have specifically consented to the Injunctions set forth herein.

Discharge of the Debtor. On the Effective Date of this Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent

specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt (i) imposed by this Plan; or (ii) to the extent provided in § 1141(d)(6).

Final Decree as to Debtor and Closing of the Case. Upon substantial consummation of the Plan, the Debtor, or such other party as the Court shall designate in the Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such a final decree on its own motion.

## ARTICLE XIII
## TAX IMPLICATIONS OF THE PLAN

Debtor believes that confirmation of the Plan will not have any adverse tax implications for the Estate. *Debtor strongly urges that each creditor consult with its own tax advisor regarding the Federal, state, local, and other tax consequences which the implementation of the Plan will have on them.*

## ARTICLE XIV
## CONCLUSION

Under the Plan, all creditors and interest holders of Debtor will participate in some manner in the distribution to be made thereunder. Debtor believes that the distributions contemplated in the Plan are fair and afford all claimants and interest holders equitable treatment. ACCORDINGLY, DEBTOR RECOMMENDS THAT ALL CLAIMANTS AND INTEREST HOLDERS VOTE TO ACCEPT THE PLAN.

[The remainder of this page left intentionally left blank.]

This Amended Disclosure Statement is respectfully submitted: 12/4/2023

Retailing Enterprises, LLC

Maurício Krantzberg, President

Wernick Law, PLLC
*Counsel for the Debtor*
2255 Glades Road, Suite 324A
Boca Raton, FL 33431
561-961-0922

By: /s/ *Aaron A. Wernick*
    Aaron A. Wernick, Esq.
    Florida Bar No. 14059
    awernick@wernicklaw.com

Exhibit "A"

**Retailing Enterprises, LLC**
**Plan Projections**
**Section 1: Summary**

| *Value (/'000)* | *For 2024* | *For 2025* | *For 2026* | *For 2027* |
|---|---|---|---|---|
| **Sales $** | 83,392 | 86,570 | 90,073 | 93,156 |
| | | | | |
| **Gross Margin $** | 33,820 | 35,168 | 36,707 | 38,090 |
| Gross Margin % | 40.6% | 40.6% | 40.8% | 40.9% |
| | | | | |
| **Shop Profit $** | 7,138 | 8,339 | 9,640 | 9,051 |
| Shop Profit % | 8.6% | 9.6% | 10.7% | 9.7% |
| | | | | |
| **EBITDA $** | 349 | 1,121 | 1,901 | 783 |
| EBITDA % | 0.4% | 1.3% | 2.1% | 0.8% |
| | | | | |
| **Operating Income $** | -993 | -42 | 998 | 100 |
| Operating Income % | -1.2% | 0.0% | 1.1% | 0.1% |
| | | | | |
| **Net Income / Loss** | -1,064 | -105 | 964 | 100 |
| Net Income / Loss % | -1.3% | -0.1% | 1.1% | 0.1% |

**Cash Flow Analysis**

| | *Value (/'000)* | *For 2024* | *For 2025* | *For 2026* | *For 2027* |
|---|---|---|---|---|---|
| 1) | **EBITDA** | **349** | **1,121** | **1,901** | **783** |
| | | | | | |
| 2) | Tenant Allowance | 491 | | | |
| 3) | Refund Taxes Texas | 124 | | | |
| 4) | Cash from Puerto Rico | 1,326 | 665 | 521 | 920 |
| 5) | City Bank Loans (Principals+Interests) | -72 | -497 | -1,288 | 0 |
| 6) | Capex | -75 | -300 | -450 | -1,150 |
| | **Total** | **1,794** | **-132** | **-1,217** | **-230** |
| | | | | | |
| | **CASH FLOW before BK** | **2,142** | **989** | **684** | **553** |
| | | | | | |
| | *BK* | | | | |
| 7) | Ending Cash | 1,350 | | | |
| 8) | Contract Assumptions | -2,299 | | | |
| 9) | Administrative Claims (*) | -1,277 | 0 | 0 | 0 |
| 10) | Unsecured Priority Claims | -237 | -230 | -224 | 0 |
| 11) | Unsecured Creditors | -750 | -750 | -750 | -750 |
| 12) | MK Contribution | 1,200 | 350 | 500 | 450 |
| | **Total BK** | **-2,013** | **-630** | **-474** | **-300** |
| | | | | | |
| | **CASH FLOW After BK** | **129** | **359** | **210** | **253** |

# Retailing Enterprises, LLC
## Plan Projections
### Section 2: 4-Year Profit and Loss

_This page is a full-width, rotated 4-Year Profit and Loss projection table. The table is organized by year (2024, 2025, 2026, 2027), each divided into the sub-columns: Stores / %, Ecomm / %, Sales to PR / %, Total / %. Row labels (left-hand column) are listed below._

| All amounts in $usd in 000s |
| --- |
| NET SALES |
| COGS |
| GROSS MARGIN |
| Obsolescence |
| Shrinkage |
| Damages |
| Net Shipping & Handling |
| Pick & Pack |
| Other |
| TOTAL OTHER COST |
| GROSS PROFIT |
| Landlord charges |
| Depreciation and Amortization |
| Shop Payroll |
| Corporate Contract Services |
| Display |
| Supplies |
| Repairs & Maintenance |
| Utilities |
| Bank Charges |
| Credit Card Fees |
| Communications |
| Insurance |
| Other Shop Expenses |
| Total Selling Expenses |
| SHOP PROFIT |
| LOGISTICS |
| Corporate Rent |
| Corporate Maintenance |
| Corporate Contract Services |
| Corporate Amortization |
| Corporate Communications |
| Corporate Personnel |
| Corporate Professional Services |
| Corporate Profit Sharing/Recruitment |
| Corporate General Services |
| Corporate T&E |
| Royalties |
| TOTAL CORPORATE |
| Marketing |
| MARKETING |
| OPERATING INCOME |
| Financing (Income)/Expense |
| Extraordinary (Income)/Expense |
| PROFIT BEF INC TAXES |
| Income Taxes |
| NET INCOME / LOSS |
| EBITDA |

_Column groupings across the page: **2024** (Stores, %, Ecomm, %, Sales to PR, %, Total, %) · **2025** (Stores, %, Ecomm, %, Sales to PR, %, Total, %) · **2026** (Stores, %, Ecomm, %, Sales to PR, %, Total, %) · **2027** (Stores, %, Ecomm, %, Sales to PR, %, Total, %)._

DocuSign Envelope ID: 22EA3E5E-3DDC-45BE-AE5E-856A09487554

**Retailing Enterprises, LLC**

**Plan Projections**

**Section 3: Sales By Store 2024 to 2027**

All amounts in Usd in 000s

| Store Code | Store Name | Status | FY 2024 | FY 2025 | FY 2026 | FY 2027 |
|---|---|---|---|---|---|---|
| 006 | Brandon | Open | 851 | 876 | 902 | 929 |
| 009 | Christiana | Open | 746 | 768 | 791 | 815 |
| 013 | Sarasota | Open | 840 | 865 | 891 | 918 |
| 015 | Queens | Open | 914 | 941 | 969 | 998 |
| 025 | Westland | Open | 945 | 973 | 1,003 | 1,033 |
| 031 | Sawgrass | Open | 1,890 | 1,947 | 2,005 | 2,065 |
| 033 | Orlando Premium | Open | 1,701 | 1,752 | 1,805 | 1,859 |
| 052 | Northstar | Open | 882 | 908 | 936 | 964 |
| 068 | Prince Georges | Open | 650 | 670 | 690 | 710 |
| 073 | Cross County | Open | 1,103 | 1,136 | 1,170 | 1,205 |
| 074 | Perimeter Mall | Open | 800 | 824 | 849 | 874 |
| 075 | Daytona | Open | 840 | 865 | 891 | 918 |
| 076 | Phoenix | Open | 840 | 865 | 891 | 918 |
| 077 | El Paso | Open | 840 | 865 | 891 | 918 |
| 078 | West Palm Beach | Open | 840 | 865 | 891 | 918 |
| **Total** | | | **14,680** | **15,120** | **15,574** | **16,041** |

**Retailing Enterprises, LLC**
**Plan Projections**
**Section 4: Store Level Detail (2024)**

All amounts in Usd in 000s

| Store Code | Store Name | Landlord | LE | Net Sales | COGS | Obsolescence | Shrinkage | Damages | Net Shipping & Handling | Pick & Pack |
|---|---|---|---|---|---|---|---|---|---|---|
| 006 | Brandon | Westfield | LLC | 851 | 341 | 1 | 2 | 3 | 9 | 9 |
| 009 | Christiana | Brookfield | LLC | 746 | 298 | 1 | 1 | 2 | 11 | 8 |
| 013 | Sarasota | Taubman | LLC | 840 | 338 | 1 | 2 | 3 | 8 | 9 |
| 015 | Queens | Macerich | LLC | 914 | 365 | 1 | 2 | 3 | 14 | 10 |
| 025 | Westland | Other | LLC | 945 | 330 | 1 | 2 | 3 | 9 | 11 |
| 031 | Sawgrass | Simon | LLC | 1,890 | 733 | 2 | 4 | 6 | 19 | 21 |
| 033 | Orlando Premium | Simon | LLC | 1,701 | 740 | 2 | 5 | 5 | 17 | 19 |
| 052 | Northstar | Brookfield | LLC | 882 | 375 | 1 | 3 | 5 | 10 | 10 |
| 068 | Prince Georges | Prince Georges | LLC | 650 | 250 | 1 | 1 | 2 | 7 | 7 |
| 073 | Cross County | Independent | LLC | 1,103 | 400 | 1 | 2 | 3 | 10 | 12 |
| 074 | Perimeter Mall | Brookfield | LLC | 800 | 336 | 1 | 2 | 2 | 8 | 8 |
| 075 | Daytona | Tanger | LLC | 840 | 336 | 2 | 4 | 3 | 8 | 9 |
| 076 | Phoenix | Tanger | LLC | 840 | 336 | 2 | 4 | 3 | 8 | 9 |
| 077 | El Paso | Independent | LLC | 840 | 328 | 2 | 4 | 3 | 13 | 9 |
| 078 | West Palm Beach | Tanger | LLC | 840 | 332 | 2 | 4 | 3 | 8 | 9 |
| 001 | Corporate | Tanger | LLC | | | | | | | |
| Stores | | | | 14,680 | 5,837 | 18 | 39 | 44 | 172 | 164 |

1

| Landlord charges | Depreciation and Amortization | Shop Payroll | Display | Supplies | Repairs & Maintenance | Contract Services | Bank Charges | Utilities | Communications |
|---|---|---|---|---|---|---|---|---|---|
| 152 | 2 | 184 | 3 | 3 | 4 | 4 | 17 | 11 | 6 |
| 170 | 8 | 173 | 2 | 3 | 4 | 4 | 15 | 1 | 9 |
| 98 | 34 | 171 | 3 | 3 | 4 | 4 | 17 | 3 | 7 |
| 117 | 53 | 192 | 3 | 4 | 5 | 4 | 18 | 2 | 8 |
| 168 | 84 | 207 | 3 | 4 | 5 | 4 | 19 | 5 | 4 |
| 327 | 43 | 293 | 6 | 8 | 9 | 6 | 38 | 6 | 8 |
| 309 | 31 | 296 | 5 | 7 | 9 | 5 | 34 | 7 | 10 |
| 167 | 36 | 161 | 3 | 4 | 4 | 5 | 18 | 1 | 7 |
| 68 | 95 | 157 | 2 | 3 | 3 | 4 | 13 | 7 | 7 |
| 159 | 87 | 207 | 3 | 4 | 6 | 4 | 22 | 22 | 11 |
| 129 | 51 | 185 | 2 | 3 | 4 | 4 | 16 | 7 | 8 |
| 95 | 50 | 203 | 3 | 3 | 4 | 4 | 17 | 1 | 7 |
| 98 | 49 | 223 | 3 | 3 | 4 | 4 | 17 | 1 | 10 |
| 73 | 40 | 190 | 3 | 3 | 4 | 4 | 17 | 1 | 7 |
| 97 | 33 | 183 | 3 | 3 | 4 | 4 | 17 | 1 | 10 |
| | | 899 | | | | | | | |
| 2,226 | 695 | 3,924 | 44 | 59 | 73 | 66 | 294 | 69 | 121 |

2

DocuSign Envelope ID: 22EA3E5E-3DDC-45BE-AE55-856A09487554



| Insurance | Other Shop Expenses | Other | Total Costs | Margin |
|---|---|---|---|---|
| 8 | 6 | 0 | 765 | 86 |
| 9 | 6 | 0 | 725 | 20 |
| 7 | 6 | 0 | 717 | 123 |
| 10 | 6 | 0 | 816 | 98 |
| 6 | 6 | 0 | 870 | 75 |
| 14 | 6 | 0 | 1,548 | 342 |
| 14 | 6 | 0 | 1,518 | 183 |
| 6 | 6 | 0 | 824 | 58 |
| 10 | 6 | 0 | 644 | 6 |
| 8 | 6 | 0 | 976 | 127 |
| 10 | 6 | 0 | 776 | 24 |
| 8 | 6 | 0 | 765 | 75 |
| 10 | 6 | 0 | 790 | 50 |
| 10 | 6 | 0 | 719 | 121 |
| 10 | 6 | 0 | 728 | 112 |
| 10 | 6 | - | 899 | -899 |
| 144 | 90 | 0 | 14,079 | 601 |

3

# Retailing Enterprises, LLC
## Plan Projections
## Section 5: Store Level Detail (2025)

| All amounts in Usd in 000s Store Code | Store Name | Landlord | LE | Net Sales | COGS | Obsolescence | Shrinkage | Damages | Net Shipping & Handling |
|---|---|---|---|---|---|---|---|---|---|
| 006 | Brandon | Westfield | LLC | 876 | 349 | 1 | 2 | 3 | 9 |
| 009 | Christiana | Brookfield | LLC | 768 | 305 | 1 | 2 | 2 | 12 |
| 013 | Sarasota | Taubman | LLC | 865 | 346 | 1 | 2 | 3 | 9 |
| 015 | Queens | Macerich | LLC | 941 | 405 | 1 | 2 | 3 | 14 |
| 025 | Westland | Other | LLC | 973 | 339 | 1 | 2 | 3 | 10 |
| 031 | Sawgrass | Simon | LLC | 1,947 | 751 | 2 | 4 | 6 | 19 |
| 033 | Orlando Premium | Simon | LLC | 1,752 | 758 | 2 | 4 | 5 | 18 |
| 052 | Northstar | Brookfield | LLC | 908 | 384 | 1 | 2 | 3 | 14 |
| 068 | Prince Georges | Prince Georges | LLC | 670 | 256 | 1 | 1 | 2 | 10 |
| 073 | Cross County | Independent | LLC | 1,136 | 410 | 1 | 2 | 3 | 17 |
| 074 | Perimeter Mall | Brookfield | LLC | 824 | 354 | 1 | 2 | 2 | 8 |
| 075 | Daytona | Tanger | LLC | 865 | 372 | 2 | 4 | 4 | 9 |
| 076 | Phoenix | Tanger | LLC | 865 | 344 | 2 | 4 | 4 | 9 |
| 077 | El Paso | Independent | LLC | 865 | 337 | 2 | 4 | 4 | 13 |
| 078 | West Palm Beach | Tanger | LLC | 865 | 340 | 2 | 4 | 4 | 9 |
| 001 | Corporate | | LLC | | | | | | |
| Stores | | | | 15,120 | 6,050 | 19 | 41 | 52 | 178 |

| Pick & Pack | Landlord charges | Depreciation and Amortization | Shop Payroll | Display | Supplies | Repairs & Maintenance | Contract Services | Bank Charges |
|---|---|---|---|---|---|---|---|---|
| 9 | 155 | 1 | 190 | 4 | 3 | 4 | 4 | 18 |
| 8 | 170 | 1 | 178 | 4 | 2 | 4 | 4 | 15 |
| 9 | 100 | 2 | 176 | 4 | 3 | 4 | 4 | 17 |
| 10 | 117 | 32 | 198 | 5 | 3 | 5 | 4 | 19 |
| 10 | 168 | 83 | 213 | 5 | 3 | 5 | 4 | 19 |
| 21 | 334 | 42 | 302 | 10 | 6 | 10 | 6 | 39 |
| 19 | 316 | 30 | 305 | 9 | 5 | 9 | 5 | 35 |
| 10 | 167 | 36 | 166 | 5 | 3 | 5 | 5 | 18 |
| 7 | 80 | 82 | 162 | 3 | 2 | 3 | 4 | 13 |
| 12 | 163 | 84 | 213 | 6 | 3 | 6 | 4 | 23 |
| 9 | 129 | 51 | 190 | 4 | 2 | 4 | 4 | 16 |
| 9 | 97 | 50 | 209 | 4 | 3 | 4 | 4 | 17 |
| 9 | 100 | 49 | 229 | 4 | 3 | 4 | 4 | 17 |
| 9 | 75 | 40 | 196 | 4 | 3 | 4 | 4 | 17 |
| 9 | 99 | 33 | 189 | 4 | 3 | 4 | 4 | 17 |
| | | | 926 | | | | | |
| 162 | 2,271 | 617 | 4,041 | 76 | 45 | 76 | 68 | 302 |

2

3

| Utilities | Communications | Insurance | Other Shop Expenses | Other | Total Costs | Margin |
|---|---|---|---|---|---|---|
| 11 | 6 | 9 | 6 | 0 | 783 | 93 |
| 1 | 9 | 9 | 6 | 0 | 733 | 35 |
| 3 | 7 | 7 | 6 | 0 | 704 | 161 |
| 2 | 8 | 10 | 6 | 0 | 843 | 98 |
| 5 | 4 | 6 | 6 | 0 | 887 | 87 |
| 6 | 8 | 15 | 6 | 0 | 1,587 | 360 |
| 7 | 8 | 15 | 6 | 0 | 1,557 | 195 |
| 1 | 11 | 10 | 6 | 0 | 841 | 68 |
| 7 | 7 | 9 | 6 | 0 | 657 | 12 |
| 22 | 11 | 10 | 6 | 0 | 998 | 138 |
| 7 | 7 | 10 | 6 | 0 | 802 | 22 |
| 1 | 8 | 10 | 6 | 0 | 814 | 52 |
| 1 | 7 | 10 | 6 | 0 | 811 | 54 |
| 1 | 10 | 10 | 6 | 0 | 739 | 126 |
| 1 | 10 | 10 | 6 | 0 | 748 | 117 |
| 1 | 10 | 10 | | 0 | 926 | -926 |
| 71 | 124 | 149 | 90 | - | 14,431 | 689 |

# Retailing Enterprises, LLC
## Plan Projections
### Section 6: Store Level Detail (2026)

All amounts in Usd in 000s

| Store Code | Store Name | Landlord | LE | Net Sales | COGS | Obsolescence | Shrinkage | Damages | Net Shipping & Handling |
|---|---|---|---|---|---|---|---|---|---|
| 006 | Brandon | Westfield | LLC | 902 | 358 | 1 | 2 | 3 | 9 |
| 009 | Christiana | Brookfield | LLC | 791 | 313 | 1 | 2 | 2 | 12 |
| 013 | Sarasota | Taubman | LLC | 891 | 355 | 1 | 3 | 3 | 9 |
| 015 | Queens | Macerich | LLC | 969 | 415 | 1 | 2 | 3 | 15 |
| 025 | Westland | Other | LLC | 1,003 | 347 | 1 | 2 | 3 | 10 |
| 031 | Sawgrass | Simon | LLC | 2,005 | 770 | 2 | 4 | 6 | 20 |
| 033 | Orlando Premium | Simon | LLC | 1,805 | 777 | 2 | 5 | 5 | 18 |
| 052 | Northstar | Brookfield | LLC | 936 | 394 | 1 | 2 | 3 | 14 |
| 068 | Prince Georges | Prince Georges | LLC | 690 | 263 | 1 | 1 | 2 | 10 |
| 073 | Cross County | Independent | LLC | 1,170 | 420 | 1 | 2 | 4 | 18 |
| 074 | Perimeter Mall | Brookfield | LLC | 849 | 363 | 1 | 2 | 3 | 8 |
| 075 | Daytona | Tanger | LLC | 891 | 381 | 2 | 2 | 4 | 9 |
| 076 | Phoenix | Tanger | LLC | 891 | 353 | 2 | 4 | 4 | 9 |
| 077 | El Paso | Independent | LLC | 891 | 345 | 2 | 4 | 4 | 13 |
| 078 | West Palm Beach | Tanger | LLC | 891 | 348 | 2 | 4 | 4 | 9 |
| 001 | Corporate | | LLC | | | | | | |
| Stores | | | | 15,574 | 6,200 | 19 | 42 | 54 | 183 |

| Pick & Pack | Landlord charges | Depreciation and Amortization | Shop Payroll | Display | Supplies | Repairs & Maintenance | Contract Services | Bank Charges |
|---|---|---|---|---|---|---|---|---|
| 9 | 161 | 0 | 195 | 5 | 3 | 5 | 4 | 18 |
| 8 | 180 | 0 | 183 | 4 | 2 | 4 | 4 | 16 |
| 9 | 103 | 2 | 182 | 4 | 3 | 4 | 4 | 18 |
| 10 | 118 | 5 | 204 | 5 | 3 | 4 | 4 | 19 |
| 10 | 208 | 83 | 219 | 5 | 3 | 5 | 4 | 20 |
| 21 | 345 | 42 | 311 | 10 | 6 | 5 | 6 | 40 |
| 19 | 326 | 30 | 314 | 9 | 5 | 9 | 5 | 36 |
| 10 | 176 | 36 | 171 | 5 | 3 | 10 | 5 | 19 |
| 7 | 83 | 46 | 167 | 3 | 2 | 3 | 5 | 14 |
| 12 | 168 | 54 | 220 | 6 | 4 | 6 | 4 | 23 |
| 9 | 137 | 50 | 196 | 4 | 3 | 4 | 4 | 17 |
| 9 | 101 | 49 | 215 | 4 | 3 | 4 | 4 | 18 |
| 9 | 104 | 48 | 236 | 4 | 3 | 4 | 4 | 18 |
| 9 | 77 | 38 | 201 | 4 | 3 | 4 | 4 | 18 |
| 9 | 102 | 32 | 194 | 4 | 3 | 4 | 4 | 18 |
|  |  |  | 954 |  |  |  |  |  |
| **161** | **2,389** | **516** | **4,163** | **78** | **47** | **78** | **70** | **311** |

3

| Utilities | Communications | Insurance | Other Shop Expenses | Other | Total Costs | Margin |
|---|---|---|---|---|---|---|
| 11 | 6 | 9 | 6 | 0 | 805 | 97 |
| 1 | 10 | 10 | 6 | 0 | 757 | 34 |
| 3 | 8 | 8 | 6 | 0 | 723 | 168 |
| 1 | 8 | 10 | 6 | 0 | 834 | 135 |
| 23 | 11 | 10 | 6 | 0 | 944 | 59 |
| 7 | 8 | 9 | 6 | 0 | 1,629 | 376 |
| 1 | 11 | 15 | 6 | 0 | 1,598 | 206 |
| 7 | 8 | 15 | 6 | 0 | 867 | 69 |
| 6 | 4 | 6 | 6 | 0 | 636 | 53 |
| 5 | 8 | 10 | 6 | 0 | 992 | 178 |
| 2 | 7 | 9 | 6 | 0 | 825 | 24 |
| 8 | 8 | 10 | 6 | 0 | 834 | 58 |
| 6 | 10 | 10 | 6 | 0 | 831 | 60 |
| 1 | 10 | 11 | 6 | 0 | 757 | 134 |
| 1 | 10 | 11 | 6 | 0 | 767 | 124 |
| 1 | | | | 0 | 954 | -954 |
| 73 | 128 | 153 | 90 | - | 14,754 | 820 |

# Retailing Enterprises, LLC
## Plan Projections
## Section 7: Store Level Detail (2027)

All amounts in Usd in 000s

| Store Code | Store Name | Landlord | LE | Net Sales | COGS | Obsolescence | Shrinkage | Damages | Net Shipping & Handling |
|---|---|---|---|---|---|---|---|---|---|
| 006 | Brandon | Westfield | LLC | 929 | 367 | 1 | 2 | 3 | 9 |
| 009 | Christiana | Brookfield | LLC | 815 | 321 | 1 | 2 | 2 | 12 |
| 013 | Sarasota | Taubman | LLC | 918 | 363 | 1 | 2 | 3 | 9 |
| 015 | Queens | Macerich | LLC | 998 | 425 | 1 | 2 | 3 | 15 |
| 025 | Westland | Other | LLC | 1,033 | 356 | 1 | 2 | 6 | 10 |
| 031 | Sawgrass | Simon | LLC | 2,065 | 789 | 2 | 4 | 6 | 21 |
| 033 | Orlando Premium | Simon | LLC | 1,859 | 796 | 2 | 4 | 6 | 19 |
| 052 | Northstar | Brookfield | LLC | 964 | 404 | 1 | 2 | 3 | 14 |
| 068 | Prince Georges | Prince Georges | LLC | 710 | 269 | 1 | 2 | 4 | 11 |
| 073 | Cross County | Independent | LLC | 1,205 | 430 | 1 | 2 | 4 | 18 |
| 074 | Perimeter Mall | Brookfield | LLC | 874 | 372 | 1 | 3 | 3 | 9 |
| 075 | Daytona | Tanger | LLC | 918 | 391 | 2 | 5 | 5 | 9 |
| 076 | Phoenix | Tanger | LLC | 918 | 362 | 2 | 5 | 5 | 9 |
| 077 | El Paso | Independent | LLC | 918 | 353 | 2 | 5 | 5 | 14 |
| 078 | West Palm Beach | Tanger | LLC | 918 | 357 | 2 | 5 | 5 | 9 |
| 001 | Sales Corporate | Tanger | LLC | | | | | | |
| Stores | | | | 16,041 | 6,354 | 20 | 43 | 55 | 188 |

| ck & Pa | Landlord charges | Depreciation and Amortization | Shop Payroll | Display | Supplies | Repairs & Maintenance | Contract Services | Bank Charges |
|---|---|---|---|---|---|---|---|---|
| 28 | 167 | - | 201 | 5 | 3 | 5 | 5 | 19 |
| 25 | 186 | - | 189 | 4 | 2 | 4 | 5 | 16 |
| 28 | 106 | - | 187 | 5 | 3 | 5 | 5 | 18 |
| 30 | 119 | - | 210 | 5 | 3 | 5 | 5 | 20 |
| 31 | 216 | 67 | 226 | 5 | 3 | 5 | 5 | 21 |
| 62 | 356 | 34 | 320 | 10 | 6 | 10 | 7 | 41 |
| 56 | 336 | 24 | 324 | 9 | 6 | 9 | 5 | 37 |
| 29 | 183 | 29 | 176 | 5 | 3 | 5 | 5 | 19 |
| 21 | 85 | 36 | 172 | 4 | 2 | 4 | 5 | 14 |
| 36 | 173 | 39 | 226 | 6 | 4 | 6 | 5 | 24 |
| 26 | 142 | 40 | 202 | 4 | 3 | 4 | 5 | 17 |
| 28 | 105 | 40 | 222 | 5 | 3 | 5 | 5 | 18 |
| 28 | 108 | 38 | 243 | 5 | 3 | 5 | 5 | 18 |
| 28 | 108 | 22 | 207 | 5 | 3 | 5 | 5 | 18 |
| 28 | 80 | 17 | 200 | 5 | 3 | 5 | 5 | 18 |
| 28 | 106 | - | 983 | 5 | 3 | 5 | 5 | 18 |
| 483 | 2,468 | 388 | 4,287 | 80 | 48 | 80 | 72 | 321 |



| Utilities | Communications | Insurance | Other Shop Expenses | Preopening Expenses | Total Costs | Margin |
|---|---|---|---|---|---|---|
| 12 | 7 | 9 | 6 | | 846 | 83 |
| 1 | 10 | 10 | 6 | | 795 | 19 |
| 3 | 8 | 8 | 6 | | 759 | 159 |
| 2 | 9 | 10 | 6 | | 869 | 129 |
| 5 | 5 | 7 | 6 | | 973 | 59 |
| 7 | 9 | 16 | 6 | | 1,707 | 359 |
| 7 | 11 | 16 | 6 | | 1,673 | 185 |
| 1 | 8 | 10 | 6 | | 903 | 60 |
| 7 | 8 | 9 | 6 | | 657 | 54 |
| 24 | 12 | 10 | 6 | | 1,027 | 177 |
| 1 | 9 | 9 | 6 | | 855 | 19 |
| 1 | 7 | 10 | 6 | | 864 | 53 |
| 1 | 10 | 10 | 6 | | 862 | 56 |
| 1 | 10 | 11 | 6 | | 780 | 138 |
| 1 | 10 | 11 | 6 | | 791 | 127 |
| 1 | | | | | 983 | -983 |
| 75 | 132 | 158 | 93 | - | 15,346 | 695 |

**Retailing Enterprises, LLC**

**Plan Projections**

**Section 8: E-Commerce Sales 2024 to 2027**

All amounts in Usd in 000s

| 1- Ecommerce | 2024 | 2025 | 2026 | 2027 |
|---|---|---|---|---|
| Net Sales | 60,000 | 61,800 | 63,654 | 65,564 |
| Increase YOY | 5% | 3% | 3% | 3% |
| Daily Sales | 164 | 169 | 174 | 180 |
| Monthly Sales | 4,997 | 5,147 | 5,302 | 5,461 |
| | | | | |
| Weekly COGS % | 66.5% | 66.3% | 66.0% | 65.8% |
| Rebate | -5.0% | -5.0% | -5.0% | -5.0% |
| Yearly COGS % | 63.2% | 62.9% | 62.7% | 62.5% |
| COGS $ | 37,905 | 38,895 | 39,911 | 40,984 |
| | | | | |
| Ads % | 9.0% | 8.5% | 8.0% | 7.5% |
| Ads $ | 5,400 | 5,253 | 5,092 | 4,917 |
| Monthly | 450 | 438 | 424 | 410 |

| 2 - Amazon | | | | |
|---|---|---|---|---|
| Net Sales | 3,000 | 3,750 | 4,750 | 5,250 |
| COGS % | 70.0% | 70.0% | 70.0% | 70.0% |
| Rebate | -5.0% | -5.0% | -5.0% | -5.0% |
| COGS $ | 1,995 | 2,494 | 3,159 | 3,491 |

| 3 - Europe/Latin America | | | | |
|---|---|---|---|---|
| Monthly Sales | 50 | 55 | 61 | 67 |
| Mes | 12 | 12 | 12 | 12 |
| Net Sales | 600 | 660 | 726 | 799 |
| COGS % | 75.0% | 75.0% | 75.0% | 75.0% |
| Rebate | -5.0% | -5.0% | -5.0% | -5.0% |
| COGS $ | 428 | 470 | 517 | 569 |

| Net Sales | | | | |
|---|---|---|---|---|
| Ecommerce | 60,000 | 61,800 | 63,654 | 65,564 |
| Amazon | 3,000 | 3,750 | 4,750 | 5,250 |
| Europe/Latin America | 600 | 660 | 726 | 799 |
| Total | 63,600 | 66,210 | 69,130 | 71,612 |

| COGS $ | | | | |
|---|---|---|---|---|
| Ecommerce | 37,905 | 38,895 | 39,911 | 40,984 |
| Amazon | 1,995 | 2,494 | 3,159 | 3,491 |
| Europe/Latin America | 428 | 470 | 517 | 569 |
| Total | 40,328 | 41,859 | 43,587 | 45,044 |

| Shipping | | | | |
|---|---|---|---|---|
| Ecommerce | 6.3% | 5.9% | 5.7% | 5.6% |
| Amazon | 3.0% | 3.0% | 3.0% | 3.0% |
| Europe/Latin America | 0.0% | 0.0% | 0.0% | 0.0% |
| | | | | |
| Ecommerce | 3,780 | 3,646 | 3,628 | 3,672 |
| Amazon | 90 | 113 | 143 | 158 |
| Europe/Latin America | 0 | 0 | 0 | 0 |
| Total | 3,870 | 3,759 | 3,771 | 3,829 |

| Bank Charge | | | | |
|---|---|---|---|---|
| Ecommerce | 3.2% | 3.2% | 3.2% | 3.2% |
| Amazon | 0.0% | 0.0% | 0.0% | 0.0% |
| Europe/Latin America | 0.0% | 0.0% | 0.0% | 0.0% |
| | | | | |
| Ecommerce | 1,920 | 1,978 | 2,037 | 2,098 |
| Amazon | 0 | 0 | 0 | 0 |
| Europe/Latin America | 0 | 0 | 0 | 0 |
| Total | 1,920 | 1,978 | 2,037 | 2,098 |

| Other Shop Expenses | | | | |
|---|---|---|---|---|
| Ecommerce | | | | |
| Amazon | 16.0% | 16.0% | 16.0% | 16.0% |
| Europe/Latin America | | | | |
| | | | | |
| Ecommerce | 2,986 | 3,041 | 3,098 | 3,156 |
| Amazon | 319 | 399 | 505 | 559 |
| Europe/Latin America | 0 | 0 | 0 | 0 |
| Total | 3,305 | 3,440 | 3,603 | 3,715 |

1

# Retailing Enterprises, LLC
## Plan Projections
### Section 9: P&L Puerto Rico

| All amounts in Usd in 000s | 2024 Stores | % | Total | % | 2025 Stores | % | Total | % | 2026 Stores | % | Total | % | 2027 Stores | % | Total | % |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| NET SALES | 10,663 | 100.0% | 10,663 | 100.0% | 10,983 | 100.0% | 10,983 | 100.0% | 11,312 | 100.0% | 11,312 | 100.0% | 11,651 | 100.0% | 11,651 | 100.0% |
| COGS | -5,112 | -47.9% | -5,112 | -47.9% | -5,239 | -47.7% | -5,239 | -47.7% | -5,369 | -47.5% | -5,369 | -47.5% | -5,503 | -47.2% | -5,503 | -47.2% |
| GROSS MARGIN | 5,551 | 52.1% | 5,551 | 52.1% | 5,743 | 52.3% | 5,743 | 52.3% | 5,943 | 52.5% | 5,943 | 52.5% | 6,149 | 52.8% | 6,149 | 52.8% |
| Obsolescence | -11 | -0.1% | -11 | -0.1% | -11 | -0.1% | -11 | -0.1% | -11 | -0.1% | -11 | -0.1% | -12 | -0.1% | -12 | -0.1% |
| Shrinkage | -21 | -0.2% | -21 | -0.2% | -22 | -0.2% | -22 | -0.2% | -23 | -0.2% | -23 | -0.2% | -23 | -0.2% | -23 | -0.2% |
| Damages | -32 | -0.3% | -32 | -0.3% | -33 | -0.3% | -33 | -0.3% | -34 | -0.3% | -34 | -0.3% | -35 | -0.3% | -35 | -0.3% |
| Net Shipping & Handling | -320 | -3.0% | -320 | -3.0% | -329 | -3.0% | -329 | -3.0% | -339 | -3.0% | -339 | -3.0% | -350 | -3.0% | -350 | -3.0% |
| Other | 0 | 0.0% | 0 | 0.0% | 0 | 0.0% | 0 | 0.0% | 0 | 0.0% | 0 | 0.0% | 0 | 0.0% | 0 | 0.0% |
| TOTAL OTHER COST | -384 | -3.6% | -384 | -3.6% | -395 | -3.6% | -395 | -3.6% | -407 | -3.6% | -407 | -3.6% | -419 | -3.6% | -419 | -3.6% |
| GROSS PROFIT | 5,167 | 48.5% | 5,167 | 48.5% | 5,348 | 48.7% | 5,348 | 48.7% | 5,536 | 48.9% | 5,536 | 48.9% | 5,729 | 49.2% | 5,729 | 49.2% |
| Landlord charges | -1,325 | -12.4% | -1,325 | -12.4% | -1,358 | -12.4% | -1,358 | -12.4% | -1,374 | -12.1% | -1,374 | -12.1% | -1,445 | -12.4% | -1,445 | -12.4% |
| Shop Payroll | -1,489 | -14.0% | -1,489 | -14.0% | -1,534 | -14.0% | -1,534 | -14.0% | -1,580 | -14.0% | -1,580 | -14.0% | -1,627 | -14.0% | -1,627 | -14.0% |
| Display | -32 | -0.3% | -32 | -0.3% | -33 | -0.3% | -33 | -0.3% | -33 | -0.3% | -33 | -0.3% | -35 | -0.3% | -35 | -0.3% |
| Supplies | -43 | -0.4% | -43 | -0.4% | -34 | -0.3% | -34 | -0.3% | -34 | -0.3% | -34 | -0.3% | -35 | -0.3% | -35 | -0.3% |
| Repairs & Maintenance | -53 | -0.5% | -53 | -0.5% | -55 | -0.5% | -55 | -0.5% | -57 | -0.5% | -57 | -0.5% | -58 | -0.5% | -58 | -0.5% |
| Contract Services | -26 | -0.2% | -26 | -0.2% | -27 | -0.2% | -27 | -0.2% | -28 | -0.2% | -28 | -0.2% | -29 | -0.2% | -29 | -0.2% |
| Bank Charges | -213 | -2.0% | -213 | -2.0% | -220 | -2.0% | -220 | -2.0% | -226 | -2.0% | -226 | -2.0% | -233 | -2.0% | -233 | -2.0% |
| Utilities | -31 | -0.3% | -31 | -0.3% | -32 | -0.3% | -32 | -0.3% | -33 | -0.3% | -33 | -0.3% | -34 | -0.3% | -34 | -0.3% |
| Communications | -32 | -0.3% | -32 | -0.3% | -33 | -0.3% | -33 | -0.3% | -34 | -0.3% | -34 | -0.3% | -35 | -0.3% | -35 | -0.3% |
| Insurance | -142 | -1.3% | -142 | -1.3% | -147 | -1.3% | -147 | -1.3% | -151 | -1.3% | -151 | -1.3% | -156 | -1.3% | -156 | -1.3% |
| Other Shop Expenses | -239 | -2.2% | -239 | -2.2% | -239 | -2.2% | -239 | -2.2% | -239 | -2.1% | -239 | -2.1% | -246 | -2.1% | -246 | -2.1% |
| Total Selling Expenses | -3,627 | -34.0% | -3,627 | -34.0% | -3,733 | -34.0% | -3,733 | -34.0% | -3,813 | -33.7% | -3,813 | -33.7% | -3,957 | -34.0% | -3,957 | -34.0% |
| SHOP PROFIT | 1,540 | 14.4% | 1,540 | 14.4% | 1,615 | 14.7% | 1,615 | 14.7% | 1,722 | 15.2% | 1,722 | 15.2% | 1,773 | 15.2% | 1,773 | 15.2% |
| Corporate Personnel | -211 | -2.0% | -211 | -2.0% | -217 | -2.0% | -217 | -2.0% | -223 | -2.0% | -223 | -2.0% | -230 | -2.0% | -230 | -2.0% |
| Corporate Professional Services | -93 | -0.9% | -93 | -0.9% | -96 | -0.9% | -96 | -0.9% | -99 | -0.9% | -99 | -0.9% | -102 | -0.9% | -102 | -0.9% |
| Corporate General Services | -60 | -0.6% | -60 | -0.6% | -62 | -0.6% | -62 | -0.6% | -64 | -0.6% | -64 | -0.6% | -66 | -0.6% | -66 | -0.6% |
| Management Fees | -150 | -1.4% | -150 | -1.4% | -150 | -1.4% | -150 | -1.4% | -150 | -1.3% | -150 | -1.3% | -150 | -1.3% | -150 | -1.3% |
| TOTAL CORPORATE | -514 | -4.8% | -514 | -4.8% | -525 | -4.8% | -525 | -4.8% | -536 | -4.7% | -536 | -4.7% | -547 | -4.7% | -547 | -4.7% |
| OPERATING INCOME | 1,026 | 9.6% | 1,026 | 9.6% | 1,090 | 9.9% | 1,090 | 9.9% | 1,187 | 10.5% | 1,187 | 10.5% | 1,225 | 10.5% | 1,225 | 10.5% |
| Financing (Income)/Expense | -6 | -0.1% | -6 | -0.1% | 5 | 0.0% | 5 | 0.0% | 5 | 0.0% | 5 | 0.0% | 5 | 0.0% | 5 | 0.0% |
| Payment to Main Street | -420 | -3.9% | -420 | -3.9% | -420 | -3.8% | -420 | -3.8% | -660 | -5.8% | -660 | -5.8% | 0 | 0.0% | 0 | 0.0% |
| PROFIT BEF INC TAXES | 601 | 5.6% | 601 | 5.6% | 665 | 6.1% | 665 | 6.1% | 521 | 4.6% | 521 | 4.6% | 1,220 | 10.5% | 1,220 | 10.5% |
| Income Taxes | | | | | | | | | | | | | | | | |
| NET INCOME / LOSS | 601 | 5.6% | 601 | 5.6% | 665 | 6.1% | 665 | 6.1% | 521 | 4.6% | 521 | 4.6% | 1,220 | 10.5% | 1,220 | 10.5% |
| Other Income | | | | | | | | | | | | | | | | |
| Capex | | | 725 | | | | | | | | | | | | -300 | |
| CASH FROM PR to LLC | | | 1,326 | | | | 665 | | | | 521 | | | | 920 | |

**Retailing Enterprises, LLC**

**Plan Projections**

**Section 10: Puerto Rico Contributions to Main Street Loan**

**PR Payment to Main Street**

|  | _Value (/'000)_ |  |
|---|---|---|
| jan-24 | 35.0 | |
| feb-24 | 35.0 | |
| mar-24 | 35.0 | |
| apr-24 | 35.0 | |
| may-24 | 35.0 | |
| jun-24 | 35.0 | |
| jul-24 | 35.0 | |
| aug-24 | 35.0 | |
| sep-24 | 35.0 | |
| oct-24 | 35.0 | |
| nov-24 | 35.0 | |
| dec-24 | 35.0 | **420.0** |
| jan-25 | 35.0 | |
| feb-25 | 35.0 | |
| mar-25 | 35.0 | |
| apr-25 | 35.0 | |
| may-25 | 35.0 | |
| jun-25 | 35.0 | |
| jul-25 | 35.0 | |
| aug-25 | 35.0 | |
| sep-25 | 35.0 | |
| oct-25 | 35.0 | |
| nov-25 | 35.0 | |
| dec-25 | 35.0 | **420.0** |
| jan-26 | 55.0 | |
| feb-26 | 55.0 | |
| mar-26 | 55.0 | |
| apr-26 | 55.0 | |
| may-26 | 55.0 | |
| jun-26 | 55.0 | |
| jul-26 | 55.0 | |
| aug-26 | 55.0 | |
| sep-26 | 55.0 | |
| oct-26 | 55.0 | |
| nov-26 | 55.0 | |
| dec-26 | 55.0 | **660.0** |

| **Total** | **1,500.0** |
|---|---|

**Retailing Enterprises, LLC**

**Plan Projections**

**Section 11: Contract Assumptions**

All amounts in Usd in 000s

| Lease/Contract Assumptions | 2024 |
|---|---|
| Cross County | -275 |
| Sarasota | -15 |
| Palm Beach | -9 |
| El Paso | -20 |
| Brookfield | -320 |
| Queens | -26 |
| Prince George | -12 |
| Simon | -1,301 |
| Affirm | -79 |
| Extend | -120 |
| Sales Force | -122 |
| **Total** | **-2,299** |

**Retailing Enterprises, LLC**
**Plan Projections**
**Section 12: Mauricio Krantzberg Contribution to General Unsecured Creditors**

*Value ($'000)*

| | 2024 | | | | 2025 | | | | 2026 | | | | 2027 | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | 1st Qrt | 2nd Qrt | 3rd Qrt | 4th Qrt | 1st Qrt | 2nd Qrt | 3rd Qrt | 4th Qrt | 1st Qrt | 2nd Qrt | 3rd Qrt | 4th Qrt | 1st Qrt | 2nd Qrt | 3rd Qrt | 4th Qrt |
| MK Contribution to GUC | 300.0 | 300.0 | 300.0 | 300.0 | 87.5 | 87.5 | 87.5 | 87.5 | 125.0 | 125.0 | 125.0 | 125.0 | 112.5 | 112.5 | 112.5 | 112.5 |

# Retailing Enterprises, LLC
## Plan Projections
## Section 13: Corporate Costs

| All amounts in Usd in 000s | Retailing LLC | 2024 Yearly | 2025 Yearly | 2026 Yearly | 2027 Yearly |
|---|---|---|---|---|---|
| LOGISTICS | | 60 | 62 | 64 | 66 |
| Corporate Rent | | 943 | 943 | 943 | 943 |
| Corporate Maintenance | | 93 | 95 | 98 | 100 |
| Corporate Contract Services | | 12 | 12 | 13 | 13 |
| Corporate Amortizacion | | 258 | 185 | 139 | 115 |
| Corporate Communications | | 420 | 433 | 446 | 459 |
| Corporate Personnel | | 1,589 | 1,680 | 1,776 | 1,882 |
| Corporate Professional Services | | 2,247 | 2,317 | 2,390 | 2,461 |
| Corporate RH/Training/Recruitment | | 96 | 99 | 102 | 105 |
| Corporate T&E | | 216 | 300 | 360 | 420 |
| Corporate General Services | | 360 | 418 | 476 | 548 |
| Royalties | | 1,800 | 1,800 | 1,800 | 1,800 |
| Total Corporate | | 8,034 | 8,283 | 8,541 | 8,846 |
| Marketing | | 36 | 37 | 38 | 39 |
| GRAN TOTAL | | 8,130 | 8,381 | 8,643 | 8,951 |

1

**Retailing Enterprises, LLC**

**Plan Projections**

**Section 14: Financing Expenses**

All amounts in Usd in 000s

| *Financing (Income)/Expense* | 2024 | 2025 | 2026 | 2027 |
|---|---|---|---|---|
| City 0900 | 72 | 63 | 34 | - |
| Total | 72 | 63 | 34 | - |

**Retailing Enterprises, LLC**

**Plan Projections**

**Section 15: Summary Loan Payments to CNB**

| Loan # | 029000 | |
|---|---|---|
| jan-24 | 5,980 | |
| feb-24 | 5,980 | |
| mar-24 | 5,980 | |
| apr-24 | 5,980 | |
| may-24 | 5,980 | |
| jun-24 | 5,980 | |
| jul-24 | 5,980 | |
| aug-24 | 5,980 | |
| sep-24 | 5,980 | |
| oct-24 | 5,980 | |
| nov-24 | 5,980 | |
| dec-24 | 5,980 | **71,763** |
| jan-25 | 42,128 | |
| feb-25 | 42,000 | |
| mar-25 | 41,872 | |
| apr-25 | 41,744 | |
| may-25 | 41,616 | |
| jun-25 | 41,488 | |
| jul-25 | 41,360 | |
| aug-25 | 41,232 | |
| sep-25 | 41,104 | |
| oct-25 | 40,976 | |
| nov-25 | 40,848 | |
| dec-25 | 40,720 | **497,091** |
| jan-26 | 88,263 | |
| feb-26 | 87,967 | |
| mar-26 | 87,670 | |
| apr-26 | 87,373 | |
| may-26 | 87,076 | |
| jun-26 | 86,779 | |
| jul-26 | 86,482 | |
| aug-26 | 86,185 | |
| sep-26 | 85,889 | |
| oct-26 | 85,592 | |
| nov-26 | 85,295 | |
| dec-26 | 333,925 | **1,288,496** |
| Total | **1,857,351** | |

**Retailing Enterprises, LLC**

**Plan Projections**

**Section 16: Detail Loan Payments to CNB**

| Balance as of Dic 2023 | Interest | Principal | Interest 4.25% | |
|---|---|---|---|---|
| dec-23 | 1,688,540 | | | - |
| jan-24 | 1,688,540 | | 5,980 | |
| feb-24 | 1,688,540 | | 5,980 | |
| mar-24 | 1,688,540 | | 5,980 | |
| apr-24 | 1,688,540 | | 5,980 | |
| may-24 | 1,688,540 | | 5,980 | |
| jun-24 | 1,688,540 | | 5,980 | |
| jul-24 | 1,688,540 | | 5,980 | |
| aug-24 | 1,688,540 | | 5,980 | |
| sep-24 | 1,688,540 | | 5,980 | |
| oct-24 | 1,688,540 | | 5,980 | |
| nov-24 | 1,688,540 | | 5,980 | |
| dec-24 | 1,688,540 | | 5,980 | 71,763 |
| jan-25 | 1,652,392 | 36,148 | 5,980 | |
| feb-25 | 1,616,243 | 36,148 | 5,852 | |
| mar-25 | 1,580,095 | 36,148 | 5,724 | |
| apr-25 | 1,543,947 | 36,148 | 5,596 | |
| may-25 | 1,507,799 | 36,148 | 5,468 | |
| jun-25 | 1,471,651 | 36,148 | 5,340 | |
| jul-25 | 1,435,503 | 36,148 | 5,212 | |
| aug-25 | 1,399,354 | 36,148 | 5,084 | |
| sep-25 | 1,363,206 | 36,148 | 4,956 | |
| oct-25 | 1,327,058 | 36,148 | 4,828 | |
| nov-25 | 1,290,910 | 36,148 | 4,700 | |
| dec-25 | 1,254,762 | 36,148 | 4,572 | 63,313 |
| jan-26 | 1,170,942 | 83,820 | 4,444 | |
| feb-26 | 1,087,123 | 83,820 | 4,147 | |
| mar-26 | 1,003,303 | 83,820 | 3,850 | |
| apr-26 | 919,484 | 83,820 | 3,553 | |
| may-26 | 835,664 | 83,820 | 3,257 | |
| jun-26 | 751,844 | 83,820 | 2,960 | |
| jul-26 | 668,025 | 83,820 | 2,663 | |
| aug-26 | 584,205 | 83,820 | 2,366 | |
| sep-26 | 500,386 | 83,820 | 2,069 | |
| oct-26 | 416,566 | 83,820 | 1,772 | |
| nov-26 | 332,747 | 83,820 | 1,475 | |
| dec-26 | - | 332,747 | 1,178 | 33,735 |

DocuSign Envelope ID: 22EA3E6E-3DDC-45BE-AE5E-856A904875E4

**Retailing Enterprises, LLC**

**Plan Projections**

**Section 17: Capital Expenditures 2024 to 2027**

**All amounts in Usd in 000s**

| Projects | 2024 | 2025 | 2026 | 2027 |
|---|---|---|---|---|
| IT | 75 | 200 | 250 | 650 |
| Store Remodeling | 0 | 100 | 200 | 500 |
| **Total** | **75** | **300** | **450** | **1,150** |

**Retailing Enterprises, LLC**

**Plan Projections**

**Section 18: Tenant Allowance**

**All amounts in Usd in 000s**

| Location | Usd |
|----------|-----|
| Daytona | 81 |
| Westgate | 88 |
| El Paso | 60 |
| Palm Beach | 85 |
| Westland | 177 |
| **Total** | **491** |

**Retailing Enterprises, LLC**

**Plan Projections**

**Section 19: Schedule of Unsecured Priority Claims**

All amounts in Usd in 000s

| PRIORITY UNSECURED CLAIMS | 30th Nov |
|---|---|
| Bexar County Tax Assessor Collector | 9 |
| Broward County Tax Collector | 8 |
| City of Hyattsville | 7 |
| Clark County Nevada Tax Collector | 1 |
| Comptroller of Maryland. | 23 |
| Dekalb County Tax Commissioner | 11 |
| Florida DOR | 321 |
| Fulton County Tax Collector | 7 |
| Georgia Department of Revenue | 49 |
| Hays County Tax Office | 4 |
| Hillsborough County Tax Collector | 2 |
| Hillsborough County Tax Collector | 4 |
| Miami Dade County Tax Collector | 1 |
| Miami Dade County Tax Collector | 5 |
| NYC Department of Finance | 165 |
| Orange County Tax Collector | 4 |
| Orange County Tax Collector | 4 |
| Orange County Tax Collector | 1 |
| Prince George's County Maryland | 17 |
| San Marcos CISD | 4 |
| Sarasota County Tax Collector | 1 |
| **Total Unsecured Claims** | **647** |

DocuSign Envelope ID: 22EA3E5E-3DDC-45BE-AE5E-856A904875E4

**Retailing Enterprises, LLC**

**Plan Projections**

**Section 20: Schedule of General Unsecured Creditors**

| POC # | Claimant Name and Address | Original Claim Amount | Expected Claim Amount | Payout |
|---|---|---|---|---|
| 1 | Staples, Inc., PO Box 105748, Atlanta, Georgia 30348 | $7,131.21 | $7,131.21 | $820.09 |
| 5 | Uline, 12575 Uline Drive, Pleasant Prairie, WI 53158 | $1,558.43 | $0.00 | $0.00 |
| 6 | Arizona Department of Revenue, Office of the Arizona Attorney General - BCE, c/o Tax, Bankruptcy and Collection Set, 2005 N. Central Avenue, Suite 100, Phoenix, Arizona 85004 | $427.11 | $427.11 | $49.12 |
| 7 | Arundel Mills Limited Partnership, c/o Simon Property Group, Inc., 225 W. Washington Street, Indianapolis, IN 46204. Payments to Arundel Mills, PO Box 406130, Atlanta, Georgia 30384 | $244,239.54 | $244,239.54 | $28,087.55 |
| 8 | Simon Property Group (TX) LP aka Barton Creek Square, c/o Simon Property Group, Inc., 225 W. Washington Street, Indianapolis, IN 46204. Payments to Simon Property Group (TX) LP, 867620 Reliable Parkway, Chicago, IL 60686 | $241,542.23 | $241,542.23 | $27,777.36 |
| 9 | Fashion Centre Mall, LLC, c/o Simon Property Group, Inc., 225 W. Washington Street, Indianapolis, IN 46204.        Payments to Fashion Centre Mall, LLC, PO Box 402792, Atlanta, Georgia 30384 | $467,726.47 | $431,725.47 | $49,648.43 |
| 10 | Florida Mall Associates LTD, c/o Simon Property Group, Inc., 225 W. Washington Street, Indianapolis, IN 46204.        Payments to Florida Mall Associates LTD, PO Box 406360, Atlanta, Georgia 30384 | $1,355,486.54 | $1,355,486.54 | $155,880.95 |
| 11 | HG Galleria, LLC, c/o Simon Property Group, Inc., 225 W. Washington Street, Indianapolis, IN 46204. Payments to HG Galleria, LLC, 2088 Paysphere Circle, Chicago, IL 60674 | $980,650.92 | $810,676.95 | $93,227.85 |
| 12 | Jersey Shore Premium Outlets, LLC, c/o Simon Property Group, Inc., 225 W. Washington Street, Indianapolis, IN 46204. Payments to Jersey Shore Premium Outlets, LLC, PO Box 776307, Chicago, IL 60677 | $409,953.15 | $316,018.47 | $36,342.12 |
| 13 | Las Vegas North Outlets, LLC, c/o Simon Property Group, Inc., 225 W. Washington Street, Indianapolis, IN 46204.        Payments to Las Vegas North Outlets, LLC, PO Box 827695, Philadelphia, PA 19182 | $938,023.86 | $938,023.86 | $107,872.74 |
| 14 | Las Vegas South Outlets, LLC, c/o Simon Property Group, Inc., 225 W. Washington Street, Indianapolis, IN 46204.        Payments to Las Vegas South Outlets LLC, PO Box 827695, Philadelphia, PA 19182 | $422,866.10 | $422,866.10 | $48,629.60 |
| 15 | The Retail Property Trust (aka Lenox Square), c/o Simon Property Group, Inc., 225 W. Washington Street, Indianapolis, IN 46204. Payments to Lenox Square, PO Box 772809, Chicago, IL 60677 | $525,056.82 | $114,055.13 | $13,116.34 |
| 16 | Mall of Georgia, c/o Simon Property Group, Inc., 225 W. Washington Street, Indianapolis, IN 46204. Payments to Mall of Georgia, LLC, PO Box 772805, Chicago, IL 60677 | $194,695.66 | $173,243.05 | $19,922.95 |
| 17 | Mall at Miami International LLC, c/o Simon Property Group, Inc., 225 W. Washington Street, Indianapolis, IN 46204. Payments to Mall at Miami International, LLC, PO Box 643171, Pittsburgh, PA 15264 | $493,549.56 | $493,549.56 | $56,758.20 |
| 18 | Newport Centre LLC, c/o Simon Property Group, Inc., 225 W. Washington Street, Indianapolis, IN 46204. Payments to Newport Centre, LLC, 867545 Reliable Parkway, Chicago, IL 60686 | $156,834.43 | $140,534.43 | $16,161.46 |
| 19 | Simon Property Group (Texas) LP (aka North East Mall), c/o Simon Property Group, Inc., 225 W. Washington Street, Indianapolis, IN 46204. Payments to Simon Property Group (Texas) LP, 867729 Reliable Parkway, Chicago, IL 60686 | $107,523.07 | $107,523.07 | $12,365.15 |
| 20 | Orlando Outlet Owner LLC, c/o Simon Property Group, Inc., 225 W. Washington Street, Indianapolis, IN 46204.  Payments to Orlando Outlet Owner LLC, PO Box 772811, Chicago, IL 60677 | $702,100.99 | $0.00 | $0.00 |
| 21 | Orlando Vineland PO, LP (aka Orlando Vineland Prem Outlets), c/o Simon Property Group, Inc., 225 W. Washington Street, Indianapolis, IN 46204. Payments to Orlando Vineland PO, LP, PO Box 827733, Philadelphia, PA 19182 | $908,871.76 | $1,318,871.76 | $151,670.25 |
| 22 | The Retail Property Trust (aka Roosevelt Square), c/o Simon Property Group, Inc., 225 W. Washington Street, Indianapolis, IN 46204. Payments to Roosevelt Field, PO Box 772854, Chicago, IL 60677 | $267,749.17 | $267,749.17 | $30,791.15 |
| 23 | San Marcos Premium Outlets LP, c/o Simon Property Group, Inc., 225 W. Washington Street, Indianapolis, IN 46204. Payments to San Marcos Premium Outlets, LP, PO Box 776300 | $413,489.27 | $413,489.27 | $47,551.27 |
| 24 | Sunrise Mills (MLP) Limited Partnership (aka Sawgrass Mills), c/o Simon Property Group, Inc., 225 W. Washington Street, Indianapolis, IN 46204. Payments to Sunrise Mills (MLP), LP, PO Box 277861, Atlanta, Georgia 30384 | $599,365.67 | $0.00 | $0.00 |

| | | | | |
|---|---|---|---|---|
| 25 | JG Elizabeth II, LLC (aka The Mills at Jersey Gardens), c/o Simon Property Group, Inc., 225 W. Washington Street, Indianapolis, IN 46204. Payments to JG Elizabeth II, LLC, PO Box 775273, Chicago, IL 60677 | $348,080.34 | $348,080.34 | $40,029.24 |
| 26 | The Town Center Boca Raton Trust, c/o Simon Property Group, Inc., 225 W. Washington Street, Indianapolis, IN 46204. Payments to The Town Center at Boca Raton Trust, PO Box 772846, Chicago, IL 60677 | $398,000.78 | $398,000.78 | $45,770.09 |
| 27 | Premium Outlet Partners, LP (aka Woodbury Common Prem Outlets), c/o Simon Property Group, Inc., 225 W. Washington Street, Indianapolis, IN 46204. Payments to Woodbury Common Premium Outlet, PO Box 822884, Philadelphia, PA 19182 | $414,145.15 | $414,145.15 | $47,626.69 |
| 30 | Tampa Electric Company, PO Box 111, Tampa, Florida 33601 | $843.29 | $843.29 | $96.98 |
| 31 | Internal Revenue Service, 801 Broadway, M/S MDP 146, Nashville, TN 37203 | $534.10 | $534.10 | $61.42 |
| 34 | Hilco Real Estate, LLC, 5 Revere Drive, Suite 410, Northbrook, IL 60062 | $66,258.11 | $66,258.11 | $7,619.68 |
| 35 | Ally Bank | $3,377.30 | $3,377.30 | $388.39 |
| 40 | Plaza Carolina Mall, LP, PO Box 71478, San Juan, PR 00936 - notices to c/o Simon Property Group, Inc., 225 West Washington Street, Indianapolis, IN 46204 | $291,480.67 | $0.00 | $0.00 |
| 41 | ZWI Group, LLC, 1532 South Washington Ave., Piscataway, NJ 08854 | $1,101,539.67 | $1,101,539.67 | $126,677.06 |
| 43 | Schutts & Bowen LLP c/o Harris J. Koroglu, Esq., 200 South Biscayne Blvd., Suite 4100, Miami, Florida 33131 | $12,421.00 | $12,421.00 | $1,428.42 |
| 44 | State of Florida - Department of Revenue, Bankruptcy, P.O. Box 8045, Tallahassee, FL 32314-8045 | $28,512.71 | $28,512.71 | $3,278.96 |
| 45 | Tampa Westshore Associates Limited Partnership, 200 East Long Lake Road, PO Box 200, Bloomfield Hills, MI 48303 | $64,710.57 | $0.00 | $0.00 |
| 46 | TB Mall at UTC, LLC, 200 E. Long Lake Road, Bloomfield Hills, MI 48304 | $22,634.50 | $0.00 | $0.00 |
| 47 | PR Prince George's Plaza LLC, c/o PREIT Services, LLC, 200 S. Broad St., 3rd Fl, Attn: Legal Director, Philadelphia, PA 19102. On POC No. 47, the claimant indicates payments to be sent to Christiana Uy, 2005 Market Street, Suite 1000, Philadelphia, PA 19103 | $11,916.00 | $0.00 | $0.00 |
| 49 | Millman Search Group, Inc., Mark Millman, RA, 9840 Pecorino Isle, Boynton Beach, FL 33473 | $4,950.00 | $4,950.00 | $569.25 |
| 50 | Akerman LLP, 201 E. Las Olas Blvd., Suite 1800, Fort Lauderdale, FL 33301 | $202,873.53 | $202,873.53 | $23,330.46 |
| 53 | Ask Nicely LLC, PO Box 96158, Portland, OR 97296 | $7,500.00 | $7,500.00 | $862.50 |
| 54 | Cellco Partnership d/b/a Verizon Wireless, William M Vermette, 22001 Loudoun County Pkwy, Ashburn, VA 20147 | $1,137.93 | $0.00 | $0.00 |
| 55 | El Paso Outlet Center CMBS, LLC, c/o Barclay Damon LLP Attn: Kevin M. Newman, Barclay Damon Tower, 125 East Jefferson Street, Syracuse, NY 13202 | $10,969.96 | $0.00 | $0.00 |
| 56 | El Paso Outlet Center CMBS, LLC, c/o Barclay Damon LLP Attn: Kevin M. Newman, Barclay Damon Tower, 125 East Jefferson Street, Syracuse, NY 13202 | $0.00 | $0.00 | $0.00 |
| 57 | El Paso Outlet Center CMBS, LLC, c/o Barclay Damon LLP Attn: Kevin M. Newman, Barclay Damon Tower, 125 East Jefferson Street, Syracuse, NY 13202 | $0.00 | $0.00 | $0.00 |
| 58 | Town East Mall, LLC, c/o Brookfield Properties Retail Inc., 350 N. Orleans St., Suite 300, Chicago, IL 60654-1607 | $358,926.12 | $0.00 | $0.00 |
| 59 | GGP Staten Island Mall, LLC, c/o Brookfield Properties Retail Inc., 350 N. Orleans St., Suite 300, Chicago, IL 60654-1607 | $682,856.08 | $0.00 | $0.00 |
| 60 | Pembroke Lakes Mall, LLC, c/o Brookfield Properties Retail Inc., 350 N. Orleans St., Suite 300, Chicago, IL 60654-1607 | $515,819.28 | $0.00 | $0.00 |
| 61 | Parks at Arlington, LLC, c/o Brookfield Properties Retail Inc., 350 N. Orleans St., Suite 300, Chicago, IL 60654-1607 | $311,008.84 | $0.00 | $0.00 |
| 62 | Stonebriar Mall, LLC, c/o Brookfield Properties Retail Inc., 350 N. Orleans St., Suite 300, Chicago, IL 60654-1607 | $41,469.84 | $0.00 | $0.00 |
| 63 | Willowbrook Mall (TX), LLC, c/o Brookfield Properties Retail Inc., 350 N. Orleans St., Suite 300, Chicago, IL 60654-1607 | $457,488.35 | $0.00 | $0.00 |
| 64 | Cumberland Mall, LLC, c/o Brookfield Properties Retail Inc., 350 N. Orleans St., Suite 300, Chicago, IL 60654-1607 | $286,968.71 | $0.00 | $0.00 |
| 65 | Christiana Mall, LLC, c/o Brookfield Properties Retail Inc., 350 N. Orleans St., Suite 300, Chicago, IL 60654-1607 | $40,508.22 | $0.00 | $0.00 |
| 66 | Perimeter Mall, LLC, c/o Brookfield Properties Retail Inc., 350 N. Orleans St., Suite 300, Chicago, IL 60654-1607 | $33,189.80 | $0.00 | $0.00 |

| | | | | |
|---|---|---|---|---|
| 67 | North Star Mall, LLC, c/o Brookfield Properties Retail Inc., 350 N. Orleans St., Suite 300, Chicago, IL 60654-1607 | $12,215.77 | $0.00 | $0.00 |
| 68 | Phillips and Associates c/o Denishia Thomson, 585 Stewart Avenue, Suite 410, Garden City, NJ | $102,500.00 | $88,008.39 | $10,120.96 |
| 69 | Magna Marketing c/o Thompson & Skrabanek, 42 W. 38th Street, Room 1002, New York, NY 10018 | $122,115.00 | $42,000.00 | $4,830.00 |
| 70 | 405 Southwest Real Estate Company, Lorium Law, c/o Chad P. Pugatch, Esq., 101 NE Third Avenue, Suite 1800, Fort Lauderdale, FL 33301 | $237,899.19 | $0.00 | $0.00 |
| 71 | Carlton Fields, P.A. - c/o Henry Wulf, 525 Okeechobee Boulevard, Suite 1200, West Palm Beach, FL 33401 | $20,221.28 | $20,221.28 | $2,325.45 |
| 74 | Aventura Mall Venture, c/o Turnberry Associates, 19501 Biscayne Blvd., Suite 400, Aventura, FL 33180 | $422,732.70 | $686,732.70 | $78,974.26 |
| 75 | Brooks Shopping Centers LLC, c/o Niclas Ferland/Ilan Markus, Barclay Damon LLP, 545 Long Wharf Drive, 9th Floor, New Haven, CT 06511 | $586,096.00 | $0.00 | $0.00 |
| 78 | City National Bank of Florida, 100 S.E. 2nd Street, 13th Floor, Miami, FL 33131 | $9,877,601.41 | $9,877,601.41 | $1,135,924.16 |
| 79 | Custom Ink, 2910 District Ave., Suite 300, Fairfax, VA 22031 | $8,293.87 | $8,293.87 | $953.80 |
| 80 | Queens Center SPE LLC, Dustin P. Branch, Esq./Ballard Spahr LLP, 2029 Century Park East, Suite 1400, Los Angeles, CA 90067-2915 | $25,621.81 | $0.00 | $0.00 |
| 81 | Invicta Watch Company of America, Inc., Bradley Shraiberg, Esq., Shraiberg Page, PA, 2385 NW Executive Center Dr., #300, Boca Raton, FL 33431 | $31,132,626.33 | $0.00 | $0.00 |
| 82 | Plaza las Americas, Inc., c/o Joaquin J. Alemany, Esq., Holland & Knight LLP, 701 Brickell Avenue, Ste 3300, Miami, FL 33131 | $21,674.00 | $0.00 | $0.00 |
| 83 | Plaza del Caribe, S.E., c/o Joaquin J. Alemany, Esq., Holland & Knight LLP, 701 Brickell Avenue, Suite 3300, Miami, FL 33131 | $34,587.92 | $0.00 | $0.00 |
| 85 | Outlets at Westgate, LLC, c/o Tanger Management, LLC, Attn: Jennifer P. Himes, 3200 Northline Avenue, Suite 360, Greensboro, NC 27408 | $7,137.69 | $0.00 | $0.00 |
| 86 | Tanger Daytona, LLC, Tanger Management, LLC, Attn: Jennifer P. Himes, 3200 Northline Avenue, Suite 360, Greensboro, NC 27408 | $5,480.49 | $0.00 | $0.00 |
| 87 | Palm Beach Outlets I, LLC, Tanger Management, LLC, Attn: Jennifer P. Himes, 3200 Northline Avenue, Suite 360, Greensboro, NC 27408 | $8,874.00 | $0.00 | $0.00 |
| 88 | AddShoppers, Inc., 15806 Brookway Dr., Suite 200, Huntersville, NC 28078 | $150,858.70 | $150,858.70 | $17,348.75 |
| 89 | Granite | | $8,889.34 | $1,022.27 |
| 33, 48 | Florida Power and Light, 4200 W. Flagler Street, Bankruptcy RRD/LFO, Coral Gables, FL 33134 | $0.00 | $0.00 | $0.00 |
| 72, 73 | Mauricio Krantzberg, Lorium Law, c/o Chad P. Pugatch, Esq., 101 NE Third Avenue, Suite 1800, Fort Lauderdale, FL 33301 | $786,661.67 | $0.00 | $0.00 |
| | Georgia Dept of Revenue | | $12,385.90 | $1,424.38 |
| | 1535 Broadway LLC c/o Vornado Office Management LLC, 888 Seventh Avenue, Attn: Exec Vice Pres., New York, NY 10019 | $1,602,621.02 | $2,633,513.40 | $302,854.04 |
| | Accelerize 360 Inc., 750 N. Saint Paul Street, Suite 1525, Dallas, Texas 75201 | $20,175.00 | $20,175.00 | $2,320.13 |
| | Anderson Kill P.C., 1251 Avenue of the Americas, New York, NY 10020 | $5,105.00 | $5,105.00 | $587.08 |
| | Bank of America, PO Box 660441, Dallas, Texas 75266 | $101,212.04 | $101,212.04 | $11,639.38 |
| | Bank of America, PO Box 660441, Dallas, Texas 75266 | $83,473.97 | $83,473.97 | $9,599.51 |
| | Bank of America, PO Box 660441, Dallas, Texas 75266 | $47,732.51 | $47,732.51 | $5,489.24 |
| | Barton LLP, 711 Third Avenue, 14th Floor, New York, NY 10017 | $27,360.49 | $27,360.49 | $3,146.46 |
| | BPR REIT Service, LLC, 350 N. Orleans St., Suite 300, Attn: Gretchen Kaplan, Sen Assoc. Gen Counsel, Chicago, IL 60654 | $328,564.65 | $0.00 | $0.00 |
| | Brandon (Tampa) LP c/o CentreCorp Management Services LLLP, 459 Brandon Town Center Dr., Brandon, FL 33511 | $0.00 | $0.00 | $0.00 |
| | Center for Leadership Studies, Inc., 280 Towerview Court, Cary, NC 27513 | $5,202.56 | $5,202.56 | $598.29 |
| | Criteo Corp., 387 Park Ave South 12th Floor New York, NY 10016 | $266,765.25 | $266,765.25 | $30,678.00 |
| | Denishia J. Thomson, c/o Phillips & Associates, PLLC, 585 Stewart Ave., Suite 410, Garden City, NY 11530 | $0.00 | $0.00 | $0.00 |
| | FedEx Corporation, 942 South Shady Grove Road, Memphis, TN 38120 | $13,691.26 | $13,691.26 | $1,574.49 |
| | I.V.G.U., by Mother Yariney Carolina V. Urdaneta, c/o Thomas Cicolello, Esq., 1901 Emmons Avenue, Suite 201, Brooklyn, NY 11235 | $0.00 | $0.00 | $0.00 |
| | Lowen Watch Group, 9298 S. 500 W., Sandy, UT 84070 | $21,689.74 | $21,689.74 | $2,494.32 |
| | Marx Realty and Improvement Company, Attn: Jag Shah, 708 Third Ave., 15th Floor, New York, NY 10017 | $0.00 | $0.00 | $0.00 |
| | Simon Property Group, 225 West Washington Street, Indianapolis, IN 46204 | $0.00 | $0.00 | $0.00 |
| | Squire Patton Boggs, 555 South Flower Street, 31st Floor, Los Angeles, CA 90071 | $4,289.31 | $4,289.31 | $493.27 |
| | Westland Mall, LLC, 591 West Putnam Avenue, Greenwich, CT 06830 | $49,653.74 | $49,653.74 | $5,710.18 |
| | | **$61,299,697.18** | **$24,561,044.76** | **$2,824,520.15** |

**Retailing Enterprises, LLC**
**Plan Projections**
**Section 21: Schedule of Payments to General Unsecured Creditor Class**

| Value (/'000) | 2024 | | | | 2025 | | | | 2026 | | | | 2027 | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1st Qrt | 2nd Qrt | 3rd Qrt | 4th Qrt | 1st Qrt | 2nd Qrt | 3rd Qrt | 4th Qrt | 1st Qrt | 2nd Qrt | 3rd Qrt | 4th Qrt | 1st Qrt | 2nd Qrt | 3rd Qrt | 4th Qrt |
| GUC | 187.5 | 187.5 | 187.5 | 187.5 | 187.5 | 187.5 | 187.5 | 187.5 | 187.5 | 187.5 | 187.5 | 187.5 | 187.5 | 187.5 | 187.5 | 187.5 |

## Exhibit "B"

| Liquidation Analysis | | | | | | |
|---|---|---|---|---|---|---|
| **Retailing Enterprises, LLC** | | | | | | |
| | | | | | | |
| Assets | | | | | | |
| | | **Value** | | | | **Recovery** |
| Cash | $ | 1,000,000 | | | $ | 1,000,000 |
| | | | | | | |
| | | | | | | |
| Inventory | $ | 11,000,000 | | | $ | 1,708,539 |
| | | | | | $ | 910,162 |
| Accounts Receivable PR | $ | 1,500,000 | | | $ | - |
| Accounts Receivable Other | $ | 80,000 | | | $ | 70,000 |
| Fixed Assets (Store) | | | | | $ | 25,000 |
| Deposits & Pre-payments | $ | 604,000 | | | $ | - |
| Office Furniture & Fixtures | $ | 111,248 | | | $ | 50,000 |
| Vehicle | $ | 20,154 | | | $ | 20,154 |
| Liquidation of Newport | **$** | **5,897,000** | | | $ | - |
| Total | $ | 19,212,402 | | | **$** | **3,783,855** |
| | | | | | | |
| Liabilities | | | | | | |
| | | | | | | |
| Class 1: City National Revolver | $ | 4,200,000 | | | $ | - |
| Class 2: City National Note | $ | 2,601,892 | | | $ | 1,708,539 |
| Class 3: City National Note | $ | 568,720 | | | $ | - |
| City National Legal Fees | $ | 200,000 | | | $ | - |
| Total Class 1 - 3 | $ | 7,570,612 | | | $ | 1,708,539 |
| | | | | | | |
| Remaining cash | | | | | **$** | **2,075,316** |
| | | | | | | |
| Class 4-10 Secured Tax: | | | | | $ | 96,623 |
| Priority Claims: | | | | | $ | 589,250 |
| Class 11: Ally Truck Loan | | | | | $ | 23,631 |
| Class 12: Dell | | | | | $ | 24,515 |
| Total 4 - 12 | | | | | $ | 734,020 |
| | | | | | | |
| **Remaining Cash after Secured** | | | | | **$** | **1,341,297** |
| | | | | | | |
| Chapter 7 Fees & Expenses | | | | | | |
| Fee | | | | | $ | 117,766 |
| Trustee Retained Professionals | | | | | $ | 250,000 |
| Store Personnel | | | | | $ | 250,000 |
| Auction / Sales Fees | | | | | $ | 91,016 |
| Rent (30 days) | | | | | $ | 365,000 |
| Utilities (30 days) | | | | | $ | 30,000 |
| Total Chapter 7 Fees and Expnses | | | | | $ | 1,103,782 |
| | | | | | | |
| Administrative Claims | | | | | $ | 1,039,000 |
| Chapter 11 Professionals | | | | | $ | 1,000,000 |
| Total Fees and Expenses Before Unsecured | | | | | $ | 3,142,782 |
| | | | | | | |
| **Remaining Cash to Unsecured** | | | | | **$** | **(1,801,485.29)** |
| | | | | | | |
| Classes 13 and 15 | | | | | $ | 61,000,000 |
| | | | | | | |
| **Distribution % to Unsecured** | | | | | | **-2.95%** |